UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | No. 23-cr-239-2 (CKK) |
| ) | |
| HEATHER RHIANNON MORGAN ) | |
| ) | |

MEMORANDUM OPINION AND ORDER
(November 14, 2024)

On August 3, 2023, Defendant Heather Morgan ("Defendant" or "Ms. Morgan") entered a plea of guilty to one count of Money Laundering Conspiracy, in violation of 18 U.S.C. §§ 371 and 1956(a)(1)(B)(i) and one count of Conspiracy to Defraud the United States, in violation of 18 U.S.C. §371. This matter is set for sentencing on November 18, 2024, and this Memorandum Opinion and Order resolves disputes about the offense level computation.

**I. Background**

In the Plea Agreement, ECF No. 101, the parties agreed that the following Sentencing Guidelines sections apply to Count One Money Laundering Conspiracy, 18 U.S.C. §§ 371 & 1956(a)(1)(B)(i):

| | | |
|---|---|---|
| §§ 2X1.1(a) and 2S1.1(a)(1) Base Offense Level; *see* § 2B1.1(a)(2) (wire fraud) | | 6 |
| § 2B1.1(b)(1)(M) | More than $65 million | +24 |
| § 2B1.1(b)(2)(A) | Substantial financial hardship to 1 victim | +2 |
| §2B1.1(b)(10) | Sophisticated means | +2 |
| §2X1.1(b)(2) | Incomplete conspiracy | - 3 |
| §3B1.2(b) | Minor Participant | - 2 |
| | **Total** | **29**[1] |

Plea Agreement, ECF No. 101, at 3. This calculation was subsequently reduced by -3, to account for Ms. Morgan's acceptance of responsibility, and further reduced by -2, to reflect her zero-point

---

[1] Count Two was also an offense level 29, and the courts were grouped, which resulted in an offense level of 29. Plea Agrmt., ECF No. 101, at 3.

1

offender status.  This resulted in an adjusted offense level of 24.  Govt. Sent. Mem., ECF No. 143, at 10; Def.'s Sent. Mem., ECF No. 160-1, at 32 (noting that the Government's sentencing memorandum details the correct Guidelines calculation).

In its Presentence Report ("PSR"), the Probation Office calculates the Defendant's total offense level as 24, but this number is derived through a different calculation; namely, the Probation Office: (1) starts from a base offense level of 8, pursuant to USSG §2S1.1(a)(2), and adds 24 levels for "more than $65 million," without any adjustment upward for substantial hardship or sophisticated means; and (2) applies a +2 adjustment for obstruction of justice, pursuant to USSG §3C1.1.  The Probation Office agrees with the downward adjustments for incomplete conspiracy, minor participant, acceptance of responsibility, and zero-point offender.  *See* PSR, ECF No. 134, at ¶¶72-81.  The disparities in calculating the total offense level remain unresolved as of the filing of the final PSR.

Below, this Court addresses the calculation of the total offense level, including the base offense level and the adjustment for obstruction of justice, with a focus on the Government's arguments (in which Defendant joins) and the Probation Office's responses thereto.

**II. Analysis**

**A.  Base Offense Level**

The parties calculated the base offense level for Defendant's money laundering offense pursuant to USSG §2S1.1(a)(1) while the Probation Office applied subsection (a)(2).  Subsection (a)(1) directs the Court to calculate "[t]he offense level for the underlying offense from which the laundered funds were derived," which is wire fraud, calculated pursuant to §2B1.1. "As a result, the parties' Guidelines calculation includes the base offense level and specific offense characteristics (including violation amount, substantial financial hardship to at least one victim, and sophisticated means) for the underlying wire fraud offense representing the hack of Bitfinex."  Govt. Sent. Mem.,

2

ECXF No. 143, at 11.  The Government explains that subsection (a)(1) normally applies to self-launderers or "direct launderers," who both commit the offense and launder the illegal proceeds, Govt. Sent. Mem., ECF No. 143, at 11, but the subsection is not limited to those who personally commit the underlying offense, as it applies also to defendants who "would be accountable for the underlying offense" as "[r]elevant conduct." USSG §2S1.1(a)(1).  "Relevant conduct" is defined to include "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant." USSG §1B1.3(a)(1)(A).

