### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ILYA LICHTENSTEIN, et al.,<br><br>Defendants. | Case No.  23-cr-239 (CKK) |

### VERIFIED PETITION FOR DETERMINATION OF
### THIRD PARTY INTEREST IN PROPERTY PURSUANT TO 21 U.S.C § 853(N)

Petitioner Hjalmar Peters ("Petitioner" or "Mr. Peters"), by his counsel Davis+Gilbert LLP, having offices at 1675 Broadway, New York, New York 10019, submits this verified petition pursuant to 21 U.S.C. § 853(n) and Fed. R. Crim. P. 32.2(c) for an order determining his interest in property that is subject to forfeiture under the Second Amended Preliminary Order of Forfeiture, entered by this Court on November 14, 2024, ECF. No. 178 (the "Preliminary Forfeiture Order"), and hereby states as follows:

### PRELIMINARY STATEMENT

1.   On or about August 2, 2016, after hacking into the systems of a Chinese-based cryptocurrency exchange (the "Hack"), Defendants Ilya Lichtenstein and Heather Morgan stole 12.94485805 Bitcoin (the "Lost Assets") from Mr. Peters.

2.   Defendants accomplished this theft by directly transferring the Lost Assets from Mr. Peters' own Bitcoin wallet on a cryptocurrency exchange into Defendants' virtual wallet.

3.   For years, the Lost Assets sat in Defendants' virtual wallet, until the U.S. Government on or about February 1, 2022, seized the Lost Assets and other cryptocurrency illegally obtained by Defendants.

4. Mr. Peters now seeks return of his Lost Assets.

## PROCEDURAL HISTORY

5. On February 7, 2022, Defendants were charged by criminal complaint with violations of 18 U.S.C. § 1956(h) and 18 U.S.C. § 371. ECF. No 1. The complaint was superseded by a criminal information filed by the U.S. Government on July 20, 2023 (the "Information"). *See* ECF. No. 89.

6. On or about August 3, 2023, Defendants each pleaded guilty to one count of money laundering conspiracy in violation of 18 U.S.C. § 1956(h) and Defendant Morgan also pleaded guilty to one count of conspiracy to defraud the United States in violation of 18 U.S.C. § 371.

7. On August 3, 2023, the Court entered Consent Orders of Preliminary Forfeiture, *see* ECF. No. 99, 104, and, on October 25, 2024, Amended Preliminary Orders of Forfeiture as to each Defendant. *See* ECF. No. 153, 154.

8. On November 14, 2024, the Court entered the Second Amended Preliminary Order of Forfeiture, ECF No. 178 (the "Second Amended Preliminary Forfeiture Order"), pursuant to which, *inter alia*, Defendants forfeited to the U.S. Government their interest in certain property, including "specific properties now listed in Amended Attachment A." *Id.* at 2. The attachment, as amended and corrected, identifies in paragraph e. "approximately" 94,643.29837084 Bitcoin (the "Recovered Bitcoin") that were "seized from wallets recovered from Defendants' online storage account." *See* ECF. No. 198-1 at 1.

9. In connection with the Second Amended Preliminary Order of Forfeiture, on December 17, 2024, the U.S. Department of Justice issued a notice (the "DOJ Notice") directing any person intending to assert an interest in any of the properties subject to forfeiture to file an

Ancillary Proceeding within 30 days of receipt of the DOJ Notice. Mr. Peters received the DOJ Notice on December 17, 2024.

**RELEVANT FACTS**

10. Mr. Peters is the owner of the Lost Assets, which can be directly traced from one of Mr. Peters' multi-signature Bitcoin wallets to the Defendants' Bitcoin wallet, the contents of which were seized by the U.S. Government.

11. Mr. Peters was a customer of Bitfinex, an online cryptocurrency platform headquartered in Hong Kong. To transact business on the platform, customers of Bitfinex were each provided with her/his own "multi-signature wallets" into which, *inter alia*, the customer could deposit his or her Bitcoin for purposes of buying, selling, trading and/or engaging in other financial transactions on the platform.

12. The Bitcoin in these multi-signature wallets belonged solely and exclusively to the respective customer. At the time of the Defendants' Hack, section 5.1 of Bitfinex's Terms of Service stated that "all bitcoins in your Multi-Signature Wallets belong to and are owned by you [the customer]." *See* Bitfinex, Terms of Service (June 9, 2016) (as preserved by Internet Archive)*; Can Bitfinex Really Impose a $72 Million Theft on Its Customers?*, Fortune, (Aug. 15, 2016), https://fortune.com/2016/08/15/bitfinex-bitcoin-hack-hong-kong-customers-law/ (last accessed: January 15, 2025) (quoting Bitfinex's terms of service).

13. Bitfinex championed its use of individual customer-owned wallets in its marketing materials and to the U.S. Commodities Futures Trading Commission ("CFTC") during the CFTC's 2015-16 investigation into Bitfinex's practices. *See, e.g.*, Business Wire, *Bitfinex and BitGo Partner to Create World's First Real-Time Proof of Reserve Bitcoin Exchange*, (June 3, 2015), *available at* https://www.businesswire.com/news/home/20150603005462/en/Bitfinexand-BitGo-

3

Partner-to-Create-World%E2%80%99s-First-Real-Time-Proof-of-Reserve-Bitcoin-Exchange

("Bitfinex . . . for the first time ever offers complete segregation of all customer bitcoins"; quoting Bitfinex's statement that "[t]he era of commingling customer Bitcoin and all of the associated security exposures is over.") (last accessed: January 15, 2025).

