# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ILYA LICHTENSTEIN, *et al.*<br><br>     **Defendants,**<br>and<br><br>JOHN DOE, *et al.*,<br>     Petitioners/Third-Party Claimants. | **Criminal No. 23-239 (CKK)** |

## OMNIBUS MEMORANDUM OPINION AND ORDER
(March 10, 2025)

Pending before this Court are multiple claims by persons and entities who allege interests in property that has been forfeited to the Government in connection with this criminal case. More specially, the property at issue – claimed by these Petitioners/Claimants – is digital currency that was hacked by Defendant Lichtenstein from Bitfinex, in 2016, and was then laundered by Defendants Lichtenstein and Morgan. Considered in this Opinion are six motions for leave to file pseudonymously and/or to file under seal, filed by six Petitioners designated as: (1) "John Doe" [ECF Nos. 206, 240] (2 motions); (2) "XYZ Inc." [ECF No. 231]; (3) "John Doe [II] (referenced as "Tom Doe" on the docket) and Company Doe" [ECF No. 267]; (4) "AH-1" [ECF No. 226]; and (5) "A.B." [ECF No. 256]. These six Petitioners are collectively referred to herein as the "Motion- to-Seal Petitioners." The Government has filed under seal its [210] response to "John Doe's" Motion to Seal and its [209] response to "R.F.'s" Motion to Seal. While this Memorandum Opinion and Order discusses the arguments in various sealed pleadings, it does not disclose any

1

identifying information, and accordingly, it is not being sealed.

Because the arguments presented in the six Motions are duplicative and the arguments in the two Responses are similarly duplicative, the Court has determined it unnecessary for the Government to respond to the remaining motions before it makes its ruling, which will apply to the Petitioners who have requested anonymity through pseudonyms and/or sealing. For purposes of this Memorandum Opinion and Order, the Court cites to "John Doe's" [206] Motion for Leave to File Verified Petition Pseudonymously and Partially Under Seal, and the Government's [210] Response thereto, which are representative of all arguments and all oppositions. The Court's references to Petitioner "John Doe" extend to all Motion-to-Seal Petitioners herein. Petitioner "John Doe" indicates that he is "an individual with a third-party claim to property forfeited by the Defendants in the above-captioned case." Petitioner's Mot., ECF No. 206, at 1. Petitioner proposes to file his Petition and attached exhibits under seal, along with a public version that would be filed pseudonymously and with limited redactions of proffered confidential information that gives rise to Petitioner's privacy and security concerns.

The Parties' Positions

Petitioner "John Doe" moves for "leave to publicly file his petition pseudonymously with limited redactions—redacting only his account numbers and the specific amount of assets at issue in his Petition—and to file under seal an unredacted version of his petition along with Petitioner's declaration." Petitioner's Mot., ECF No. 206, at 1. Petitioner argues that proceeding pseudonymously and utilizing redactions (partial sealing) would protect his privacy and security concerns. *Id.* at 1-2. More specifically, he asserts generally that "courts have recognized the unique safety risks presented by publicly identifying individuals and associating them with large

2

cryptocurrency holdings or transactions, including risks to them and their families of identity theft, electronic intrusion, and physical harm." *Id.* at 2. Petitioner contends that there is "no countervailing need for [his] identity or specific asset holdings to be placed in the public record at this time." Petitioner's Mot., ECF No. 206, at 3.

The Government indicates that it "does not oppose reasonable redactions, including much of what has been proposed by [John Doe], but is duty-bound to oppose all but the most necessary redactions in a case of substantial public interest." Govt. Resp., ECF No. 210, at 1. The Government contends, and this Court agrees, that under the controlling case law, "sealing is only appropriate to protect, at most, [John Doe's] full name and the types of personally identifiable information (PII) protected by Fed. R. Crim. P. 49.1, such as full financial account numbers and home addresses" while information "including 'specific amounts of assets'—should remain unsealed and open to the public to promote confidence in the legitimacy and fairness of this judicial proceeding." Govt. Resp., ECF No. 210, at 2 (relying on *Washington Post v. Robinson*, 935 F.2d 282 (D.C. Cir. 1991) and *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980)). The Government notes further that these details that are undisclosed to the public "should be disclosed to the Government, the Court, and to any other petitioners in the third-party ancillary proceeding, whose claims may be in competition with [John Doe's] and who may have knowledge as to the validity of [John Doe's] claims vis-à-vis other petitioners." Govt. Resp., ECF No. 210, at 2 n.2.[1] The Government does not suggest how this should be accomplished, but the Court notes that most of these Motion-to-Seal Petitioners are represented by counsel (with one party acting *pro se*). The

---

[1] The Court notes that it has access to sealed non-redacted versions of documents, many of which indicate that they were provided to the Government.

