# EXHIBIT A

# EXHIBIT A-1

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | **Criminal No.  23-CR-239 (CKK)** |
| | ) | |
| **ILYA LICHTENSTEIN,** *et al.*, | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

## <u>NOTICE OF CRIMINAL FORFEITURE ACTION</u>

On November 14, 2024, a District Court Judge for the United States District Court for the District of Columbia issued a Second Amended Preliminary Order of Forfeiture and on December 11, 2024 issued a Minute Order granting a Corrected Second Amended Attachment A against the properties described in the Corrected Second Amended Attachment A (the "Defendant Properties").

The Defendant Properties are subject to forfeiture pursuant to 18 U.S.C. § 982(a)(1) as property involved in and traceable to violations of 18 U.S.C. § 1956(h), and the Defendant Properties are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) as property constituting or derived from proceeds traceable to violations of 18 U.S.C. § 371.

 Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, direct notice of this action, along with a copy of the Second Amended Preliminary Order of Forfeiture and Corrected Second Amended Attachment A, are being sent to potential claimants via FedEx and electronic mail.

Any party who intends to assert an interest in any of the Defendant Properties and to contest the forfeiture in court must file an Ancillary Petition in the United States District Court, District of Columbia, <u>333 Constitution Avenue, NW, Washington, D.C. 20001,</u> under the case title listed above**, 1:23-CR-00239-CKK, **within 30 days** of receipt of this Notice, pursuant to 21 U.S.C. § 853(n)(2).

Ancillary Petitions are to be filed with the Clerk, United States District Court for the District of Columbia at the above address, with a copy thereof served on the undersigned Assistant United States Attorney Rick Blaylock, at the address listed below.

Alternatively, any party who intends to seek the return of property may file a petition for remission or mitigation.  A petition for remission or mitigation is considered by the Department of Justice, not the Court.  The petition process is further detailed in the attached Code of Federal Regulations.  A petition for remission or mitigation must be submitted **within 30 days** of the date notice is received. A blank petition for remission is enclosed. You may file a petition for remission or mitigation online at *ocp.forfeiture.gov/OnlineClaimsPetitions/petition*.

The filing of a petition for remission or mitigation does not serve as a substitute for filing an Ancillary Petition; nor does the filing of an Ancillary Petition serve as a substitute for filing a petition for remission or mitigation.

Sincerely,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

By:    */s/ Rick Blaylock Jr.*
Rick Blaylock Jr.
Assistant United States Attorney
Christopher B. Brown
Special Assistant United States Attorney
United States Attorney's Office
601 D Street, N.W.

Washington, D.C. 20530
(202) 252-6765 (Blaylock)
(202) 353-0018 (Brown)
Rick.Blaylock.Jr@usdoj.gov
Christopher.Brown9@usdoj.gov


*/s/ Jessica Peck*
Jessica Peck
C. Alden Pelker
Trial Attorneys, U.S. Department of Justice
Computer Crime & Intellectual Property Section
1301 New York Ave., N.W., Suite 600
Washington, D.C. 20005
(202) 353-9455 (Peck)
(202) 616-5007 (Pelker)
Jessica.Peck@usdoj.gov
Catherine.Pelker@usdoj.gov

December 17, 2024

# EXHIBIT A-2



U.S. Department of Justice

Matthew M. Graves
United States Attorney

*District of Columbia*

*Patrick Henry Building*
*601 D Street N.W.*
*Washington, D.C. 20530*

December 17, 2024

**VIA Electronic Mail**

██████

c/o Kayvan Sadeghi, Esq.
Jenner & Block LLP
1155 Avenue of the Americas
New York, NY 10036-2711
ksadeghi@jenner.com

  **Re: Notice of Criminal Forfeiture Action, 1:23-cr-00239-CKK**

Dear Sir/Madam:

  A District Court Judge for the District Court of the District of Columbia issued a Second Amended Preliminary Order of Forfeiture on November 14, 2024 and a Minute Order granting the Corrected Second Amended Attachment A on December 11, 2024, against the properties described in the Corrected Second Amended Attachment A.

  Enclosed you will find the Notice of Criminal Forfeiture Action, Second Amended Preliminary Order of Forfeiture, Corrected Second Amended Attachment A, a copy of the forfeiture.gov online publication, Part 9 of Title 28 of the Code of Federal Regulations, and a blank Petition for Remission.

Sincerely,

MATTHEW M. GRAVES
United States Attorney

By:     */s/ Rick Blaylock Jr.*
Rick Blaylock Jr.
Assistant United States Attorney
Christopher B. Brown
Special Assistant United States Attorney
United States Attorney's Office
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-6765 (Blaylock)
(202) 353-0018 (Brown)
Rick.Blaylock.Jr@usdoj.gov
Christopher.Brown9@usdoj.gov


*/s/ Jessica Peck*
Jessica Peck
C. Alden Pelker
Trial Attorneys, U.S. Department of Justice
Computer Crime & Intellectual Property Section
1301 New York Ave., N.W., Suite 600
Washington, D.C. 20005
(202) 353-9455 (Peck)
(202) 616-5007 (Pelker)
Jessica.Peck@usdoj.gov
Catherine.Pelker@usdoj.gov


Enclosures

# EXHIBIT A-3

## CORRECTED SECOND AMENDED ATTACHMENT A

a. Approximately $2,460,375 seized from the Flagstar bank account corresponding to Signature Bank account number 1503814168.

b. Approximately $352,381.55 seized from Wells Fargo bank account number 5361262370.

c. Approximately $228,266.02 seized from JPMorgan Chase bank account number 877916952.

d. Assorted U.S. and Canadian gold coins, worth between approximately $160,000 and $300,000, which were excavated and recovered by law enforcement from LOCATION 1, a premises in California known to the Defendants and the Government.

e. Approximately 94,643.29837084 Bitcoin (BTC) (after required fees) seized from wallets recovered from Defendants' online storage account. The U.S. government's seizure of the 94,643.29837084 BTC is reflected in the following cryptocurrency transaction hashes:

| |
|---|
| 6e0d701ac2ea3ad87fc8bcaa786b994aa943f5eb9a67a1e345769bb090bf5b9e |
| afdfeeadb9f0a4691cbb8ace33a7c24c052b3608c4c8cc2e25afe053926b6389 |
| 77ad70fadfbbad5191c47c951469095ca845006f25fe9814f30f2853af367459 |
| c49ff6bd054fb386cd02fc94ca34b8773229ed8a5538e023ef7bea772d70c17a |
| 9d06994238d0de958033f42db39a6d2cc0de35e84be0ed080e41f017f02dffb3 |
| ed1812e8310bb25fbd138aae17be738ad3fa20e0783a8598c8dea56d3be5dad7 |
| ee56a9957f1f6166440bea01d0c0c29e4cec6230bb8231eced6ba844bb095d2a |
| c250725cfc9671d3849a3e85343ec5f3d045f805d002e56725c8ea2aebb9131a |
| b0aa2d76fd9463da6a7aff59e37d7ebf7b6aa1b660de2b2e9ab7755cf6f60ac3 |
| b18e40d96906b7b17f337ad6250f0c5aa9db934988321253741 02dd2f5e0ed47 |
| 8e5102edd876f71e3482b7602dd9141fbce3ac869fba55a757b4354c70536f34 |
| 11bae40ae4315a1e8f7d9a8df676db6bdb497b153711d1bf7952c540ed1a5966 |
| e6088723889de70fa985e7b8c012c77ea693a6ef9379fb26a951a2bb5c722525 |
| 3fe798be890c7db8beaca9d005cd650e787b1b16bc5e47eef26bfa87124b6a95 |
| d006075f40136ea7733aec2d6f32c31abc09f779de01a33e7e07804907d339c7 |
| 8e53ca8952fbf2d1a272ab376555a1ccee1ff0bcab0747a8c91b0ccfc77cc3fb |
| 97e4eb7ca5d0b2b6d501a53478486d5ed75ce58d1204c6036f25b33439d48627 |
| 658a550600e814f7bf7d032b7984912857f37c96a68e4dd3eb1dce4fc774e26f |
| 98281f388a4441d7bb00537e65b1a4581dcaddd3606fc09f6cf19598343be34d |
| d1dbc472abe47902aa71e639ba2feb2098b474ab20b853168ecdb0d87ce02955 |

```
61594a56cd2ef501cdb55b9037cd5785d1ad2eedfb1a4fab7ded50b1052a0650
b7bf853fd6eb27f66963d219d29b85e13796e315473b7c08484335a0b0da7669
9af41957244e97e70378a7afd2d41b73d0a64d94c9b2df9049c29dd1919741cb
```

    f.  Approximately 117,376.52651940 Bitcoin Cash (BCH) (after required fees) seized from wallets recovered from Defendants' online storage account. The U.S. government's seizure of the 117,376.52651940 BCH is reflected in the following cryptocurrency transaction hashes:

```
c29fb28633a9bee7720f7ec021c2441dc6a2289c92e887ac5214c35d49314379
0b9013f818de45ddfa9068f54f8513f15ae35bd711054d119b483a791c750684
0ae0e3c0db61a2542015164bdcead1636c614bdd5bf51b9537c5b8312db2b84a
16e1ba9b30fd5c86c9dd4ef3967105c2fbfe7ed9f510900b8acd7f7a0a9cdbd8
2544551e053688217ececb544bdc065d502db4ff4f227053fa25cc41be907541
4f24389c09897d50239d0be3ec39044160f65985cfb3fdf11d117a8fa39aaa24
6ad1a5ef2ed573b010e7ab32b395bed32142c07bf8bb67534880bbb03591215d
7278e247fc3c7bfa81732ba63c628fe30cb160ec9b7fa357a5dcff8a2f6738e3
739b58b49039856f8db1da64c713372e04c4e09f9ca32437b639b4d37aad920b
7570b746ecd24f66cb754e100f79c5259e9eecb0c7a0188e6cf5ee84f76d9b21
7cbd6e7161bbcb80865ef855128bbe1cdeb1e6b87788a99c2559046294bc898f
e308fc1199a044f613578e365313008762b8b779b3d92191e6e6ba9a6f5e2182
f8efc360fcd7d6f27b9f7e51911f361b94cb1ff2734be5e301b3cacedda9481e
```

    g.  Approximately 117,376.58178024 in Bitcoin Satoshi Vision (BSV) (after required fees) seized from wallets recovered from Defendants' online storage account. The U.S. government's seizure of the 117,376.58178024 BSV is reflected in the following cryptocurrency transaction hashes:

```
2cf808c73bda45a6ee1c266c60da50f01250d9452f7b51e1caaf3ecec605b416
a0ede2c37597976de79a67db2096b3d8f7a4f60f357c09953a7342ad1948b4b5
6b46c0067f786acf4f5a1925f12b9860ad61817829f30fefd898ad0c3bbaeaf0
```

    h.  Approximately 118,102.03258447 in Bitcoin Gold (BTG) (after required fees) seized from wallets recovered from Defendants' online storage account. The U.S. government's seizure of the 118,102.03258447 BTG is reflected in the following cryptocurrency transaction hashes:

```
a4ba827e99c6cef43ff590457671b63c0d52b2c215797e67c81fc168f499932c
97263227ea621461f3d22132c3e7562b0e401853fd4aced1db1b34aba1a65ab4
41ad49ad96dfd64eb0293484d4953ccbff7d70839e4c7b75db472c5553db1532
d6e8f7d9aac687cac9af801b4b38cbc8e71db2f21d41f0a6e0d8052d8087456b
c2d69e0a0090f201a29d6afb3655b7118b2282146abf64b044481ed99eb2fa27
```

| |
|---|
| ec3e2b93e7f7be50bb827ebfd366e2e1f4627dd8ed4550427ec793a3ea20187c |
| 2aa7dbb29d707fb1150c13d1ee6a0a17eeef7326116251cb5d13081fcd297ad8 |
| 70ed72a2c1e2d828f314f5bb327b0e03421bf854c4aba3ea9393258af6fba044 |
| c656cd61fce6c3acbeb0f20818d5d092c04c379d3fc72e3ec7e4f019f71a40ec |
| 2238af7a93f797a32ea20492fffa5e27b4d425c46ee7cb0e4fa262e2cddf3142 |
| ec2f4d2e7c13f19657ad4559a9bfd254437989f0f45e8993a17d84c374ecb02f |
| 5e26b7706b1c53b49d99ac1f501971b3d62c6d7e0ba6a01c9791e0d675cfb6e7 |

    i. Approximately 2,088,133.214436 USDT tokens (USDT) (after required fees) seized from wallets recovered from the Defendants' online storage account. The U.S. government's seizure of the 2,088,133.214436 USDT (USDT) is reflected in the following cryptocurrency transaction hashes:

| |
|---|
| 0xaac3544af0a36f02ed3f9019f8ab6ec01a46cdef1c6678eb02e4de77cfc44429 |
| 0x2924bfed103cf47743e06c8fc4e3d448aef66bd5e4c8b055c432cf97dcc66d92 |

    j. Approximately 8,984,961.413084 USDC tokens (USDC) (after required fees) seized from wallets recovered from the Defendants' online storage account. The U.S. government's seizure of the 8,984,961.413084 USDC is reflected in the following cryptocurrency transaction hashes:

| |
|---|
| 0x6fd9dea95481cd84e48af90d4a2215f81b9a6832d5cf30f1ffd35fdb3b9cc46d |
| 0x9e5766270527f9fbf2b74da6abace6d50990c4b29979751b05497acd24c6e78d |
| 0x025121522c27081acca889b52fb11004ec218afb94921b4b3d21635c389ae56e |
| 0xc4ab2429935e413581a684915ec50a6def2342958e81b4e53bddfc81d94ff07f |
| 0x208589d357a9741d8c9dc52b4fe26cdb58d923c7026caefea5d18f2c32deb470 |
| 0x8f7c636bc8c535d41dc321197c6faee791b9baf20220489cad8c63ca41320f07 |

    k. Approximately 18.50708 Ether (ETH) (after required fees) seized from wallets recovered from Defendants' online storage account. The U.S. government's seizure of the 18.50708 ETH is reflected in the following cryptocurrency transaction hashes:

| |
|---|
| 0x61d691bdafa62e0b6dcbea59a9d2a706d36df06b38b1e5f5bfbc20258fdb8f62 |
| 0x1ba8834537f2518c287f3417bc48ecb747f2a692f7ac03004ee3fd4056d7df69 |
| 0xc15e937c65cfa7d920505ed76dc939567e25c43eb232bddf31c865828b02cc2c |
| 0x043f8cde1f7cdae67c8da6823d7a11ce6c8910a5b281f8b33b8efb9f0bb48049 |

    l. Approximately 0.87954 Curve DAO tokens (CRV) (after required fees) seized from wallets recovered from Defendant's online storage account. The transfer of these assets to the U.S. Marshals Service is reflected in the following cryptocurrency transaction hash:

0x612e5774af05cef0626f429d876a315bbdb794fac8fe361ba1d4a01cb3db86a4

m. Approximately 153.369826 stkAAVE (after required fees) seized from wallets recovered from Defendants' online storage account. The U.S. government's seizure of the 153.369826 stkAAVE is reflected in the following cryptocurrency transaction hashes:

0xc72aa554c07abcf7be1823b564de679f7a6a7153a753c7bbb6489712edfa1efb

0xe32bda04be91e4555ff222bd76854a41cba5d8889986426ded5b821d75148ef8

n. Approximately 128,337.930125 CRV (after required fees) seized from wallets recovered from Defendants' online storage account. The U.S. government's seizure of the 128,337.930125 CRV is reflected in the following cryptocurrency transaction hash:

0x34adc0fcf52d47e448f39c8f532a18ea7ffe2350bdde2dd3559e1b40d9cf697c

o. Approximately 5,364,110.706859 DAI (after required fees) seized from wallets recovered from Defendants' online storage account. The U.S. government's seizure of the 5,364,110.706859 DAI is reflected in the following cryptocurrency transaction hash:

0xc28daceb604b66f949307191d890831cc1d4580a54b99be492a992117ee601c6

p. Approximately 1,030,436.50 aUSDT (after required fees) seized from wallets recovered from Defendants' online storage account. Those wallets were also contained on an external hard drive that was recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York, NY 10005. The 1,030,436.50 aUSDT is stored within the following cryptocurrency addresses:

| TSzQqhP4GwYqtA7ejTxzYT3B1A3VDicWZY |
| --- |
| 0x4bee2fe7a49525ab2def5638f3dd21d36eeea0e0 |
| 0xad9d2ab25d53399056282a2a2beb6efea960a6d3 |
| 0x6C47215Fa05F61c91183360E614fb0d338266BD1 |
| 0x0CaB63E3e978D1f66c19C480c206b01fB62F1243 |

q. Approximately 17,572,068.53 aUSDC (after required fees) seized from wallets recovered from Defendants' online storage account. Those wallets were also contained on an external hard that was drive that was recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York, NY 10005. The 17,572,068.53 aUSDC is stored within the following cryptocurrency addresses:

4

| |
|---|
| 0xF198D687695eA5576c13B9bb63668516e2B162E5 |
| 0x663d16a3CF413Cb12165eDc0a7B755EBCBCa46b9 |
| 0xe554E7C73dAa8734974b67Bf4b302217d02be792 |
| 0xBd6DaE0DcAeC1a2c32F7B2e81ecc438f8e7382c5 |
| 0xD727008a1C7f6013a727CF2C56bFBf9403aA8B70 |
| 0xB905c43B57ce15e3Fd865Cbb1f3003E07EAd9bf8 |
| 0x301C7b38C74fc524d926FA05AA07dcF5cf67D20b |
| 0xE15c7056532e9dD44f1297b72567eCD147512869 |
| 0x53512F278f0859e2B41801E2D55be914D37f7A7D |
| 0x50F30f62e3b52F3c5697D67686593d213B3fF534 |
| 0x349785542BA933018F62f38942D346872d1e88e7 |
| 0x73E70b1263c2996a7136BeC64c4d67c893D2a9dF |
| 0xAcc81C5Cdc7dBA80011F3D09BF72AD33D0BD9432 |
| 0xe5733F2Bf0757B9aD57B494BFD2465B8a3fcBEde |
| 0x24afb6813F7781ce77082c779d503Fc9042d3962 |
| 0x3dC18294596df858b902414D651717e77359770F |
| 0x9bf81CC31d0f1FA7Ade83058509a4DB154a182a2 |
| 0x18E675aaE75c37A045ac0bDA6adC7950307E4ef2 |
| 0xADac233DDf57D040114e64e462204eeb057b808F |
| GzJJYLRnMJz438k88qQRLA28jvm2YoE1qcP9vCB3NkRb |

r. Approximately 3,542,129.56 Yearn Vault USDT (yvUSDT) (after required fees) seized from wallets recovered from Defendants' online storage account. Those wallets were also contained on an external hard drive that was recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York, NY 10005. The 3,542,129.56 yvUSDT is stored within the following cryptocurrency address:

| |
|---|
| 0x0CaB63E3e978D1f66c19C480c206b01fB62F1243 |

s. Approximately 2,818.199 BTC (after required fees) seized from wallets recovered from Defendants' online storage account. The transfer of these assets to the U.S. Marshals Service is reflected in the following cryptocurrency transaction hashes:

| |
|---|
| 20b3673bf0d6294c46faf88204349530b694902797ce726d800ab0f342cd88d4 |
| 879a2d574abe141c4a932767ec59302520f7b7dda5c59e9230d32dd51fcbe5ee |

t. Approximately 12,267.025 BTC (after required fees) seized from wallets contained on an external hard drive that was recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York, NY 10005. The transfer of these assets to

5

the U.S. Marshals Service is reflected in the following cryptocurrency transaction hashes:

a0d8817455f004426e56cd502d2fc47d60ed1489363c97cd3dd1c2070f12659c
0c425db3da697bde3277852c8cea3c9bd9adc6575e593ef349c207ee3f4ab5a2

u. Approximately 1,155.901 BTC (after required fees) seized from wallets recovered from Defendants' online storage account. Those wallets were also contained on an external hard drive that was recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York, NY 10005. The transfer of these assets to the U.S. Marshals Service is reflected in the following cryptocurrency transaction hashes:

a1062947908576e32d4bbd34e28e9be1a98f9057496254dcf2f99c4cb2163ea1
c5fc3a6a2411a398d72f4de18fe480810f5f9f718660659d8c3c031412faaad3

v. Approximately 901,014 USDC (after required fees) seized from wallets recovered from Defendants' online storage account. Those wallets were also contained on an external hard drive that was recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York, NY 10005. The transfer of these assets to the U.S. Marshals Service is reflected in the following cryptocurrency transaction hash:

0x7593212e7d1b3a886041e8185a1ac2014d512b3b824d8b8e56ceb8041d7947fa

w. Approximately 290,729 USDT (after required fees) seized from wallets recovered from Defendants' online storage account. Those wallets were also contained on an external hard drive that was recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York, NY 10005. The transfer of these assets to the U.S. Marshals Service is reflected in the following cryptocurrency transaction hashes:

0x989359598f029a8fe4e731e600755e917657054c4fd6d34a1fd01f0cae4bc76f
0xfedcd5240a562dc05d6f2c0eb37e600c19012516a67356bfa9d9b68b0f77c795

x. Approximately 5,990 USDT (after required fees) seized from wallets contained on an external hard drive that was recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York, NY 10005. The transfer of these assets to the U.S. Marshals Service is reflected in the following cryptocurrency transaction hash:

0x7f50b68db4e36e8776f10489446859270ee906d471ba4fe30b61310ce5dd96e8

y. Approximately 1000.06 in ETH (after required fees) seized from wallets recovered from Defendants' online storage account. The transfer of these assets to the U.S. Marshals Service is reflected in the following cryptocurrency transaction hash:

6

0x3c8d25095a6b9986cf35c22d4d3de7b875c09f68c2a314e009a0978b4f96e37b

z. Approximately 7.998 BTC (after required fees) seized from wallets contained on an external hard drive that was recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York, NY 10005. The transfer of these assets to the U.S. Marshals Service is reflected in the following cryptocurrency transaction hashes:

196e4c6d1ef0642f50f8aeeec757442b220be84c6f06476bead5e89f0323f29e

2d39984ec84baf807259e6cc14c19549960c09757cfe8815f299abf8a8f04fcb

aa. Approximately 1,770.049 ETH (after required fees) seized from wallets contained on an external hard drive that was recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York, NY 10005. The transfer of these assets to the U.S. Marshals Service is reflected in the following cryptocurrency transaction hash:

0x6417b22fb8781fab467f4e5a2c30daa6aa0c16d72375545db4f692a22b3e8b1b

bb. Approximately 264.863 BTC (after required fees) seized from wallets contained on an external hard drive that was recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York, NY 10005. The transfer of these assets to the U.S. Marshals Service is reflected in the following cryptocurrency transaction hashes:

c5fc3a6a2411a398d72f4de18fe480810f5f9f718660659d8c3c031412faaad3

21e31e79897f380a989a19d9ce19ab476f97a25bed3f593cd08d64f336502a5a

cc. Approximately 0.196 BTC (after required fees) seized from wallets contained on an external hard drive that was recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York, NY 10005. The transfer of these assets to the U.S. Marshals Service is reflected in the following cryptocurrency transaction hashes:

83e11d4701f6a0e0b92f4ef1fdab19cff9d0f2af604896fb29e68bca69dabca3

e8742c298cc8e91e088063286eb8ccf3a4392c298925ea2f0a5dbb31133d3ea7

dd. Approximately 1,401.567 ETH (after required fees) seized from wallets recovered from Defendants' online storage account. The transfer of these assets to the U.S. Marshals Service is reflected in the following cryptocurrency transaction hash:

0xea69b0ad138028d0970f00bec1e07afab4999ad1da3cfec8091706ad3713b92e

7

ee. Approximately 1,767.624 ETH (after required fees) seized from wallets contained on an external hard drive that was recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York, NY 10005. The transfer of these assets to the U.S. Marshals Service is reflected in the following cryptocurrency transaction hash:

0xe1a4a5cc9288051cf92328b7423a9a95d6f005292beb5a5d4b3a7dad295162f2

ff. Approximately 1,066 in Wrapped Ether (WETH) (after required fees) seized from wallets recovered from Defendants' online storage account. Those wallets were also contained in an external hard drive that was recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York, NY 10005. The transfer of these assets to the U.S. Marshals Service is reflected in the following cryptocurrency transaction hash:

0xb0225a63e85aae99eccca0d36a3b9b71a89185960f20f057f55208ca7cfe3f36

gg. Approximately 1,091.23 ETH (after required fees) seized from wallets recovered from Defendants' online storage account. Those wallets were also contained on an external hard drive that was recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York, NY 10005. The U.S. government's seizure of the 1,019.23 ETH is reflected in the following cryptocurrency transaction hashes:

0xc177d5d00dad1586d9de699886fc94df443c04f3ee715dcccbdc25c85be34313
0x1a45810d725bb2a045f3eaf405e76916e65afa5eaf0774395eb9d2ccce317a59
0xc7e08c2c508c353fbf13a72ead2350ae174cacac039cb801c411a12d0823decb
0x5dd80ab5ff1af11969c1699a21ed54e6ade208a8d8c733955f9e474aae23533a
0x9fd10a0bba9e0d7e05b1e96bbe6fc586967cf12edd671aed7a258b78834a9f34

hh. Approximately 3,441.092 BTC (after required feed) seized from wallets recovered from Defendant's online storage account. Those wallets were also contained on an external hard drive that was recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York, NY 10005. The U.S. government's seizure of the 3,441.092 BTC is reflected in the following cryptocurrency transactions hashes:

d1bfe94c4893243bafdeab55d72674f8da36afb6909decff0e34f3122e0ba6ec
ab0e683b7b9ae343fa250431378d1e59c9652a2666a626c129c921860fe0e3fe
40b3523edd73fb13f9836c2d1acda58d36e31ca6a3733d1a61160fdc4d1a7dbc
5b31ae23bfc46fbc066eb2f7e4bebe218214c0703d2d6fa17eacdadf56392312
ea26b8dc219d6e22c9454c00209f8dbfe8f69abb339f769d1888d6b68dea2496
5063fb71e5d10d19dc564dd0359b1cba2edd52132ce413a48a45604908f2a853
251c470876b49e0543cf1a80975cad1e7dcb08cacac3db5c6c38a1067fa101db
b239e2ba9f715ed6fabae9d47afc8ad38f212c47210a155c648fac52be44c699
ebf2e0b20515b70c13d168ddbe77fec7d35c5497bf18dee4f18c2dcc224985fc

8

```
f0cc2e7f43a47382d9014a59dba87cc72d40fc36536ba91277a0ba9664f97627
ba80f527e648a1f0d814638440f4b54c5827a51cf14c364b504b11e7e782d2a2
40d04ca5033ba6ce681aa61a879d17773c5e24ddaa760f6493d430e547869a46
56afc5ea66ac8f9de47a59368db91477f0e099d9dd018dd25a50af7f114891fd
3ae9d68d56db74585f7496d7b848c1ea1d1ade04ac7fb5ccebafde2b0b99bbef
9b0a91099bd339e3942c88e4f2d419b56523848e93ad58393eedf8cf5773eadf
9ee5739526b0b3173b90fc5775c6d086456a9ec159f06ac0a4b1105840f9e246
5c451db3ef5df87e72a7257362121d3f74269ed86d4549b981e2f999a38637b5
334d7c7cf5d4fcfabf242599e48bdeed3d88ff7376ff822cf62b4460d5e26edd
de8de6dc7a5d9f9d4b44b8067177ade19acb9ddede9d0c1ea81ced90be8ce3d4
2511d95c9fb26b3cbf3b9a9483acf424e66d1bb9eb7337cc85dbbc43e4b089cb
8a1df6f0520dd53a726799d1c160cbda026697df03e806161a90bfe1ae6ff20a
507b16711260cc65091bcf7d0156f156ab670d0fb37b4da5913e6ac5f86a84de
d389f800a1397a2879426ec160ebc03416b2d8abd62553bf002b7c7800047fa9
ad921e7436f2f30573eb15d5be900a9aa2bc6bfd7c9bb25fe93f79a4dd70929f
ff876b8c4c9cce225ae5981b8aa5789387cd7958986b3225069c9e495cf54c15
1cc348089e49b14e5832e625b43adae5a46a2af1f0ab9292e0edee128d50f2bb
c81a895f4d0a85bcfb0530afa703278d77ececee19aea23a2f76cc8f12387efb
ccadd615642424f72bdd037437ac143bae6caf26936324a31ad17a37c5f25b3b
95ffa24facb0a79c699aa7e92ee7a0a708337aaf978bc79519090b000361b7c2
3f0e54eebc69b805ebfa105eefa4ced1a56141d9f26dfa643531d9b33a93b2bb
65df96feecaaf158574de8ad613188e0a51e1c916ce522caed5346b77b013db2
31601ea949a83a2402849ac660b0b5fab3d23eb44a407786601e58ec4adee606
3392ca86f07e344ee4ea0c3c65ed8b1fbd725a97ee3fced4e92e5067fe913e9b
c04fab75db0df690c0387c10ffb8f386820d7f8e91acee955afa732ff2198b5f
84f0d8afc2d71bc90bdf5a1c605870149f9e9239692894ac231b03ebff8c0568
791d8cd514dcf64deec4e592f0e9956a8a6770a53a2af0d58fa470a90abb7f57
4c0b48df536b19889c924bc003f00caff0b3fe02e38b686a86ada53645b9ce49
6173b659111b237f2b73463a26303df2371246e27cb48251f82fc05dc181ddc4
14964ee20b25f12029fedbea5d2e09bc899019bb0b0ec548ff691060d2bc7020
5e84b02474079d45cdf6f19fc2900a434e144198638a046e993cb0288f45f08a
82a7ca254e1ae98c2b538d6d5405e278a28e770deec269018fdb58790e4c1bb7
7df16a0a7127ceb69a1ee27501993cff2fecd5bc9775907933e76143adcd94bb
73c8c87ca4bd736fb747da2f0462153a287cd5f67eeb6a7581ee5edd1e6463c3
5876f25dc85aa7004fd55e051c933bfdc332bb1d3bb7e2da037debc9bb366434
dcea4d12c4c5c95fb8e5bb1ab14f947d8f9a6aa4ce4bc1479cd4d6bd9a343f64
c55cf70b038c035a98f7f55dd20c19f6758312b0e767d93ac6d2a4d18eb63d46
966da434bdb3d5b04371aba0e3e371dd79086d0a17e8a934e3366c30369eba1d
b93e15869e32dc18390d85cf50e93a2ce6f039b1ae2a7fd7f3a368e2b59672e2
e6ba3575a4ea632b4591f2fe14936e94d2cdfd8953a9551f1e64e8af1c35cd1e
785a5d40d9ca3def95dd0beb962734d4b485b7aae104e237a7723bafc3e3e8ed
e7fcbddb9488270e582a73f4e2578877cce4382d3f801350f63a798f39cb8956
832446463d160545fb90715e607547ea730593448816a4d01624e323656d2c32
```

9

```
c2263ac1b89facfe703f952f4f93e6e321c375f46a20a20b94495055b7aa6cb2
0f9301443899133c5cc88d2ec98c978599b9a97f7c4cf3b6ebb5185e513a2b28
08b17bbba3239821298f5e4f039e9e2092e18d49f8d2f8c2760b287763894bb2
3043ed00bde4c2fe49def9106feefe0ae0f11df8e8cd5d12e01935b49559e817
04418cbdc25be7d9384e114bbef6b87de9856e6dcb6c4b2b86600619986b2326
d144a404c8f0cb4332a26203e86b57b1b3c7ef3d0d8e512659ea4b69d3c86830
b864c71884ea055ed234a02ad52ef2ce386b548e2df80636878e1faf6b839b10
b1b640c1dbd9bbe820f5e3c4d6afc28479488928c331e26c67531969491808b5
4944ae6b2c191cdb7b6b6218e2b033b4c6158fb49cbe63b9fa0c1d44631fe677
f58421c24d18e8b7dfc1d91841356221fa368811b7313c2e9b94bf41c796e2da
4a4dc715421e1bba033bafe33cbff21269d583274a8c5f4715dd120da6751741
42d54a2de6a2b00ffdff16d2edd58ab05ff131fe46ee9e3cf52bc4cf8f8187eb
1ec385f5068b06e535603327f45e689e094c83383944e96d30192193d4fa1665
022702c1e93ec20012ae882e73f59648d5805428c684747e8554c72680a52d4a
4fdb8d8a3b25063f32ed4e2177641c2c2f880dcf627dda435743fafc39beaa00
d02636dfdf382626f02bdb12faea7a94ac7fc19392ff637d6b25b045724fdbce
39e9a301173d82599782d7d34b7b5fbb68e7e1adb83984b7ca9e5f3ce39f0af0
766fbf9d8cba9a1165112dce6fad880649cf8c88089e01eb1b5aa60295c863fd
293d737f7dbf952d4c6cf4c35d63e7d7c7e2257bcf4f7d7cce39beb36121f034
8c9809dc6fc3f5436202f9acc6c04905056f91abe33eb2d285ef0769c254ce8f
b48391571ee36e15622cf20d020a5c5262fdda226c88ed065cd66021ca927f56
c0d121b94a1bb0830a6a24954f2a85099c8f9037cffde50dfb0ef30661ea2de5
50303753bd876b0e6cead41fb9a85e34f1c1c4c11c5a171e8c8465a655ebe5fb
91832f153528833ff6019295cefa6fc370f4546126ada901112f97de7d6ea82b
a2dae4affc9ab681ac36254e3d91651e2a974e6be6ecadec4be154a8e8dbec34
5db3123391717b15fb01109b7ea0f85483013c9faa0cfc2d3afcb42d3e1d20d4
0e3824a6a73288ba65fa8587125a31c53e98fab37cb21d61404cd37eeb1ab68d
6355641540ab8981163f0ac4d0f08bbe9aedaed61db0357fa0ed8154a4d01da6
104df9c76f6586dfb6a88c1d9412c46893c23c3c815fa2ddd32bf3ca052b3ca6
981b378a641ab96b29528a9ed0f17cbb15ce3a52c0c506a99174df78a5b6612a
bfa696399d3345b4d3a5b5b8e3183482562d10aa3e1c14eb7f9264085b0bd239
4bc030231b94c54705aa6786b2b4ce47acf41b16f953101565bb7bb314f1c91e
f00f2684f37979e2d0e64a2b758d952124ebafe452343d93972500a9cb79987f
f47ba0062ec3cab9f2ad4715a558a575ca9bb5b5f791a6507f5a1fbeb8ec5a66
01ce909c6a61ebb682756bfb140690ef22b5c1fc6b6827aa423bb2af443c7fd2
73037cdc4051cad8347a1977d42821b7170ce210b311786c708d82c1c2d1514c
85498282c27ff117ed69067111b7ea303c9d2a3655faf9795b919872f17b46cd
51a3fd6e8cbd992c15b1197141933bb4e5bfc837c368d07edeb426eb2c6507d4
6a0187dc7470eb63ab7bb0afcea25e48f6bae8c6734fb056251d7a36a2d88c7b
1f1716abed9c616e538097cad579d1958a8b399aaccc686c4ab622df5f9be07c
a4c3ea141a28ea0f1dac7c6f023304f80d6eadd4762a6eccc8bb33268029aaae
90572eff4c00423fc85c49be940ad74614cfe41f472d183d375d4f39622bfa81
f92c166d8db3318e051027c1ea9bc4bba672dc4eb012b9d721ca42e209eb4843
```

10

```
23afc408a3af799b15c0cc86572163353e924163a96d211b5692ab7bfd02f635
7dd54a14d831e3aa771e9812f60a8561a3bebfa2d64f31f19f46c3277fed287a
523cf07d635e4b5764639764cc69285fe106e74401376f3d2592f9a6ed5b3e28
14da94ad3cb06dffc15a7511c5df79e8eafeeec996fc55e15b3bf4986f675f9d
4c8d251b05fc463a6e08dece4215e67398e52b6345b4bffe144aeb139fb5c14a
5684c447de8162420d7beeffc548fdbb45d950ead984afdee7fd52fad6d1bfd3
4501eef0dabb06062281aeb5d6ddf1dde6efce3f0ab30b6fca5d4f7407415bce
c765a4090c5757b1de61798dd798a787e937dafec6be9ba2eb4a9b589aa0cbbd
4ec5dc0986a652696ec700c94ad814a427ddc16216d8ee418351a60456d501b6
835d21780342969210c0bffb9452f8670416d9f5ad2b3e48e1e020ba4e6780d6
fb2d89401b3ee9f663add16c27783c36b154bc3a02600ef59d415b188b34b1a4
d289c011ba7c7de0a211e59ceeeae1a914385fe0e9ecd6a3ef966421aaab7171
00d077c214cedd26a88f38c7b15bb16e8d019bf70aa993152c8b7ddce8eb3944
8954cba05d12e2fdefe9be80e3d57ee4501f62aed9d826f7ca5c5e415bf9505a
4b3fa68414e7d4b094d935d94a365382a26429b6f4144d41f4b17f38e35ad9dc
a04a66468b78c9a05eb041f6764c8e20ddade583f247154acc2df1f00e6c334d
3e59e3d79db051544facebade7875a68aaa934010fd18bcae73d17c39d65ca8d
1a908fedfccf83c466e66165097f7c44c4323096d723926f54a785fdcae1f3c7
ad73d215638f0e5e12b7892d4559cab3485589dc4c80991074652db5a4e7908a
59b55a8e5dfc8c0436a4481cffbeb96be1c6801c5b27b0fc554f1cc9c962b08e
61230fb4cb5926edee8dc1f91b307f1b878b5d51ecff813fe380cea6e1d65db4
15b6e300c4a2e7ad58a826690b75f06978a4ba9b303f3743c67ff2eb50a5fe54
```

ii. Approximately 125 ETH (after required fees) seized from wallets recovered from an online storage account and an external hard drive recovered from the residence at 75 Wall Street, Apartment 33M, New York. The 125 ETH is currently frozen by the provider Switchain.

```
0x4e528ff82383c0d224f23379612ba776e25a034ecab36ee9ba933ef552d17244
0x28034afa39860a686e27740eb8921a4869d2b5b3dd0f4f08668454cedd450240
0xd5a558ef1131af75d3003f32b3ba1fce9793acf94617c9a812417b703b28cd4c
0xd52a43770854e40ca3db80ee74aae1ad53a061157f12e32b0df7e6d6a317f2f0
0xc527d4aa24b763da39cd1719d04a263043804aaed09cebc20c1a725da32c88b1
0xaa9619159bc55a541cf4a7c27c8aa15f56ab75c78e086c11966e5f62f7bb4056
0xec498184e9ee8dbc971e1862813d96ed3445327dc93215edb263d947ec43cc2b
0xe9e54a4f34fa47ec92f2c6c64a7b833adc38d38fc660ad31ecd2509e6ee931d4
```

jj. Approximately 47 ETH seized from wallets recovered from Defendants' online storage account. Those wallets were also contained on an external hard drive that was recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York, NY 10005. The 47 ETH was converted to USDT in the amount of approximately 169,001.494313 and is currently frozen at cryptocurrency address TSzQqhP4GwYqtA7ejTxzYT3B1A3VDicWZY.

      kk. $43,354 in U.S. currency recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York, NY 10005.

      ll. Approximately 2.42401 BTC (after required fees) seized from wallets recovered from Defendants' online storage account. Those wallets were also contained on an external hard drive that was recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York, NY 10005. The U.S. government's seizure of the 2.42401 BTC is reflected in the following cryptocurrency transaction hashes:

| 6761268e7dca334764dec865074e1fb05f5a81f0f0ea7838f18242b63712e29a |
|---|
| 6aa0a4f217fcdcf07996d00c07a7f852c287856c7288798c50c413efaf5e7bae |

# EXHIBIT A-4

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA      :
            :
           v.               :      **CRIMINAL NO. 23-cr-239 (CKK)**
            :
**ILYA LICHTENSTEIN**, *et al.*,      :
            :
       **Defendants.**      :

## SECOND AMENDED PRELIMINARY ORDER OF FORFEITURE

*WHEREAS*, a written plea agreement was filed with this Court and signed by defendant Ilya Lichtenstein ("Defendant Lichtenstein"), and his counsel, Samson Enzer, Anirudh Bansal, Connor O'Shea, and Angela F. Collins, in which Defendant Lichtenstein agreed to plead guilty to a Criminal Information charging, Count One, Conspiracy To Launder Monetary Instruments, in violation of Title 18, United States Code, Section 1956(h), and Defendant Lichtenstein has pled guilty to those offenses;

*WHEREAS*, a written plea agreement was filed with this Court and signed by defendant Heather Morgan ("Defendant Morgan"), and her counsel, Eugene V. Gorokhov and Charles Burnham, in which Defendant Morgan agreed to plead guilty to a Criminal Information charging, Count Two, Conspiracy To Launder Monetary Instruments, in violation of Title 18, United States Code, Section 371, and Count Three, Conspiracy To Defraud the United States, in violation of Title 18, United States Code, Section 371, and Defendant Morgan has pled guilty to those offenses;

*WHEREAS*, the Criminal Information alleged the forfeiture of any property, real or personal, involved in the offense alleged in Count One against Defendant Lichtenstein, and any property traceable to such property, which property is subject to forfeiture pursuant to Title 18, United States Code, Section 982(a)(1);

1

*WHEREAS*, the Criminal Information alleged the forfeiture of any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of the offense alleged in Count Two against Defendant Morgan, which property is subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c);

*WHEREAS*, the Criminal Information also alleged the forfeiture of specific properties now listed in Amended Attachment A;

*WHEREAS*, the Criminal Information further alleged that the United States will seek a forfeiture money judgment against Defendant Lichtenstein and in favor of the United States for a sum of money equal to the value of any property, real or personal, involved in the offense alleged in Count One, and any property traceable to such property, which property is subject to forfeiture pursuant to Title 18, United States Code, Section 982(a)(1);

*WHEREAS*, the Criminal Information further alleged that the United States will seek a forfeiture money judgment against Defendant Morgan and in favor of the United States for a sum of money equal to the value of any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of the offense alleged in Count Two, which property is subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c);

*WHEREAS*, following entry of Defendant Lichtenstein's and Defendant Morgan's guilty pleas, the government has transferred and/or recovered properties which constitute or are derived from proceeds traceable to a violation of the offense alleged in Count One as to Defendant Lichtenstein and Count Two as to Defendant Morgan, and which are listed in Amended

2

Attachment A hereto;

*WHEREAS*, pursuant to Rule 32.2(b)(1) of the Federal Rules of Criminal Procedure, this Court determines, based upon the evidence and information before it, including Defendant Lichtenstein's and Defendant Morgan's plea agreements, that (1) any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of the offenses to which each defendant pleaded guilty, is subject to forfeiture; and (2) the specific property identified in Amended Attachment A is subject to forfeiture, and the government has established the requisite nexus between the property and the offenses; all pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c);

*WHEREAS*, Title 21, United States Code, Section 853(p) authorizes the forfeiture of substitute property;

*WHEREAS*, Defendant Lichtenstein and Defendant Morgan have admitted that proceeds they personally obtained have been dissipated by them and cannot be located upon the exercise of due diligence; have been transferred or sold to, or deposited with, a third party; and/or have been placed beyond the jurisdiction of the Court; and

*WHEREAS*, upon entry of a forfeiture order, Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure authorizes the Attorney General or a designee to conduct any discovery the Court considers proper in identifying, locating, or disposing of property subject to forfeiture;

*NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED*:

1.      That the following property is declared forfeited to the United States, pursuant to Title 18, United States Code, Section 982(a)(1): any property, real or personal, involved in the offense alleged in Count One to which Defendant Lichtenstein pleaded guilty, and any property

3

traceable to such property. The specific properties listed in Amended Attachment A hereto are declared forfeited to the United States.

      2.      That the following property is declared forfeited to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c): any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of the offense alleged in Count Two to which Defendant Morgan pleaded guilty. The specific properties listed in Amended Attachment A hereto are declared forfeited to the United States.

      3.      The Court finds that proceeds that Defendant Lichtenstein and/or Defendant Morgan personally obtained as a result of the offenses to which they have pleaded guilty have been dissipated by them and cannot be located upon the exercise of due diligence; have been transferred or sold to, or deposited with, a third party; and/or have been placed beyond the jurisdiction of the Court.

      4.      The Court shall retain jurisdiction to enforce this Order, and to amend it as necessary, pursuant to Rule 32.2(e) of the Federal Rules of Criminal Procedure.

      5.      That pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure, and Defendant Lichtenstein's and Defendant Morgan's consent, this Order of Forfeiture is now final as to Defendant Lichtenstein and Defendant Morgan and shall be made part of their sentences and included in their judgments.

      6.      The Attorney General or a designee, pursuant to Rule 32.2(b)(3) of the Federal Rules of Criminal Procedure, is authorized to conduct any discovery to identify, locate, or dispose of property subject to this Order.

7.     The Clerk of the Court shall forward a certified copy of this Order to

USADC.AFMLS2@usdoj.gov.

Dated this _____ day of _Nov. 14_ , 2024.

_____
THE HONORABLE COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE

5

# EXHIBIT A-5

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**COURT CASE NUMBER: 1:23-CR-00239; NOTICE OF FORFEITURE**

Notice is hereby given that on November 14, 2024, in the case of <u>U.S. v. Ilya Lichtenstein and Heather Rhiannon Morgan</u>, Court Case Number 1:23-CR-00239, the United States District Court for the District of Columbia entered an Order condemning and forfeiting the following property to the United States of America:

Approximately 94,643.29837084 Bitcoin (BTC) (after required fees) seized from wallets recovered from Defendants' online storage account (22-IRS-000070), which was seized from Ilya Lichtenstein and Heather Rhiannon Morgan on or about February 04, 2022

Approximately 117,376.52651940 Bitcoin Cash (BCH) (after required fees) seized from wallets recovered from Defendants' online storage account (22-IRS-000071), which was seized from Ilya Lichtenstein and Heather Rhiannon Morgan on or about February 04, 2022

Approximately 117,376.58178024 in Bitcoin Satoshi Vision (BSV) (after required fees) seized from wallets recovered from Defendants' online storage account (22-IRS-000072), which was seized from Ilya Lichtenstein and Heather Rhiannon Morgan on or about February 04, 2022

Approximately 118,102.03258447 in Bitcoin Gold (BTG) (after required fees) seized from wallets recovered from Defendants' online storage account (22-IRS-000073), which was seized from Ilya Lichtenstein and Heather Rhiannon Morgan on or about February 04, 2022

$43,354 in U.S. Currency (22-IRS-000074), which was seized from Ilya Lichtenstein and Heather Rhiannon Morgan on or about January 05, 2022 at 75 Wall Street, Apartment 33M, New York, NY 10005

Assorted U.S. and Canadian gold coins, worth between approximately $160,000 and $300,000, which were excavated and recovered by law enforcement from LOCATION 1, a premises in California known to the Defendants and the Government (22-IRS-000496), which was seized from Ilya Lichtenstein and Heather Rhiannon Morgan on or about April 13, 2022 at LOCATION 1, California

Approximately 2,818.199 BTC (after required fees) seized from wallets recovered from Defendants' online storage account (23-FBI-007297), which was seized from Ilya Lichtenstein and Heather Rhiannon Morgan on or about July 20, 2023

Approximately 12,267.025 BTC (after required fees) seized from wallets contained on an external hard drive that was recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York, NY 10005 (23-FBI-007298), which was seized from Ilya Lichtenstein and Heather Rhiannon Morgan on or about July 20, 2023

Approximately 1,155.901 BTC (after required fees) seized from wallets recovered

from Defendants' online storage account. Those wallets were also contained on an external hard drive that was recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York, NY 10005 (23-FBI-007299), which was seized from Ilya Lichtenstein and Heather Rhiannon Morgan on or about July 20, 2023

Approximately 290,729 USDT (after required fees) seized from wallets recovered from Defendants' online storage account. Those wallets were also contained on an an external hard drive that was recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York, NY 10005 (23-FBI-007300), which was seized from Ilya Lichtenstein and Heather Rhiannon Morgan on or about July 20, 2023

Approximately 5,990 USDT (after required fees) seized from wallets contained on an external hard drive that was recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York, NY 10005 (23-FBI-007301), which was seized from Ilya Lichtenstein and Heather Rhiannon Morgan on or about July 20, 2023

Approximately 1000.06 in Ether (ETH) (after required fees) seized from wallets recovered from Defendants' online storage account (23-FBI-007302), which was seized from Ilya Lichtenstein and Heather Rhiannon Morgan on or about July 20, 2023

Approximately 1,030,436.50 aUSDT (after required fees) seized from wallets recovered from Defendants' online storage account. Those wallets were also contained on an external hard drive that was recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York 10005 (23-FBI-007303), which was seized from Ilya Lichtenstein and Heather Rhiannon Morgan on or about July 20, 2023

Approximately 7.998 BTC (after required fees) seized from wallets contained on an external hard drive that was recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York, NY 10005 (23-FBI-007306), which was seized from Ilya Lichtenstein and Heather Rhiannon Morgan on or about July 20, 2023

Approximately 1,770.049 ETH (after required fees) seized from wallets contained on an external hard drive that was recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York, NY 10005 (23-FBI-007307), which was seized from Ilya Lichtenstein and Heather Rhiannon Morgan on or about July 20, 2023

Approximately 1,401.567 ETH (after required fees) seized from wallets recovered from Defendants' online storage account (23-FBI-007308), which was seized from Ilya Lichtenstein and Heather Rhiannon Morgan on or about July 20, 2023

Approximately 1,066 in Wrapped Ether (WETH) (after required fees) seized from wallets recovered from Defendants' online storage account. Those wallets were also contained in an external hard drive that was recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York, NY 10005

(23-FBI-007309), which was seized from Ilya Lichtenstein and Heather Rhiannon Morgan on or about July 20, 2023

Approximately 264.863 BTC (after required fees) seized from wallets contained on an external hard drive that was recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York, NY 10005 (23-FBI-007439), which was seized from Ilya Lichtenstein and Heather Rhiannon Morgan on or about July 20, 2023

Approximately 0.196 BTC (after required fees) seized from wallets contained on an external hard drive that was recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York, NY 10005 (23-FBI-007440), which was seized from Ilya Lichtenstein and Heather Rhiannon Morgan on or about July 20, 2023

Approximately 901,014 USDC (after required fees) seized from wallets recovered from Defendants' online storage account. Those wallets were also contained on an external hard drive that was recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York, NY 10005 (23-FBI-007494), which was seized from Ilya Lichtenstein and Heather Rhiannon Morgan on or about July 20, 2023

Approximately 1,767.624 ETH (after required fees) seized from wallets contained on an external hard drive that was recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York, NY 10005 (23-FBI-007509), which was seized from Ilya Lichtenstein and Heather Rhiannon Morgan on or about July 20, 2023

Approximately 2.42401 in BTC (after required fees) seized from wallets recovered from Defendants' online storage account. Those wallets were also contained on an external hard drive that was recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York, NY 10005 (23-FBI-007511), which was seized from Ilya Lichtenstein and Heather Rhiannon Morgan on or about July 20, 2023

Approximately 17,572,068.53 aUSDC (after required fees) seized from wallets recovered from Defendants' online storage account. Those wallets were also contained on an external hard drive that was recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York, NY 10005 (23-FBI-007514), which was seized from Ilya Lichtenstein and Heather Rhiannon Morgan

Approximately 3,542,129.56 Yearn Vault USDT (yvUSDT) (after required fees) seized from wallets recovered from Defendants' online storage account. Those wallets were also contained on an external hard drive that was recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York, NY 10005 (23-FBI-007515), which was seized from Ilya Lichtenstein and Heather Rhiannon Morgan

Approximately $2,460,375.00 seized from the Flagstar bank account corresponding to Signature Bank account number 1503814168 (23-IRS-000901), which was seized from Ilya Lichtenstein and Heather Rhiannon Morgan on or about

May 30, 2023 at Flagstar Bank, N.A.

Approximately $352,381.55 seized from Wells Fargo bank account number 5361262370 (23-IRS-000902), which was seized from Ilya Lichtenstein and Heather Rhiannon Morgan on or about May 16, 2023 at Wells Fargo Bank, N.A.

Approximately $228,266.02 seized from JPMorgan Chase bank account number 877916952 (23-IRS-000903), which was seized from Ilya Lichtenstein and Heather Rhiannon Morgan on or about May 01, 2023 at JPMorgan Chase Bank

Approximately 71.9992991 Ethereum Classic (after required fees) seized from wallets recovered from an online storage account & an external hard drive recovered from the residence at 75 Wall Street, Apartment 33M, New York 10005 (24-FBI-008216), which was seized from Ilya Lichtenstein and Heather Rhiannon Morgan on or about January 26, 2024

Approximately 2,088,133.214436 USDT tokens (USDT) (after required fees) seized from wallets recovered from the Defendants' online storage account (24-FBI-008263), which was seized from Ilya Lichtenstein and Heather Rhiannon Morgan on or about December 18, 2023

Approximately 8,984,961.413084 USDC tokens (USDC) (after required fees) seized from wallets recovered from the Defendants' online storage account (24-FBI-008264), which was seized from Ilya Lichtenstein and Heather Rhiannon Morgan on or about December 18, 2023

Approximately 18.50708 Ether (ETH) (after required fees) seized from wallets recovered from Defendants' online storage account (24-FBI-008265), which was seized from Ilya Lichtenstein and Heather Rhiannon Morgan on or about December 18, 2023

Approximately 153.369826 stkAAVE (after required fees) seized from wallets recovered from Defendants' online storage account (24-FBI-008266), which was seized from Ilya Lichtenstein and Heather Rhiannon Morgan on or about December 18, 2023

Approximately 128,337.930125 CRV (after required fees) seized from wallets recovered from Defendants' online storage account (24-FBI-008268), which was seized from Ilya Lichtenstein and Heather Rhiannon Morgan on or about December 18, 2023

Approximately 5,364,110.706859 DAI (after required fees) seized from wallets recovered from Defendants' online storage account (24-FBI-008269), which was seized from Ilya Lichtenstein and Heather Rhiannon Morgan on or about December 18, 2023

Approximately 925.8408005 Bitcoin (after required fees) seized from wallets recovered from Defendant's online storage account. Those wallets were also contained in an external hard drive that was recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York, NY 10005 (25-FBI-000217), which was seized from Ilya Lichtenstein and Heather Rhiannon

Morgan on or about October 27, 2023

Approximately 369.1226146 Bitcoin (after required fees) seized from wallets recovered from Defendant's online storage account. Those wallets were also contained in an external hard drive that was recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York, NY 10005 (25-FBI-000218), which was seized from Ilya Lichtenstein and Heather Rhiannon Morgan on or about October 31, 2023

Approximately 168.133162 Bitcoin (after required fees) seized from wallets recovered from Defendant's online storage account. Those wallets were also contained in an external hard drive that was recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York, NY 10005 (25-FBI-000219), which was seized from Ilya Lichtenstein and Heather Rhiannon Morgan on or about November 17, 2023

Approximately 287.916982 Bitcoin (after required fees) seized from wallets recovered from Defendant's online storage account. Those wallets were also contained in an external hard drive that was recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York, NY 10005 (25-FBI-000220), which was seized from Ilya Lichtenstein and Heather Rhiannon Morgan on or about November 20, 2023

Approximately 517.84913 Bitcoin (after required fees) seized from wallets recovered from Defendant's online storage account. Those wallets were also contained in an external hard drive that was recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York, NY 10005 (25-FBI-000221), which was seized from Ilya Lichtenstein and Heather Rhiannon Morgan on or about November 21, 2023

Approximately 840.5640305 Bitcoin (after required fees) seized from wallets recovered from Defendant's online storage account. Those wallets were also contained in an external hard drive that was recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York, NY 10005 (25-FBI-000222), which was seized from Ilya Lichtenstein and Heather Rhiannon Morgan on or about November 22, 2023

Approximately 77.87556314 Bitcoin (after required fees) seized from wallets recovered from Defendant's online storage account. Those wallets were also contained in an external hard drive that was recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York, NY 10005 (25-FBI-000223), which was seized from Ilya Lichtenstein and Heather Rhiannon Morgan on or about November 29, 2023

Approximately 177.909315 Ethereum (after required fees) seized from wallets recovered from Defendant's online storage account. Those wallets were also contained in an external hard drive that was recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York, NY 10005 (25-FBI-000224), which was seized from Ilya Lichtenstein and Heather Rhiannon Morgan on or about November 29, 2023

Approximately 67.73298035 Bitcoin (after required fees) seized from wallets recovered from Defendant's online storage account. Those wallets were also contained in an external hard drive that was recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York, NY 10005 (25-FBI-000225), which was seized from Ilya Lichtenstein and Heather Rhiannon Morgan on or about January 11, 2024

Approximately 120.3560735 Bitcoin (after required fees) seized from wallets recovered from Defendant's online storage account. Those wallets were also contained in an external hard drive that was recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York, NY 10005 (25-FBI-000226), which was seized from Ilya Lichtenstein and Heather Rhiannon Morgan on or about January 18, 2024

Approximately 65.7115558 Bitcoin (after required fees) seized from wallets recovered from Defendant's online storage account. Those wallets were also contained in an external hard drive that was recovered from the Defendants' residence at 75 Wall Street, Apartment 33M, New York, NY 10005 (25-FBI-000227), which was seized from Ilya Lichtenstein and Heather Rhiannon Morgan on or about January 25, 2024

Approximately 841.3236683 Ethereum (after required fees) seized from wallets recovered from an online storage account & an external hard drive recovered from the residence at 75 Wall Street, Apartment 33M, New York (25-FBI-000228), which was seized from Ilya Lichtenstein and Heather Rhiannon Morgan on or about January 26, 2024

The United States hereby gives notice of its intent to dispose of the forfeited property in such manner as the United States Attorney General may direct. Any person, other than the defendant(s) in this case, claiming interest in the forfeited property must file an ancillary petition within 60 days of the first date of publication (December 17, 2024) of this Notice on this official government internet web site, pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure and 21 U.S.C. § 853(n)(1). The ancillary petition must be filed with the Clerk of the Court, 333 Constitution Ave., NW, Washington, DC 20001, and a copy served upon Assistant United States Attorney Rick Blaylock, 601 D Street, N.W., Washington, DC 20530. The ancillary petition shall be signed by the petitioner under penalty of perjury and shall set forth the nature and extent of the petitioner's right, title or interest in the forfeited property, the time and circumstances of the petitioner's acquisition of the right, title and interest in the forfeited property and any additional facts supporting the petitioner's claim and the relief sought, pursuant to 21 U.S.C. § 853(n).

Following the Court's disposition of all ancillary petitions filed, or if no such petitions are filed, following the expiration of the period specified above for the filing of such ancillary petitions, the United States shall have clear title to the property and may warrant good title to any subsequent purchaser or transferee.

The government may also consider granting petitions for remission or

mitigation, which pardon all or part of the property from the forfeiture. A petition must include a description of your interest in the property supported by documentation; include any facts you believe justify the return of the property; and be signed under oath, subject to the penalty of perjury, or meet the requirements of an unsworn statement under penalty of perjury. *See* 28 U.S.C. Section 1746. For the regulations pertaining to remission or mitigation of the forfeiture, see 28 C.F.R. Sections 9.1 - 9.9. The criteria for remission of the forfeiture are found at 28 C.F.R. Section 9.5(a). The criteria for mitigation of the forfeiture are found at 28 C.F.R. Section 9.5(b). The petition for remission need not be made in any particular form and may be filed online or in writing. You should file a petition for remission not later than 11:59 PM EST 30 days after the date of final publication of this notice. *See* 28 C.F.R. Section 9.3(a). The https://www.forfeiture.gov/FilingPetition.htm website provides access to a standard petition for remission form that may be mailed and the link to file a petition for remission online. If you cannot find the desired assets online, you must file your petition for remission in writing by sending it to Assistant United States Attorney Rick Blaylock, 601 D Street, N.W., Washington, DC 20530. This website provides answers to frequently asked questions (FAQs) about filing a petition for remission. You may file both an ancillary petition with the court and a petition for remission or mitigation.

# EXHIBIT A-6

# PETITION FOR REMISSION OR MITIGATION OF A CRIMINAL OR CIVIL FORFEITURE ACTION BY THE UNITED STATES DEPARTMENT OF JUSTICE

Note:  This is a sample to assist potential petitioners.  There is no legal form or format required for filing a petition.  For more specific guidance on filing your petition, please consult Title 28, Code of Federal Regulations (C.F.R.) Section 9.4, which can be found at www.GPOaccess.gov.

To:  The Attorney General of the United States

From:  _____

_____
**(Name and address of petitioner or petitioner's attorney or representative)**

_____
**(Social Security Number / Taxpayer Identification Number of Petitioner)**

_____          _____
**Phone Number**                                      **Email Address**

I am petitioning for the remission of the property described below because I am (check all that apply):

__  a victim of the crime underlying the forfeiture of the forfeited property, or related offense (*complete Sections I, III, and V*);

__  an owner of the forfeited property (*complete Sections I, II and V*); and/or

__  a lienholder of the forfeited property (*complete Sections I, II, and V*).

*If you would like to petition for the mitigation of the property (return of part of your interest in the property or return upon the imposition of certain conditions) because of extreme hardship, you must also complete Section IV.*

## SECTION I

Description of Property *(include specific information such as make, model, or serial numbers if applicable)*:

_____
_____

Seizing Agency: _____

Seizure Number/Asset ID Number: _____

Date and Place of Seizure: _____

**Court Case Information**

**Case Name:** _____

**Case Number:** _____

**Judicial District:** _____

# SECTION II

Request for Remission - Owner or Lienholder

*This section should be completed by persons claiming an ownership interest in the property.*

I am requesting remission of this forfeiture pursuant to 28 C.F.R. § 9.5(a) because I have a valid, good faith, and legally cognizable interest in the seized property as owner or lienholder as described below:

_____
_____
_____
_____
_____
_____

*Provide supporting documentation such as bills of sale, retail installment agreements, contracts, certificates of title, or mortgages.*

AND

1. __  I am innocent within the meaning of the innocent owner standard as provided in Title 18 U.S. Code Section 983(d), because:

    __  I did not know of the conduct giving rise to the forfeiture; or

    __  Upon learning of the conduct giving rise to the forfeiture, I did all that reasonably could be expected under the circumstances to terminate such use of the property.

Please explain answer:  _____

_____

OR

2. __  I was a bona fide purchaser or seller of the forfeited property for value without cause to believe that the property was subject to forfeiture at the time of the offense underlying the forfeiture.

OR

3. __  I held a legally cognizable interest in the forfeited property at the time of the offense underlying the forfeiture superior to that of the defendant.

Please explain answer 2 or 3:  _____

_____
_____

# SECTION III

Non-Owner Victim's Explanation of Loss

*This section should be completed by victim petitioners only.*

__ I am requesting remission of this forfeiture because I am a victim of the criminal offense underlying the forfeiture of this property or am the victim of a related offense and I have suffered a pecuniary loss as a result of the offense that resulted in the forfeiture.

In the space provide below, please explain how you are a victim of the criminal offense, or a related offense, underlying the forfeiture of this property.   Be as specific as possible and provide details such as significant dates, names of individuals whom you dealt with, the amount of money you claim to have lost (including specifics of the transactions resulting in the loss), and any other information that you believe would be helpful in verifying your loss.  Please attach documentation of your loss (copies only), including receipts, invoices, bank statements, wire transfer confirmation statements and cancelled checks, to your petition.

**Do not attach your original documents to the petition.**

_____

_____

_____

_____

_____

_____

_____

_____

Total Amount of Pecuniary Loss Claimed: _____

**(Do not include collateral expenses such as attorney fees, investigative costs, lost wages. Do not include non-pecuniary harms such as pain and suffering, emotional distress, etc.)**

## SECTION IV

Petition for Mitigation of the Forfeiture

*This section need be completed only by owner and lienholder petitioners seeking alternative relief to complete remission of the property.*

In the event that the Ruling Official determines that I do not qualify for remission of the property, I hereby request mitigation of the forfeiture to avoid extreme hardship. In support of my request, I would like the Ruling Official to consider the following extenuating circumstances:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

## SECTION V

Declaration

*The declaration must be completed by all petitioners unless the petitioner is represented by an attorney.  The attorney may complete the declaration if the petitioner completes the sworn notice of representation below.*

I understand that the information that I am providing in support of my petition will be relied upon for purposes of determining my right to receive a petition award. I hereby declare under penalty of perjury under the laws of the United States of America that I believe that the information I am providing in support of my petition is true and correct. I further certify that any documents I have submitted in support of my petition consist of unaltered copies of documents that are in my possession.

_____

**Signature**

_____

**Print Name**

_____

**Date**

## Sworn Notice of Representation

*This section must be completed only by petitioners who are represented by an attorney and whose attorney has executed the declaration provided above.*

I have retained the attorney who has completed the Declaration in Section V to represent me in this matter.  I have reviewed the foregoing petition and found that its contents are accurate to the best of my information and belief.  I declare under penalty of perjury that the foregoing information is true and correct.

_____

**Signature**

_____

**Print Name**

_____

**Date**

**The completed original petition for remission and all supporting documentation must be submitted to the United States Attorney for the judicial district in which the forfeiture proceedings took place.  A copy of the petition for remission should be submitted to the seizing agency in the judicial district in which the seizure occurred.**

CODE OF FEDERAL REGULATIONS
TITLE 28--JUDICIAL ADMINISTRATION
CHAPTER I--DEPARTMENT OF JUSTICE
PART 9--REGULATIONS GOVERNING THE REMISSION OR MITIGATION OF CIVIL
AND CRIMINAL FORFEITURES

§ 9.1 Authority, purpose, and scope.

§ 9.2 Definitions.

§ 9.3 Petitions in administrative forfeiture cases.

§ 9.4 Petitions in judicial forfeiture cases.

§ 9.5 Criteria governing administrative and judicial remission and mitigation.

§ 9.6 Special rules for specific petitioners.

§ 9.7 Terms and conditions of remission and mitigation.

§ 9.8 Provisions applicable to victims.

§ 9.9 Miscellaneous Provisions.

**§ 9.1 Authority, purpose, and scope.**

(a) Purpose.  This part sets forth the procedures for agency officials to follow when considering remission or mitigation of administrative forfeitures under the jurisdiction of the agency, and civil judicial and criminal judicial forfeitures under the jurisdiction of the Criminal Division.  The purpose of the regulations in this part is to provide a basis for ameliorating the effects of forfeiture through the partial or total remission of forfeiture for individuals who have an interest in the forfeited property but who did not participate in, or have knowledge of, the conduct that resulted in the property being subject to forfeiture and, where required, took all reasonable steps under the circumstances to ensure that such property would not be used, acquired, or disposed of contrary to law.  Additionally, the regulations provide for partial or total mitigation of the forfeiture and imposition of alternative conditions in appropriate circumstances.

(b) Authority to grant remission and mitigation.

 (1) Remission and mitigation functions in administrative forfeitures are performed by the agency seizing the property.  Within the Federal Bureau of Investigation, authority to grant remission and mitigation is delegated to the Forfeiture Counsel, who is the Unit Chief, Legal Forfeiture Unit, Office of the General Counsel;  within the Drug Enforcement Administration, authority to grant remission and mitigation is delegated to the Forfeiture Counsel, Office of Chief Counsel;  and within the Immigration and Naturalization Service, authority to grant remission and mitigation is delegated to the INS Regional Directors.

 (2) Remission and mitigation functions in judicial cases are performed by the Criminal Division of the Department of Justice.  Within the Criminal Division, authority to grant remission and mitigation is delegated to the Chief, Asset Forfeiture and Money Laundering Section, Criminal Division.

(3) The powers and responsibilities delegated by these regulations in this part may be redelegated to attorneys or managers working under the supervision of the designated officials.

(c) The time periods and internal requirements established in this part are designed to guide the orderly administration of the remission and mitigation process and are not intended to create rights or entitlements in favor of individuals seeking remission or mitigation.  The regulations will apply to all decisions on petitions for remission or mitigation made on or after February 3, 1997.  The regulations will apply to decisions on requests for reconsideration of a denial of a petition under §§ 9.3(j) and 9.4(k) only if the initial decision on the petition was made under the provisions of this part effective on February 3, 1997.

(d) This part governs any petition for remission filed with the Attorney General and supersedes any Department of Justice regulation governing petitions for remission, to the extent such regulation is inconsistent with this part. In particular, this part supersedes the provisions of 21 CFR 1316.79 and 1316.80, which contain remission and mitigation procedures for property seized for narcotics violations. The provisions of 8 CFR 274.13 through 274.19 and 28 CFR 8.10, which concern non-drug related forfeitures, are also superseded by this part where those regulations relate to remission and mitigation.

**§ 9.2 Definitions.**

As used in this part:

(a) The term administrative forfeiture means the process by which property may be forfeited by an investigative agency rather than through judicial proceedings.

(b) The term appraised value means the estimated market value of an asset at the time and place of seizure if such or similar property was freely offered for sale between a willing seller and a willing buyer.

(c) The term Assets Forfeiture Fund means the Department of Justice Assets Forfeiture Fund or Department of the Treasury Asset Forfeiture Fund, depending upon the identity of the seizing agency.

(d) The term Attorney General means the Attorney General of the United States or his or her designee.

(e) The term beneficial owner means a person with actual use of, as well as an interest in, the property subject to forfeiture.

(f) The terms Chief, Asset Forfeiture and Money Laundering Section, and Chief, refer to the Chief of the Asset Forfeiture and Money Laundering Section, Criminal Division, United States Department of Justice.

(g) The term general creditor means one whose claim or debt is not secured by a specific right to obtain satisfaction against the particular property subject to forfeiture.

(h) The term judgment creditor means one who has obtained a judgment against the debtor but has not yet received full satisfaction of the judgment.

(i) The term judicial forfeiture means either a civil or a criminal proceeding in a United States District Court that may result in a final judgment and order of forfeiture.

(j) The term lienholder means a creditor whose claim or debt is secured by a specific right to obtain satisfaction against the particular property subject to forfeiture.  A lien creditor qualifies as a lienholder

if the lien:

(1) Was established by operation of law or contract;

(2) Was created as a result of an exchange of money, goods, or services;  and

(3) Is perfected against the specific property forfeited for which remission or mitigation is sought  (e.g., a real estate mortgage;  a mechanic's lien).

(k) The term net equity means the amount of a lienholder's monetary interest in property subject to forfeiture.  Net equity shall be computed by determining the amount of unpaid principal and unpaid interest at the time of seizure, and by adding to that sum unpaid interest calculated from the date of seizure through the last full month prior to the date of the decision on the petition. Where a rate of interest is set forth in a security agreement, the rate of interest to be used in this computation will be the annual percentage rate so specified in the security agreement that is the basis of the lienholder's interest. In this computation, however, there shall be no allowances for attorneys' fees, accelerated or enhanced interest charges, amounts set by contract as damages, unearned extended warranty fees, insurance, service contract charges incurred after the date of seizure, allowances for dealer's reserve, or any other similar charges.

(l) The term owner means the person in whom primary title is vested or whose interest is manifested by the actual and beneficial use of the property, even though the title is vested in another.  A victim of an offense, as defined in paragraph (v) of this section, may also be an owner if he or she has a present legally cognizable ownership interest in the property forfeited.  A nominal owner of property will not be treated as its true owner if he or she is not its beneficial owner.

(m) The term person means an individual, partnership, corporation, joint business enterprise, estate, or other legal entity capable of owning property.

(n) The term petition means a petition for remission or mitigation of forfeiture under the regulations in this part.  This definition includes a petition for restoration of the proceeds of sale of forfeited property and a petition for the value of forfeited property placed into official use.

(o) The term petitioner means the person applying for remission, mitigation, restoration of the proceeds of sale, or for the appraised value of forfeited property, under the regulations in this part.  A petitioner may be an owner as defined in § 9.2(l), a lienholder as defined in § 9.2(j), or a victim as defined in § 9.2(v), subject to the limitations of § 9.8.

(p) The term property means real or personal property of any kind capable of being owned or possessed.

(q) The term record means a series of arrests for related crimes, unless the arrestee was acquitted or the charges were dismissed for lack of evidence;  a conviction for a related crime or completion of sentence within ten years of the acquisition of the property subject to forfeiture;  or two convictions for a related crime at any time in the past.

(r) The term related crime as used in § 9.2(q) and § 9.6(e) means any crime similar in nature to that which gives rise to the seizure of property for forfeiture.  For example, where property is seized for a violation of the federal laws relating to drugs, a related crime would be any offense involving a violation of the federal laws relating to drugs or the laws of any state or political subdivision thereof relating to drugs.

(s) The term related offense as used in § 9.8 means:

 (1) Any predicate offense charged in a Federal Racketeer Influenced and Corrupt Organizations Act (RICO) count for which forfeiture was ordered;  or

 (2) An offense committed as part of the same scheme or design, or pursuant to the same conspiracy, as was involved in the offense for which forfeiture was ordered.

(t) The term Ruling Official means any official to whom decision making authority has been delegated pursuant to § 9.1(b).

(u) The term seizing agency means the federal agency that seized the property or adopted the seizure of another agency for federal forfeiture.

(v) The term victim means a person who has incurred a pecuniary loss as a direct result of the commission of the offense underlying a forfeiture.  A drug user is not considered a victim of a drug trafficking offense under this definition.  A victim does not include one who acquires a right to sue the perpetrator of the criminal offense for any loss by assignment, subrogation inheritance, or otherwise form the actual victim, unless that person has acquired an actual ownership interest in the forfeited property.

(w) The term violator means the person whose use or acquisition of the property in violation of the law subjected such property to seizure for forfeiture.

## § 9.3 Petitions in administrative forfeiture cases.

(a) Notice of seizure.  The notice of seizure and intent to forfeit the property shall advise any persons who may have a present ownership interest in the property to submit their petitions for remission or mitigation within thirty (30) days of the date they receive the notice in order to facilitate processing. Petitions shall be considered any time after notice until the forfeited property is placed into official use, sold, or otherwise disposed of according to law, except in cases involving petitions to restore the proceeds from the sale of forfeited property.  A notice of seizure shall include the title of the seizing agency, the Ruling Official, the mailing and street address of the official to whom petitions should be sent, and an asset identifier number.

(b) Persons who may file.  A petition for remission or mitigation must be filed by a petitioner as defined in § 9.2(o) or as prescribed in §§ 9.9(g) and (h).

(c) Contents of petition.

 (1) All petitions must include the following information in clear and concise terms:

   (i) The name, address, and social security or other taxpayer identification number of the person claiming an interest in the seized property who is seeking remission or mitigation;

   (ii) The name of the seizing agency, the asset identifier number, and the date and place of seizure;

   (iii) A complete description of the property, including make, model, and serial numbers, if any;  and

   (iv) A description of the petitioner's interest in the property as owner, lienholder, or otherwise, supported by original or certified bills of sale, contracts, deeds, mortgages, or other documentary

evidence.

 (2) Any factual recitation or documentation of any type in a petition must be supported by a sworn affidavit.

(d) Releases.  In addition to the contents of the petition for remission or mitigation set forth in paragraph (c) of this section, upon request, the petitioner shall also furnish the agency with an instrument executed by the titled or registered owner and any other known claimant of an interest in the property releasing interest in such property.

(e) Filing petition with agency.

 (1) A petition for remission or mitigation subject to administrative forfeiture shall be addressed to the appropriate federal agency as follows:

   (i) Drug Enforcement Administration, Office of Chief Counsel, Street Address:  700 Army Navy Drive, Arlington, VA 22202

Mailing Address:  P.O. Box 28356, Washington, D.C. 20038.

   (ii) Federal Bureau of Investigation, Special Agent in Charge, Field Office that seized the property.

   (iii) Immigration and Naturalization Service District Director, Chief Patrol Agent, or Regional Asset Forfeiture Office at location with jurisdiction over the forfeiture proceeding.

 (2) The petition is to be sent to the official address provided in the notice of seizure and shall be sworn to by the petitioner or by the petitioner's attorney upon information and belief, supported by the client's sworn notice of representation pursuant to 28 U.S.C. 1746, as set out in § 9.9(g).  The Chief of the Asset Forfeiture and Money Laundering Section is delegated authority to amend the address of the official to whom petitions may be sent from time to time, as necessary, by publishing notice of the change of address in the Federal Register.  Failure to publish a notice of change of address in the Federal Register shall not alter the authority of the Ruling Official to determine petitions for remission or mitigation nor the obligation of a petitioner to file a petition at the address provided in the notice of seizure.  Failure to publish a notice of change of address in the Federal Register shall not be grounds for expanding the time for filing a petition for remission or mitigation under the regulations in this part.

(f) Agency investigation.  Upon receipt of a petition, the seizing agency shall investigate the merits of the petition and prepare a written report containing the results of that investigation.  This report shall be submitted to the Ruling Official for review and consideration.

(g) Ruling.  Upon receipt of the petition and the agency report, the Ruling Official for the seizing agency shall review the petition and the report, and shall rule on the merits of the petition.  No hearing shall be held.

(h) Petitions granted.  If the Ruling Official grants a remission or mitigation of the forfeiture, a copy of the decision shall be mailed to the petitioner or, if represented by an attorney, to the petitioner's attorney.  A copy shall also be sent to the United States Marshals Service or other property custodian.  The written decision shall include the terms and conditions, if any, upon which the remission or mitigation is granted and the procedures the petitioner must follow to obtain release of the property or the monetary interest therein.

(i) Petitions denied.  If the Ruling Official denies a petition, a copy of the decision shall be mailed to the petitioner or, if represented by an attorney, to the petitioner's attorney of record.  A copy of the decision shall also be sent to the United States Marshals Service or other property custodian.  The decision shall specify the reason that the petition was denied.  The decision shall advise the petitioner that a request for reconsideration of the denial of the petition may be submitted to the Ruling Official in accordance with paragraph (j) of this section.

(j) Request for reconsideration.

(1) A request for reconsideration of the denial of the petition shall be considered if:

(i) It is postmarked or received by the office of the Ruling Official within ten (10) days from the receipt of the notice of denial of the petition by the petitioner;  and

(ii) The request is based on information or evidence not previously considered that is material to the basis for the denial or presents a basis clearly demonstrating that the denial was erroneous.

(2) In no event shall a request for reconsideration be decided by the same Ruling Official who ruled on the original petition.

(3) Only one request for reconsideration of a denial of a petition shall be considered.

(k) Restoration of proceeds from sale.

(1) A petition for restoration of the proceeds from the sale of forfeited property, or for the appraised value of forfeited property when the forfeited property has been retained by or delivered to a government agency for official use, may be submitted by an owner or lienholder in cases in which the petitioner:

(i) Did not know of the seizure prior to the entry of a declaration of forfeiture;  and

(ii) Could not reasonably have known of the seizure prior to the entry of a declaration of forfeiture.

(2) Such a petition shall be submitted pursuant to paragraphs (b) through (e) of this section within ninety (90) days of the date the property is sold or otherwise disposed of.

### § 9.4 Petitions in judicial forfeiture cases.

(a) Notice of seizure.  The notice of seizure and intent to forfeit the property shall advise any persons who may have a present ownership interest in the property to submit their petitions for remission or mitigation within thirty (30) days of the date they receive the notice in order to facilitate processing.  Petitions shall be considered any time after notice until such time as the forfeited property is placed in official use, sold, or otherwise disposed of according to law, except in cases involving petitions to restore property.  A notice of seizure shall include the title of the Ruling Official and the mailing and street address of the official to whom petitions should be sent, the name of the agency seizing the property, an asset identifier number, and the district court docket number.

(b) Persons who may file.  A petition for remission or mitigation must be filed by a petitioner as defined in § 9.2(o) or as prescribed in §§ 9.9 (g) and (h).

(c) Contents of petition.

(1) All petitions must include the following information in clear and concise terms:

(i) The name, address, and social security or other taxpayer identification number of the person claiming an interest in the seized property who is seeking remission or mitigation;

(ii) The name of the seizing agency, the asset identifier number, and the date and place of seizure;

(iii) The district court docket number;

(iv) A complete description of the property, including the address or legal description of real property, and make, model, and serial numbers of personal property, if any;  and

(v) A description of the petitioner's interest in the property as owner, lienholder, or otherwise, supported by original or certified bills of sale, contracts, mortgages, deeds, or other documentary evidence.

(2) Any factual recitation or documentation of any type in a petition must be supported by a sworn affidavit.

(d) Releases.  In addition to the content of the petition for remission or mitigation set forth in paragraph (c) of this section, the petitioner, upon request, also shall furnish the agency with an instrument executed by the titled or registered owner and any other known claimant of an interest in the property releasing the interest in such property.

(e) Filing petition with Department of Justice.  A petition for remission or mitigation of a judicial forfeiture shall be addressed to the Attorney General;  shall be sworn to by the petitioner or by the petitioner's attorney upon information and belief, supported by the client's sworn notice of representation pursuant to 28 U.S.C. 1746, as set forth in § 9.9(g);  and shall be submitted to the United States Attorney for the district in which the judicial forfeiture proceedings are brought.  A petitioner also shall submit a copy of the petition to the seizing agency in the judicial district in which the seizure occurred as specified in the notice of seizure, except in Drug Enforcement Administration cases, where the copy shall be submitted to Drug Enforcement Administration Headquarters, Office of Chief Counsel, P.O. Box 28356, Washington, D.C. 20038, or 700 Army Navy Drive, Arlington, VA 22202.

(f) Agency investigation and recommendation;  United States Attorney's recommendation.  Upon receipt of a petition, the United States Attorney shall direct the seizing agency to investigate the merits of the petition based on the information provided by the petitioner and the totality of the agency's investigation of the underlying basis for forfeiture.  The agency shall submit to the United States Attorney a report of its investigation and its recommendation on whether the petition should be granted or denied.  Upon receipt of the agency's report and recommendation, the United States Attorney shall forward to the Chief, Asset Forfeiture and Money Laundering Section, the petition, the seizing agency's report and recommendation, and the United States Attorney's recommendation on whether the petition should be granted or denied.

(g) Ruling.  The Chief shall rule on the petition.  No hearing shall be held.  The Chief shall not rule on any petition in any case in which similar petition has been administratively denied by the seizing agency prior to the referral of the case to the United States Attorney for the institution of forfeiture proceedings.

(h) Petitions under Internal Revenue Service liquor laws.  The Chief shall accept and consider petitions submitted in judicial forfeiture proceedings under the Internal Revenue Service liquor laws only prior to

the time a decree of forfeiture is entered.  Thereafter, district courts have exclusive jurisdiction.

(i) Petitions granted.  If the Chief grants a remission or mitigates the forfeiture, the Chief shall mail a copy of the decision to the petitioner or, if represented by an attorney, to the petitioner's attorney, the appropriate United States Attorney, the United States Marshals Service or other property custodian, and the appropriate seizing agency.  The written decision shall include the terms and conditions, if any, upon which the remission or mitigation is granted and the procedures the petitioner must follow to obtain release of the property or the monetary interest therein.  The Chief shall advise the petitioner or the petitioner's attorney to consult with the United States Attorney as to such terms and conditions.  The United States Attorney shall confer with the seizing agency regarding the release and shall coordinate disposition of the property with that office and the United States Marshals Service or other property custodian.

(j) Petitions denied.  If the Chief denies a petition, a copy of that decision shall be mailed to the petitioner, or if represented by an attorney, to the petitioner's attorney of record, to the appropriate United States Attorney, the United States Marshals Service or other property custodian, and to the appropriate seizing agency.  The decision shall specify the reason that the petition was denied.  The decision shall advise the petitioner that a request for reconsideration of the denial of the petition may be submitted to the Chief at the address provided in the decision, in accordance with paragraph (k) of this section.

(k) Request for reconsideration.

 (1) A request for reconsideration of the denial shall be considered if:

   (i) It is postmarked or received by the Asset Forfeiture and Money Laundering Section at the address contained in the decision denying the petition within ten (10) days from the receipt of the notice of denial of the petition by the petitioner;  and

   (ii) The request is based on information or evidence not previously considered that is material to the basis for the denial or presents a basis clearly demonstrating that the denial was erroneous.  A copy of the request must be received by the appropriate United States Attorney within ten (10) days of the receipt of the denial by the petitioner.

 (2) In no event shall a request for reconsideration be decided by the Ruling Official who ruled on the original petition.

 (3) Only one request for reconsideration of a denial of a petition shall be considered.

 (4) Upon receipt of the request for reconsideration of the denial of a petition, disposition of the property will be delayed pending notice of the decision at the request of the Chief.  If the United States Attorney does not receive a copy of the request for reconsideration within the prescribed period, the deposition of the property may proceed.

(l) Restoration of Proceeds from sale.

 (1) A petition for restoration of the proceeds from the sale of forfeited property, or for the appraised value of forfeited property when the forfeited property has been retained by or delivered to a government agency for official use, may be submitted by an owner or lienholder in cases in which the petitioner:

   (i) Did not know of the seizure prior to the entry of a final order of forfeiture;  and

(ii) Could not reasonably have known of the seizure prior to the entry of a final order of forfeiture.

(2) Such a petition must be submitted pursuant to paragraphs (b) through (e) of this section within ninety (90) days of the date the property was sold or otherwise disposed of.

## § 9.5 Criteria governing administrative and judicial remission and mitigation.

(a) Remission.

(1) The Ruling Official shall not grant remission of a forfeiture unless the petitioner establishes that:

(i) The petitioner has a valid, good faith, and legally cognizable interest in the seized property as owner or lienholder as defined in this part;  and

(ii) The petitioner is innocent within the meaning of the innocent owner provisions of the applicable civil forfeiture statute, is a bona fide purchaser for value without cause to believe that the property was subject to forfeiture at the time of the purchase, or is one who held a legally cognizable interest in the seized property at the time of the violation underlying the forfeiture superior to that of the defendant within the meaning of the applicable criminal forfeiture statute, and is thereby entitled to recover his or her interest in the forfeited property by statute.  (If the applicable civil forfeiture statute contains no innocent owner defense, the innocent owner provisions applicable to 21 U.S.C. 881(a)(4) shall apply.) Unless otherwise provided by statute, in the case of petitioners who acquired their interest in the property after the time of the violation underlying the forfeiture, the question of whether the petitioner had knowledge of the violation shall be determined as of the point in time when the interest in the property was acquired.

(2) The knowledge and responsibilities of petitioner's representative, agent, or employee in paragraph (a)(1)(ii) of this section are imputed to the petitioner where the representative, agent, or employee was acting in the course of his or her employment and in furtherance of the petitioner's business.

(3) The petitioner has the burden of establishing the basis for granting a petition for remission or mitigation of forfeited property, a restoration of proceeds of sale or appraised value of forfeited property, or a reconsideration of a denial of such a petition.  Failure to provide information or documents and to submit to interviews, as requested, may result in a denial of the petition.

(4) The Ruling Official shall presume a valid forfeiture and shall not consider whether the evidence is sufficient to support the forfeiture.

(5) Willful, materially-false statements or information, made or furnished by the petitioner in support of a petition for remission or mitigation of forfeited property, the restoration of proceeds or appraised value of forfeited property, or the reconsideration of a denial of any such petition, shall be grounds for denial of such petition and possible prosecution for the filing of false statements.

(b) Mitigation.

(1) The Ruling Official may grant mitigation to a party not involved in the commission of the offense underlying forfeiture:

(i) Where the petitioner has not met the minimum conditions for remission, but the Ruling Official finds that some relief should be granted to avoid extreme hardship, and that return of the property

combined with imposition of monetary and/or other conditions of mitigation in lieu of a complete forfeiture will promote the interest of justice and will not diminish the deterrent effect of the law. Extenuating circumstances justifying such a finding include those circumstances that reduce the responsibility of the petitioner for knowledge of the illegal activity, knowledge of the criminal record of a user of the property, or failure to take reasonable steps to prevent the illegal use or acquisition by another for some reason, such as a reasonable fear of reprisal; or

   (ii) Where the minimum standards for remission have been satisfied but the overall circumstances are such that, in the opinion of the Ruling Official, complete relief is not warranted.

 (2) The Ruling Officials may in his or her discretion grant mitigation to a party involved in the commission of the offense underlying the forfeiture where certain mitigating factors exist, including, but not limited to:  the lack of a prior record or evidence of similar criminal conduct;  if the violation does not include drug distribution, manufacturing, or importation, the fact that the violator has taken steps, such as drug treatment, to prevent further criminal conduct;  the fact that the violation was minimal and was not part of a larger criminal scheme;  the fact that the violator has cooperated with federal, state, or local investigations relating to the criminal conduct underlying the forfeiture;  or the fact that complete forfeiture of an asset is not necessary to achieve the legitimate purposes of forfeiture.

 (3) Mitigation may take the form of a monetary condition or the imposition of other conditions relating to the continued use of the property, and the return of the property, in addition to the imposition of any other costs that would be chargeable as a condition to remission.  This monetary condition is considered as an item of cost payable by the petitioner, and shall be deposited into the Assets Forfeiture Fund as an amount realized from forfeiture in accordance with the applicable statute.  If the petitioner fails to accept the Ruling Official's mitigation decision or any of its conditions, or fails to pay the monetary amount within twenty (20) days of the receipt of the decision, the property shall be sold, and the monetary amount imposed and other costs chargeable as a condition to mitigation shall be subtracted from the proceeds of the sale before transmitting the remainder to the petitioner.

### § 9.6 Special rules for specific petitioners.

(a) General creditors.  A general creditor may not be granted remission or mitigation of forfeiture unless he or she otherwise qualifies as petitioner under this part.

(b) Rival claimants.  If the beneficial owner of the forfeited property and the owner of a security interest in the same property each files a petition, and if both petitions are found to be meritorious, the claims of the beneficial owner shall take precedence.

(c) Voluntary bailments.  A petitioner who allows another to use his or her property without cost, and who is not in the business of lending money secured by property or of leasing or renting property for profit, shall be granted remission or mitigation of forfeiture in accordance with the provisions of § 9.5.

(d) Lessors.  A person engaged in the business of leasing or renting real or personal property on a long-term basis with the right to sublease shall not be entitled to remission or mitigation of a forfeiture of such property unless the lessor can demonstrate compliance with all the requirements of § 9.5.

(e) Straw owners.  A petition by any person who has acquired a property interest recognizable under this part, and who knew or had reason to believe that the interest was conveyed by the previous owner for the purpose of circumventing seizure, forfeiture, or the regulations in this part, shall be denied.  A petition by a person who purchases or owns property for another who has a record for related crimes as defined in §

9.2(r), or a petition by a lienholder who knows or has reason to believe that the purchaser or owner of record is not the real purchaser or owner, shall be denied unless both the purchaser of record and the real purchaser or owner meet the requirements of § 9.5.

(f) Judgment creditors.

 (1) A judgment creditor will be recognized as a lienholder if:

   (i) The judgment was duly recorded before the seizure of the property for forfeiture;

   (ii) Under applicable state or other local law, the judgment constitutes a valid lien on the property that attached to it before the seizure of the property for forfeiture;  and

   (iii) The petitioner had no knowledge of the commission of any act or acts giving rise to the forfeiture at the time the judgment became a lien on the forfeited property.

 (2) A judgment creditor will not be recognized as a lienholder if the property in question is not property of which the judgment debtor is entitled to claim ownership under applicable state or other local law (e.g., stolen property).  A judgment creditor is entitled under this part to no more than the amount of the judgment, exclusive of any interest, costs, or other fees including attorney's fees associated with the action that led to the judgment or its collection.

 (3) A judgment creditor's lien must be registered in the district where the property is located if the judgment was obtained outside the district.

**§ 9.7 Terms and conditions of remission and mitigation.**

(a) Owners.

 (1) An owner's interest in property that has been forfeited is represented by the property itself or by a monetary interest equivalent to that interest at the time of seizure.  Whether the property or a monetary equivalent will be remitted to an owner shall be determined at the discretion of the Ruling Official.

 (2) If a civil judicial forfeiture action against the property is pending, release of the property must await an appropriate court order.

 (3) Where the government sells or disposes of the property prior to the grant of the remission, the owner shall receive the proceeds of that sale, less any costs incurred by the government in the sale.  The Ruling Official, at his or her discretion, may waive the deduction of costs and expenses incident to the forfeiture.

 (4) Where the owner does not comply with the conditions imposed upon release of the property by the Ruling Official, the property shall be sold.  Following the sale, the proceeds shall be used to pay all costs of the forfeiture and disposition of the property, in addition to any monetary conditions imposed. The remaining balance shall be paid to the owner.

(b) Lienholders.

 (1) When the forfeited property is to be retained for official use or transferred to a state or local law enforcement agency or foreign government pursuant to law, and remission or mitigation has been granted to a lienholder, the recipient of the property shall assure that:

(i) In the case of remission, the lien is satisfied as determined through the petition process;  or

(ii) In the case of mitigation, an amount equal to the net equity, less any monetary conditions imposed, is paid to the lienholder prior to the release of the property to the recipient agency of foreign government.

 (2) When the forfeited property is not retained for official use or transferred to another agency or foreign government pursuant to law, the lienholder shall be notified by the Ruling Official of the right to select either of the following alternatives:

  (i) Return of property.  The lienholder may obtain possession of the property after paying the United States, through the Ruling Official, the costs and expenses incident to the forfeiture, the amount, if any, by which the appraised value of the property exceeds the lienholder's net equity in the property, and any amount specified in the Ruling Official's decision as a condition to remit the property.  The Ruling Official, at his or her discretion, may waive costs and expenses incident to the forfeiture.  The Ruling Official shall forward a copy of the decision, a memorandum of disposition, and the original releases to the United States Marshals Service or other property custodian who shall thereafter release the property to the lienholder; or

  (ii) Sale of Property and Payment to Lienholder.  Subject to the provisions of § 9.9(a), upon sale of the property, the lienholder may receive the payment of a monetary amount up to the sum of the lienholder's net equity, less the expenses and costs incident to the forfeiture and sale of the property, and any other monetary conditions imposed.  The Ruling Official, at his or her discretion, may waive costs and expenses incident to the forfeiture.

 (3) If the lienholder does not notify the Ruling Official of the selection of one of the two options set forth in paragraph (b)(2) of this section within twenty (20) days of the receipt of notification, the Ruling Official shall direct the United States Marshal or other property custodian to sell the property and pay the lienholder an amount up to the net equity, less the costs and expenses incurred incident to the forfeiture and sale, and any monetary conditions imposed.  In the event a lienholder subsequently receives a payment of any kind on the debt owed for which he or she received payment as a result of the granting of remission or mitigation, the lienholder shall reimburse the Assets Forfeiture Fund to the extent of the payment received.

 (4) Where the lienholder does not comply with the conditions imposed upon the release of the property, the property shall be sold after forfeiture.  From the proceeds of the sale, all costs incident to the forfeiture and sale shall first be deducted, and the balance up to the net equity, less any monetary conditions, shall be paid to the lienholder.

**§ 9.8 Provisions applicable to victims.**

The provisions of this section apply to victims of an offense underlying the forfeiture of property, or of a related offense, who do not have a present ownership interest in the forfeited property (or, in the case of multiple victims of an offense, who do not have a present ownership interest in the forfeited property that is clearly superior to that of other petitioner victims).  The provisions of this section apply only with respect to property forfeited pursuant to statutes that explicitly authorize restoration or remission of forfeited property to victims.  Victims who have a superior present legally cognizable ownership interest in forfeited property may file petitions, as other owners, subject to the regulations set forth in § 9.7(a).  The claims of such owner victims, like those of any other owners, shall have priority over the claims of any non-owner victims whose claims are recognized pursuant to this section.

(a) Qualification to file.  A victim, as defined in § 9.2(v), of an offense that was the underlying basis for the criminal, civil, or administrative forfeiture of specific property, or a victim of a related offense, may be granted remission of the forfeiture of that property, if in addition to complying with the other applicable provisions of § 9.8, the victim satisfactorily demonstrates that:

 (1) A pecuniary loss of a specific amount has been directly caused by the criminal offense, or related offense, that was the underlying basis for the forfeiture, and that the loss is supported by documentary evidence including invoices and receipts;

 (2) The pecuniary loss is the direct result of the illegal acts and is not the result of otherwise lawful acts that were committed in the course of a criminal offense;

 (3) The victim did not knowingly contribute to, participate in, benefit from, or act in a willfully blind manner towards the commission of the offense, or related offense, that was the underlying basis of the forfeiture;

 (4) The victim has not in fact been compensated for the wrongful loss of the property by the perpetrator or others;  and

  (5) The victim does not have recourse reasonably available to other assets from which to obtain compensation for the wrongful loss of the property.

(b) Pecuniary loss.  The amount of the pecuniary loss suffered by a victim for which remission may be granted is limited to the fair market value of the property of which the victim was deprived as of the date of the occurrence of the loss.  No allowance shall be made for interest foregone or for collateral expenses incurred to recover lost property or to seek other recompense.

(c) Torts.  A tort associated with illegal activity that formed the basis for the forfeiture shall not be a basis for remission, unless it constitutes the illegal activity itself, nor shall remission be granted for physical injuries to a petitioner or for damage to a petitioner's property.

(d) Denial of petition.  In the exercise of his or her discretion, the Ruling Official may decline to grant remission where:

 (1) There is substantial difficulty in calculating the pecuniary loss incurred by the victim or victims;

 (2) The amount of the remission, if granted, would be small compared with the amount of expenses incurred by the government in determining whether to grant remission;  or

 (3) The total number of victims is large and the monetary amount of the remission so small as to make its granting impractical.

(e) Pro rata basis.  In granting remission to multiple victims pursuant to this section, the Ruling Official should generally grant remission on a pro rata basis to recognized victims when petitions cannot be granted in full due to the limited value of the forfeited property.  However, the Ruling Official may consider, among others, the following factors in establishing appropriate priorities in individual cases:

 (1) The specificity and reliability of the evidence establishing a loss;

 (2) The fact that a particular victim is suffering an extreme financial hardship;

(3) The fact that a particular victim has cooperated with the government in the investigation related to the forfeiture or to a related persecution or civil action;  and

(4) In the case of petitions filed by multiple victims of related offenses, the fact that a particular victim is a victim of the offense underlying the forfeiture.

(f) Reimbursement.  Any petitioner granted remission pursuant to this part shall reimburse the Assets Forfeiture Fund for the amount received to the extent the individual later receives compensation for the loss of the property from any other source.  The petitioner shall surrender the reimbursement upon payment from any secondary source.

(g) Claims of financial institution regulatory agencies.  In cases involving property forfeitable under 18 U.S.C. 981(a)(1)(C) or (a)(1)(D), the Ruling Official may decline to grant a petition filed by a petitioner in whole or in part due to the lack of sufficient forfeitable funds to satisfy both the petition and claims of the financial institution regulatory agencies pursuant to 18 U.S.C. 981(e)(3) or (7).  Generally, claims of financial institution regulatory agencies pursuant to 18 U.S.C. 981(e)(3) or (7) shall take priority over claims of victims.

### § 9.9 Miscellaneous Provisions.

(a) Priority of payment.  Except where otherwise provided in this part, costs incurred by the United States Marshals Service and other agencies participating in the forfeiture that were incident to the forfeiture, sale, or other disposition of the property shall be deducted from the amount available for remission or mitigation.  Such costs include, but are not limited to, court costs, storage costs, brokerage and other sales-related costs, the amount of any liens and associated costs paid by the government on the property, costs incurred in paying the ordinary and necessary expenses of a business seized for forfeiture, awards for information as authorized by statute, expenses of trustees or other assistants pursuant to paragraph (c) of this section, investigative or prosecutive costs specially incurred incident to the particular forfeiture, and costs incurred incident to the processing of the petition(s) for remission or mitigation.  The remaining balance shall be available for remission or mitigation.  The Ruling Official shall direct the distribution of the remaining balance in the following order or priority, except that the Ruling Official may exercise discretion in determining the priority between petitioners belonging to classes described in paragraphs (a)(3) and (4) of this section in exceptional circumstances:

(1) Owners;

(2) Lienholders;

(3) Federal financial institution regulatory agencies (pursuant to paragraph  (e) of this section), not constituting owners or lienholders;  and

(4) Victims not constituting owners or lienholders (pursuant to § 9.8).

(b) Sale or disposition of property prior to ruling.  If forfeited property has been sold or otherwise disposed of prior to a ruling, the Ruling Official may grant relief in the form of a monetary amount.  The amount realized by the sale of the property is presumed to be the value of the property.  Monetary relief shall not be greater than the appraised value of the property at the time of seizure and shall not exceed the amount realized from the sale or other disposition.  The proceeds of the sale shall be distributed as follows:

(1) Payment of the government's expenses incurred incident to the forfeiture and sale, including court costs and storage charges, if any;

(2) Payment to the petitioner of an amount up to his or her interest in the property;

(3) Payment to the Assets Forfeiture Fund of all other costs and expenses incident to the forfeiture;

(4) In the case of victims, payment of any amount up to the amount of his or her loss;  and

(5) Payment of the balance remaining, if any, to the Assets Forfeiture Fund.

(c) Trustees and other assistants.  In the exercise of his or her discretion, the Ruling Official, with the approval of the Asset Forfeiture and Money Laundering Section, may use the services of a trustee, other government official, or appointed contractors to notify potential petitioners, process petitions, and make recommendations to the Ruling Official on the distribution of property to petitioners. The expense for such assistance shall be paid out of the forfeited funds.

(d) Other agencies of the United States.  Where another agency of the United States is entitled to remission or mitigation of forfeited assets because of an interest that is recognizable under this part or is eligible for such transfer pursuant to 18 U.S.C. 981(e)(6), such agency shall request the transfer in writing, in addition to complying with any applicable provisions of §§ 9.3 through 9.5.  The decision to make such transfer shall be made in writing by the Ruling Official.

(e) Financial institution regulatory agencies.  A Ruling Official may direct the transfer of property under 18 U.S.C. 981(e) to certain federal financial institution regulatory agencies or an entity acting in their behalf, upon receipt of a written request, in lieu of ruling on a petition for remission or mitigation.

(f) Transfers to foreign governments.  A Ruling Official may decline to grant remission to any petitioner other than an owner or lienholder so that forfeited assets may be transferred to a foreign government pursuant to 18 U.S.C. 981(i)(1), 19 U.S.C. 1616a(c)(2), or 21 U.S.C. 881(e)(1)(E).

(g) Filing by attorneys.

(1) A petition for remission or mitigation may be filed by a petitioner or by his or her attorney or legal guardian.  If an attorney files on behalf of the petitioner, the petition must include a signed and sworn statement by the client-petitioner stating that:

(i) The attorney has the authority to represent the petitioner in this proceeding;

(ii) The petitioner has fully reviewed the petition;  and

(iii) The petition is truthful and accurate in every respect.

(2) Verbal notification of representation is not acceptable.  Responses and notification of rulings shall not be sent to an attorney claiming to represent a petitioner unless a written notice of representation is filed.  No extensions of time shall be granted due to delays in submission of the notice of representation.

(h) Consolidated petitions.  At the discretion of the Ruling Official in individual cases, a petition may be filed by one petitioner on behalf of other petitioners, provided the petitions are based on similar underlying facts, and the petitioner who files the petition has written authority to do so on behalf of the

other petitioners.  This authority must be either expressed in documents giving the petitioner the authority to file petitions for remission, or reasonably implied from documents giving the petitioner express authority to file claims or lawsuits related to the course of conduct in question on behalf of these petitioners.  An insurer or an administrator of an employee benefit plan, for example, which itself has standing to file a petition as a "victim" within the meaning of § 9.2(v), may also file a petition on behalf of its insured or plan beneficiaries for any claims they may have based on co-payments made to the perpetrator of the offense underlying the forfeiture or the perpetrator of a "related offense" within the meaning of § 9.2(s), if the authority to file claims or lawsuits is contained in the document or documents establishing the plan.  Where such a petition is filed, any amounts granted as a remission must be transferred to the other petitioners, not the party filing the petition;  although, in his or her discretion, the Ruling Official may use the actual petitioner as an intermediary for transferring the amounts authorized as a remission to the other petitioners.