The Government acknowledges that Ms. Morgan "did not commit or participate in the hack of Bitfinex in 2016," but argues that she fits "within the definition of an accessory after the fact because she became aware that Lichtenstein committed the 2016 hack and then actively participated in the laundering activity for the purpose of protecting him from detection and arrest." Govt. Sent. Mem., ECF No. 143, at 11 ; *see* USSG §3 ("Whoever, knowing that an offense against the United States has been committed, receives, relieves, comforts or assists the offender in order to hinder or prevent his apprehension, trial, or punishment, is an accessory after the fact.")  The Government proffers that because Ms. Morgan is an accessory after the fact, she is criminally responsible for the hacking activity pursuant to §1B1.3.  Govt. Sent. Mem., ECF NO. 143, at 11; *see* Application Note 9 to USSG §1B1.3 ("in the case of . . . accessory after the fact, the conduct for which the defendant is accountable includes all conduct relevant to determining the offense level for the underlying offense that was known, or reasonably should have been known, by the defendant.")  Accordingly, the Government concludes that the appropriate starting point for Defendant's offense level is §2S1.1(a)(1), which provides a base level of 6.

In contrast, the Probation Office argues that the base offense level should be calculated using subsection (a)(2) of §2S1.1.  *See* PSR, ECF No. 134, at 43-44.  The Probation Office agrees with the Government that for subsection (a)(1) to apply, Ms. Morgan must have either committed the

3

underlying offense (which no one is asserting) or she must be accountable for the underlying offense pursuant to §1B1.3(a)(1)(A). *Id.* at 44. In response to the Government's assertion that Ms. Morgan is accountable pursuant to Section 1B1.3 (a)(1)(A), as an accessory after the fact, the Probation Office asserts that "[t]he fact that the defendant was involved in laundering criminal derived funds after the commission of the underlying offense, without additional involvement in the underlying offense, does not establish that the defendant committed, aided, abetted, counseled, commanded, inducted, procured, or willfully caused the underlying offense." *Id.* (quoting Application Note 2 to *United States v. Campbell*, 764 F.3d 874, 877 (8th Cir. 2014) ) 2S1.1). More specifically, "[b]ased on the information made available to US Probation, defendant Lichtenstein compromised computer servers belonging to Bitfinex in around 2016 [and] [*a*]*fter the hack*, he enlisted defendant Morgan's help in laundering the stolen funds." PSR, ECF No. 134, at 44 (emphasis added by the Probation Office). Subsequently, around early 2020, Mr. Lichtenstein "explicitly told defendant Morgan that he was responsible for the 2016 hack of Bitfinex." *Id.*

The Government acknowledges that approach taken in the PSR and responds by noting that subsection (a)(2) is "generally applicable to cases in which a defendant acts as a "third-party launderer" but was not involved in the specified unlawful activity that generated the illegal proceeds." Govt. Sent. Mem., ECF No. 134, at 12. Furthermore, "[t]he Guidelines distinguish between direct money launderers in §2S1.1(a)(1) and third-party launderers in §2S1.1(a)(2) [insofar as] [a] direct launderer commits the crime that produces illicit funds [and] [a] third-party launderer has no involvement in the underlying offense but only launders the money that the underlying offense generated." *United States v. Campbell*, 764 F.3d 874, 877 (8th Cir. 2014) (citations omitted). While Government agrees that Ms. Morgan did not participate in the original hack of Bitfinex, it asserts that the facts of this case indicate that she was not "an arms-length, third-party launderer" because she "assumed some responsibility for the hack by taking active measures to assist the

4

perpetrator 'in order to hinder or prevent his apprehension, trial or punishment.'" Govt. Sent. Mem., ECF No. 143, at 12  (quoting 18 U.S.C. §3).

This Court has reviewed the applicable USSG provisions and Application Notes, in the context of Ms. Morgan's role in this case.  The Court notes that the Probation Office's calculation of Defendant's base offense level [pursuant to subsection (a)(2)] was admittedly based on "the information made available" to Probation, while the Government and Defendant engaged in "detailed discussion of the facts" before deciding that Ms. Morgan's base offense level starts with subsection (a)(1).  *See* PSR, ECF No. 134, at 44.  The parties' reliance on subsection (a)(1) was triggered by their determination that Ms. Morgan "joined the conspiracy with the intent of assisting defendant Lichtenstein in laundering the stolen funds and later understood that in doing so, she was conspiring to conceal his involvement in the previous hack of Bitfinex."  PSR, ECF No. 134, at 45 (stating the Defendant's position).  Accordingly, the Court accepts the parties' contention that Ms. Morgan should be treated as an accessory after the fact, with the result that her base offense level of 6 is derived from §2S1.1(a)(1).  That base level of 6 is increased by 24 levels, for an amount over $65 million, as well as adjusted upward by 2 levels for substantial financial hardship to one victim and by another 2-levels for sophisticated means,[2] and then adjusted downward for incomplete conspiracy, minor participant, acceptance of responsibility, and zero-point offender status, resulting in a total offense level of 24.  The Court turns now to the upward adjustment for obstruction of justice.