14. In its order imposing sanctions on Bitfinex on June 2, 2016—mere months before the Hack—the CFTC found that Bitfinex abandoned its prior approach of using an "omnibus settlement wallet" that was "owned and controlled by Bitfinex" and, instead, in 2015 and January 2016, made changes to its infrastructure such that "bitcoins purchased using both the Exchange Trading and Margin Trading features [on Bitfinex] were held in individually enumerated, multi-signature wallets" for each trader. Order Instituting Proceedings Pursuant to Sections 6(c) and 6(d) of the Commodity Exchange Act, as Amended, Making Findings and Imposing Remedial Sanctions, CFTC Docket No. 16-19, at 3 (June 2, 2016).

15. In other words, the Bitcoin held in a customer's segregated multi-signature wallet on the Bitfinex platform rightly belonged to the customer only.

A. Ownership of the Lost Assets

16. On or about July 20, 2016, Mr. Peters transferred 9.9995 Bitcoin from his wallet on another platform into his segregated multi-signature wallet associated with his "margin wallet" on Bitfinex (txid *******************d6d8) ("Mr. Peters' Wallet"). At the time of the Defendants' Hack, Mr. Peters' Wallet also contained certain "unspent transaction outputs" owned by Mr. Peters in the amount of 2.94526084 Bitcoin and 0.00009721 Bitcoin. These 12.94485805 Bitcoin are the Lost Assets belonging to Mr. Peters.

17. In August 2016, as part of the Hack, the Defendants transferred the Lost Assets from Mr. Peters' Wallet directly to Bitcoin wallet address *******************kA7D (txid

4

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*1309) (the "Specified Defendants' Bitcoin Address") among the hundreds or thousands employed by the Defendants during the Hack.

18. Upon information and belief, the Lost Assets remained in the Specified Defendants' Bitcoin Address until the U.S. Government seized them. *See, e.g.*, Complaint ¶¶ 6, 7(a).

### B. The Recovered Bitcoin

19. The U.S. Government has now seized more than 94,643.29837084 Bitcoin from the Defendants. *See* Corrected and Amended Attachment A to the Second Amended Preliminary Forfeiture Order, at 1, 5-11. In connection with that seizure, on or about February 1, 2022, the U.S. Government transferred all of the contents of the Specified Defendants' Bitcoin Address, including upon information and belief the Lost Assets, to a virtual currency wallet controlled by the U.S. Government (\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*wczt; txid \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*2525).

20. The Lost Assets are thus part of the Recovered Bitcoin.

## RELIEF SOUGHT

21. As owner, Mr. Peters has a right, title and interest in and to the Lost Assets, which is specific property that can be identified as having been taken from Mr. Peters' Wallet, transferred directly to the Specified Defendants' Bitcoin Address and then seized by the U.S. Government.

22. Mr. Peters' ownership interest in the Lost Assets existed prior to the acts which gave rise to Defendants' forfeiture and is superior to any right of the Defendants (and the U.S. Government) in the Lost Assets.

23. The U.S. Government has not returned to Mr. Peters the Lost Assets, which, as part of the Recovered Bitcoin, remain subject to forfeiture under the Second Amended Preliminary Forfeiture Order.

4898-3269-6592

24. Mr. Peters therefore seeks to assert his ownership interest in, and obtain prompt return of, 12.94485805 Bitcoin of the Recovered Bitcoin and all corresponding fork coins (e.g., Bitcoin Cash, Bitcoin Gold, Bitcoin SV, etc.) that were derived from the Lost Assets.

Dated: January 16, 2025          GREENSTEIN DELORME & LUCHS, P.C.

By: */s/James D. Sadowski*
James D. Sadowski
801 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Phone: 202.452.1400
Fax: 202/452/1410
Email: JDS@gdllaw.com

DAVIS+GILBERT LLP
Joseph Cioffi
H. Seiji Newman
Joel Melendez
Adam Levy
1675 Broadway
New York, NY 10019
212-468-4800
jcioffi@dglaw.com
hnewman@dglaw.com
jmelendez@dglaw.com
alevy@dglaw.com

*Counsel for Petitioner*

4898-3269-6592

**VERIFICATION**

Hjalmar Peters, being duly, sworn deposes and says:

I am the Petition in this Ancillary Proceeding; I have read the foregoing Verified Petition and know the contents thereof; and the same is true to my own knowledge, except as to those matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true.

Peters
Hjalmar Peters

Sworn to before me this

15 day of January 2025

_____
NOTARY PUBLIC



Yo, Lcda. MARLENE FRANCO MARTINEZ, Notaria Publica Primera del Circuito de Coclé, con C.I.P. N? 2-160-614. CERTIFICO: Que el (la) (los) señor (a)' (es): Hjalmar Peters se presentó personalmente y firmó (firmaron) el presente documento, por lo que su firma (s) es (son) autenticas. La Notaria no asume responsabilidad alguna por el contenido del documento (art. 1739 C.C.).

Penonomé, 15 ENE 2025

Testigo          Testigo

Lcda. MARLENE FRANCO MARTINEZ
NOTARIA PRIMERA DEL CIRCUITO DE COCLE

*[Verification - Ancillary Petition]*

4743521