3

Government explains that because the "ancillary proceeding will determine the disposition of forfeitable assets valued at more than $10 billion [,]" it is "imperative that the proceedings in this case be carried out as transparently as possible." *Id.* at 1. The Court agrees with the Government and finds that full disclosure to other petitioners (of details protected from public disclosure) shall be effectuated by the Motion-to-Seal Petitioners prior to participation in any ancillary proceeding.

Applying the Legal Standard for Sealing

"[T]here is a 'strong presumption in favor of public access to judicial proceedings,' including judicial records." *In re Leopold*, 964 F.3d 1121, 1127 (D.C. Cir. 2020) (quoting *Hubbard*, 650 F.2d at 317). "Access to records serves the important functions of ensuring the integrity of judicial proceedings in particular and of the law enforcement process more generally." *United States v. Hubbard*, 650 F.2d 293, 315 (D.C. Cir. 1980). Allowing inspection "serves to produce an informed and enlightened public opinion" and "to promote the search for truth, and to assure confidence in judicial remedies." *Id.* at 315 n.79 (internal citation, alteration, and quotation marks omitted).

This presumption in favor of public access may, in some case, "be outweighed by competing interests," which are evaluated pursuant to a six-factor test set forth in *Hubbard*, as follows:

> (1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

*In re Leopold*, 964 F.3d at 1127, 1131 (D.C. Cir. 2020) (quoting *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 665 (D.C. Cir. 2017). "The '*Hubbard* test has consistently

served as [the] lodestar' for evaluating motion to seal or unseal judicial records 'because it ensures that [the court] fully account[s] for the various public and private interests at stake.'" *In re Leopold*, 964 F.3d at 1127 (quoting *Metlife*, 865 F.3d at 666). Petitioner "John Doe" relies instead on five factors set forth in *In re Sealed Case*, 931 F.3d 92, 97 (D.C. Cir. 2019) to determine whether litigants may proceed anonymously. These are: (1) whether the asserted justification is to avoid annoyance or criticism or to preserve privacy in a matter of sensitive and highly personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the requesting party or others; (3) the age of the persons whose interests are to be protected; (4) whether the action is against a government or private party; and (5) the risk of unfairness to an opposing party from allowing an action to proceed anonymously. *In re Sealed Case*, 931 F.3d at 97. Petitioner asserts generally that "the first, second, fourth, and fifth factors are relevant and all weigh in favor of allowing Petitioner to proceed pseudonymously," Petitioner's Mot., ECF No. 206, at 4, and his argument focusing on these factors will be incorporated into the Court's analysis of the *Hubbard* factors below. As explained below, the Court finds that, on balance, these *Hubbard* factors, as well as the factors relied upon by Petitioner, favor limited sealing of the Motion-to-Seal Petitioners' identities and PII, but do not favor sealing of the specific asset amounts.

     1.  <u>Need for Public Access</u>

     As noted previously herein, there is a presumption in favor of public access, which ensures "the integrity of judicial proceedings and the law enforcement process," and is "fundamental to a democratic state." *Upshaw v. United States*, 754 F. Supp. 2d 24, 28 (D.D.C. 2010) (Kollar-Kotelly, J.) (quotation omitted). This is particularly relevant where the case, as here, involves "issues of major public importance." *In re Application of National Broadcasting Co., Inc.*, 653 F.2d 609,

614 (D.C. Cir. 1981). This presumption of public access extends to briefs and evidence submitted in support of a claim because those materials constitute the "information with which the parties hope to influence the court, and upon which the court must base its decision." *Metlife, Inc.*, 865 F.3d at 667. The scope of the requested sealing is also relevant. *See, e.g., Upshaw v. United States*, 754 F. Supp. 2d at 28 (where the plaintiff "made no attempt to address the need for public access to each and every document on the public docket" and instead filed a motion targeted towards sealing "the entirety of the case," his failure was "fatal"). Where redactions sought "are not targeted to deprive the public of access only to particularly sensitive or confidential information," a plaintiff does "not overcome the presumption that the public has a legitimate interest in knowing all of the facts involved in [the] case." *Patel v. Garland*, Civil Action No. 23-3215 (JEB), 2023 WL 7536574, at *2 (D.D.C. Nov. 13, 2023) (internal quotation marks and citations omitted).

In the instant case, Petitioner does not address specifically the weight of any public interest in this unsealed case, which involves the potential disposition of assets worth billions of dollars. Nor does Petitioner convincingly argue that the "specific amounts of assets" constitutes confidential information that warrants redaction, particularly where the amount of Petitioner's claim is integral and relevant to the integrity of the ancillary proceeding. In contrast, the Court finds that Petitioner's other proffered redactions of PII involve "particularly sensitive or confidential information" that outweigh the presumption of public interest in that information. Accordingly, the Court finds that the factor of "need for public access" weighs in favor of sealing of "John Doe's" name and PII, where such PII does not include the specific asset amounts at issue.

2.  Extent of Previous Public Access

The Government agrees that "John Doe" has not been publicly identified in this case as a Petitioner or a former accountholder claiming victim status for purposes of restitution, and accordingly, this factor supports sealing of "John Doe's" name and PII.

3.  Objections to Disclosure (preservation of privacy)

The Government acknowledges that "*Hubbard* provides broader protection when a third party's privacy or property rights are at issue and that third party objects." *United States v. Munchel*, 567 F. Supp. 3d 9, 18 (D.D.C. 2021) (internal quotation marks and citation omitted). In this case, "John Doe" has asserted a privacy interest, and accordingly, this objection on privacy grounds weighs in favor of sealing of John Doe's name and PII.

4.  Strength of any Property and Privacy Interests Asserted (possible retaliatory harm)

"The third, fourth, and fifth *Hubbard* factors are interrelated, and require courts to look at the strength of the property and privacy interests involved, and to take into account whether anyone has objected to public disclosure and the possibility of prejudice to that person." *Upshaw*, 754 F. Supp. 2d at 29. The Government asserts that the kinds of privacy interests recognized under this framework are often "more particular than mere desire to protect one's name from publicity." Govt. Resp., ECF No. 210, at 5. These may include personal information that is protected by attorney-client privilege, discusses tax returns, includes intimate details about someone's life, or constitutes confidential business information. *United States v. All Assets Held at Bank Julius Baer & Co.*, 520 F. Supp. 3d 71, 83 (D.D.C. 2020) (citations omitted).

Petitioner here asserts that the sealing request is necessary to protect general "privacy and security concerns" including "identity theft, electronic intrusion, and physical harm." Petitioner's

7

Mot., ECF No. 206, at 2; at 4 (asserting that he has a "compelling interest in his physical safety and protection from identity theft of crypto assets"). These types of generalized concerns weigh less heavily under the framework of *Hubbard*. *See, e.g., Bank Julius Baer*, 520 F. Supp. 3d at 84 (finding "vague, conclusory assertions of potential threats, without any evidence supporting a specific fear based on the release of the documents at issue . . . are not sufficient to weigh in favor of nondisclosure"); *United States v. Munchel*, 567 F. Supp. 3d at 19 (finding "[d]efendants' appeal to generalized safety concerns is not enough to swing the fourth *Hubbard* factor in their favor," where [in that case,] defendants' involvement in the events of January 6, 2021 was already publicly known). The Government however has no objection to "masking of [John Doe's] name as well as any PII such as full account numbers" even though the Government argues that Petitioner "has articulated only generalized concerns that they might be targeted for theft or violence, [as opposed to] any concrete or specific threat." Govt. Resp., ECF No. 210, at 5; *but see* Petitioner's Mot., ECF No. 206, at 5 (citing *In re Genesis Global Holdco, LLC*, 652 B.R. 618, 637 (Bankr. S.D.N.Y. 2023) (highlighting the specific risks inherent with cryptocurrency, even with "publication of names alone"). The Court notes that this case cited by Petitioner is distinguishable since the Government has agreed that Petitioners' names may be masked.

Regarding the sealing of specific amounts of cryptocurrency at issue, Petitioner contends generally that revealing this information would make him "particularly vulnerable to attacks." Petitioner's Mot., ECF No. 206, at 5 (referencing a case involving the sealing of commercial information relating to a promotional agreement between a debtor corporation and another corporation, in the context of a bankruptcy proceeding). The Court finds that Petitioner has not proffered an adequate explanation as to why permitting him to file pseudonymously and to mask

8

his PII, such as account numbers, would not be sufficient to protect against his concerns of theft and violence, and why additional sealing of the "specific amounts" at issue is necessary.

Possibility of Prejudice to those Opposing Disclosure (and any risk of unfairness to others) (where the Government holds the forfeited assets)

The possibility of prejudice [to Petitioner] factor is "interrelated" with the strength of his general privacy interest in not becoming a target for theft or violence, which was discussed above. *Upshaw*, 745 F. Supp. 2d at 29. Regarding any unfairness to others, Petitioner argues that sealing the proffered confidential material does not pose any risk of unfairness because "Defendants have already relinquished any claim to the property subject to forfeiture" and "the remaining party is the government," and Petitioner "has already disclosed the information to the government[.]" Petitioner Mot., ECF No. 206, at 7. This statement ignores the reality that Petitioner's claim is potentially adverse to claims by the other petitioners in this case, some of whom have already publicly identified themselves and the amount of their contested assets at issue.

Furthermore, while Petitioner has indicated that he has provided unredacted information to the Government and the Court, as previously noted herein, prior to participating in any third-party ancillary proceeding, Petitioner will need to provide that information to any other petitioners in the ancillary proceeding whose claims may be in competition with "John Doe's" and who may have knowledge of the validity of "John's Doe's" claims in relation to other petitioners. Otherwise, there is a risk of unfairness to the other Petitioners.

5.  The Purpose for which Documents are Introduced in the Judicial Proceedings

"[T]here is a strong presumption of public access to documents that a litigant submits with the intention that the court will rely on them." *Bank Julius Baer*, 520 F. Supp. 3d at 85. Here, the

9

documents provided by Petitioners are "filed before the district court's decision [on any ancillary proceeding claims]" and "are intended to influence it." *Id.* (internal citation and quotations omitted). "Transparency and access to these documents is central to the integrity of the[ ] proceedings." *Herron v. Fannie Mae*, Civil Action No. 10-943 (RMC), 2016 WL 10677615, at *4 (D.D.C. June 20, 2016). "Without access" to these materials, it is "impossible to know which parts of those materials persuaded the court." *Metlife*, 865 F.3d at 668.

Furthermore, Petitioner's request to redact the specific "asset amounts" runs contrary to the importance of transparency in the proceedings. The Government argues, and this Court agrees that "[a] central issue in the third-party ancillary proceeding" is whether petitioners have "an interest in *specific* forfeited property," as opposed to a general claim of an unsecured creditor. Govt. Resp., ECF No. 210, at 7 (emphasis added); *see United States v. BCCI Holdings (Luxembourg) S.A.*, 46 F.3d 1185, 1191 (D.C. Cir. 1995) (construing materially identical language in 18 U.S.C. §1963(l)(6). In this case, a petitioner's claim will depend on tracing a claim of ownership to one or more items of specific property itemized in the Second Amended Preliminary Order of Forfeiture and Corrected Second Amended Attachment A. Sealing the amount of assets being claimed would "obscure whether the petitioner is claiming only some, or all, of a given property - - - and by extension would make it impossible for the public to understand whether one petitioner's claim runs in conflict with another petitioner's claim." Govt. Resp., ECF No. 210, at 8. Because it is unnecessary to protect against a petitioner's generalized concerns, and because the asset amounts are integral to the merits and evidence underlying a petitioner's claim, the Court

declines to permit sealing of the asset amounts and limits sealing to a Petitioner's name and PII. Accordingly, it is this 10th day of March 2025, hereby

ORDERED that the following motions (1) Motion for Leave to File Verified Petition Pseudonymously and Partially Under Seal by "John Doe," ECF Nos. 206, and Motion for Leave to File Motion to Intervene and Supporting Documents Pseudonymously and Partially Under Seal by "John Doe," ECF No. 240; (2) Sealed Motion for Leave to Proceed by Pseudonym and File Motion to Intervene and Objection to Proposed Restitution Order and Verified Ancillary Petition by "XYZ Inc.," ECF No. 231; (3) Motion for Leave to File Motion to Intervene and Ancillary Petition Pseudonymously and Partially Under Seal by "John Doe [II] and Company Doe," ECF No. 267; (4) Motion to Seal by "A.B.," ECF No. 256; and (5) Motion for Leave to File Under Seal by "AH-1," ECF No. 226 are GRANTED IN PART AND DENIED IN PART. As indicated herein, these Petitioners may redact their full name and PII from the publicly filed version of their documents, but the total asset amounts being claimed shall not be redacted. Following these guidelines, within ten days, the Petitioners who are represented by counsel shall ensure that a redacted public version of their motions/petitions is filed on the docket. Any information that has been redacted shall be immediately available to the Government, as the Court will permit the Government to access all sealed documents on the docket. Furthermore, prior to participation in any ancillary proceeding, Petitioners shall disclose their redacted information to "any other petitioners in the third-party ancillary proceeding, whose claims may be in competition with [John Doe's] and who may have knowledge as to the validity of [John Doe's] claims vis-à-vis other petitioners," and it is further

ORDERED that counsel for Petitioner AH-1 shall enter a Notice of Appearance (which may

11

reference the pseudonym for their client's name) so that they are added to the case docket, and it is further

ORDERED that, in the interest of judicial efficiency, this Court will ensure that a redacted public version of the documentation filed by Petitioner A.B. (who is acting *pro se*) is docketed, as it has done with other *pro se* Petitioners (whose names have been revealed but whose PII was redacted).

_____/s/_____
COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE

12