### B. The +2 Adjustment for Obstruction of Justice

Pursuant to USSG §3C1.1, a 2-level adjustment is applied if "the defendant willfully

---

[2] The Probation Office notes that [because of the disagreement about the base offense level], the PSR "does not apply certain specific offense characteristics for the underlying wire fraud offense – namely, substantial financial hardship to one victim, . . . and sophisticated means. . . – which were included in the plea agreement calculation."  PSR, ECF No. 134, at 43.  The Court notes that application of these specific offense characteristics was undisputed in Mr. Lichtenstein's case.

5

obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the defendant's instant offense of conviction, and [ ] the obstructive conduct related to [ ] the defendant's offense of conviction and any relevant conduct [ ] or a closely related offense." The Probation Office applied this enhancement based on conduct outlined in the Statement of Offense, whereby defendants "deleted data from devices in the US and abroad [and] [t]hey also threw a computing device down a garbage chute, when the device contained *relevant*, *inculpatory evidence* related to the criminal scheme" after being tipped off to the existence of the government's investigation. PSR, ECF No. 134, at 42 (emphasis added) (relying on Morgan Statement of Offense, ECF No. 95).

As a preliminary matter, the Government proffers that "[t]he parties did not apply an adjustment for obstruction of justice in this Plea Agreement calculation." Govt. Sent. Mem., ECF No. 143, at 12. The Government notes further that the Defendants' conduct did not ultimately hinder the investigation; however, the Government acknowledges that "the authority cited by the PSR, *United States v. Owens*, 308 F. 3d 791, 794 (7th Cir. 2002) holds that '*actual* prejudice to the government resulting from the defendant's conduct is not required.'" (emphasis in original).

Accordingly, regarding the non-applicability of this enhancement, the Government relies primarily on the fact that it would not have been aware of Defendants' actions but for statements made "by both defendants during their voluntary debriefings following arrest[,] [where such] debriefings were governed by a standard proffer letter, which set forth that, barring specific carveouts, 'no statements made by or other information provided by your client during the voluntary debriefings(s) will be used directly against your client in any criminal proceeding.'" Govt. Sent. Mem., ECF No. 143, at 13. Pursuant to USSG §1B1.8(a), defendants who cooperate with the government by providing information concerning unlawful activities of others have the government's agreement that such information will not be used against them. Nor shall the

information "be used in determining the applicable guideline range, except to the extent provided in the agreement." USSG §1B1.8(a).

The Government explains that the plea agreement in this case included a waiver of the standard protection of USSG §1B1.8, but that it is "a waiver that may be exercised at the government's discretion." Govt. Sent. Mem., ECF No. 143, at 14; *see* Plea Agrmt, ECF No. 101, at 10 (noting that "the Government will be free to use against your client for any purpose at the sentencing . . ., any self-incriminating information provided by your client . . . during the course of debriefings). The Government contends that "under the plain text terms of the plea agreement, the protections of §1B1.8 stay in place for sentencing unless "the Government" seeks to use the information." Govt. Sent. Mem., ECF No. 143, at 14. The Government asserts, and this Court agrees that, as the Government is not seeking to use the information here, and accordingly, the baseline rule of that Guideline section remains in force, and the agreed-upon guideline calculations in the plea agreement should prevail.

Furthermore, while the Probation Office relies upon information set out in the Statement of Offense to support the imposition of a 2-level enhancement for obstruction, the Government explains that it included that information about Defendants' actions in the Statement of Offense because it wanted the "Court and others to be aware of the full scope of the defendants' relevant conduct." Govt. Sent. Mem., ECF No. 143, at 14. This is consistent with Application Note 1 for §1B1.8, which states that the guideline provision "does not authorize the government to withhold information from the court but provides [also] that self-incriminating information obtained under a cooperation agreement is not to be used to determine the defendant's guideline range." Accordingly, the Government proffers that "[t]he Application Notes further observe that the re-presentation of the information outside of a debriefing setting does not invalidate the relevant protections." Govt. Sent. Mem., ECF No. 143, at 14.

Considering the Government's reliance on USSG §1B1.8 (and the language of the Application

7

Notes) and its decision to decline waiving the protection for Defendants set forth in that Guideline – as was its option in the Plea Agreement – the Court finds that the 2-level enhancement for obstruction is inapplicable in this case.

For the reasons set forth herein, it is this 14th day of November, 2024, it is hereby

ORDERED that, as explained in detail herein, the parties' objections to the calculation of the base offense level of 8, pursuant to §2S1.1 (a)(2), and the imposition of a 2-level upward adjustment for obstruction of justice are upheld, with the result that the Court accepts the parties' calculation of the total offense level, which results in a total offense level of 24.

_____/s/_____
JUDGE COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE