## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

     v.

ILYA LICHTENSTEIN and HEATHER
MORGAN,
       Defendants,
and
JOHN DOE, *et al.*,
       Petitioners/Third-Party Claimants.

**Criminal No. 23-239 (CKK)**

## MEMORANDUM OPINION
(April 4, 2025)

The primary purpose of this Memorandum Opinion is to resolve the restitution obligations of Defendants Ilya Lichtenstein and Heather Morgan, as those obligations were left unresolved at Defendants' sentencings and undetermined in Defendants' Judgments. A secondary purpose is to discuss the ancillary proceeding, which will be held for the purpose of determining claims of entitlement to the forfeited property by Bitfinex and Petitioners/Third-Party Claimants.[1]

As discussed herein, Defendants' plea agreements provided for voluntary restitution to Bitfinex, in an amount to be determined by this Court. Initially, the Defendants and the Government anticipated that property attributable to the August 2016 Bitfinex hack – which has been forfeited by Defendants to the Government – would be returned to Bitfinex as in-kind restitution; however, this case involves competing claims of entitlement by Petitioners/Third-

---

[1] iFinex Inc. and BFXNA together are referred to as Bitfinex. *See* Verified Petition for Ancillary Proceedings, ECF No. 219, at 1.

Party Claimants ("Petitioners") regarding at least some of that property. The Court notes that in this case, Petitioners have alleged that they were the owners of some of the stolen Bitcoin ("BTC") and other property at the time of the hack. Therefore, their claims of entitlement to the return of their property are in direct competition with claims by Bitfinex of entitlement to the return of the entirety of the funds that were hacked.

Accordingly, for the reasons set forth herein, this Court concludes that, because of the complex issues of fact and law raised by the parties, Petitioners, and Bitfinex regarding restitution, $0 restitution shall be awarded to Bitfinex; the Court will not hold a restitution hearing; and adjudication of the disposal of the forfeited assets shall proceed solely through a third-party forfeiture ancillary proceeding. A separate Order accompanies this Memorandum Opinion.

I. BACKGROUND

A. <u>Procedural Posture</u>

On August 3, 2023, Defendant Ilya Lichtenstein ("Lichtenstein") entered a plea of guilty to one count of Money Laundering Conspiracy, in violation of 18 U.S.C. §1956(h), and Defendant Heather Morgan ("Morgan") entered a plea of guilty to one count of Money Laundering Conspiracy, in violation of 18 U.S.C. §§371 and 1956(a)(1)(B)(i), and one count of Conspiracy to Defraud the United States, in violation of 18 U.S.C. §371. Defendants' plea agreements provide, *inter alia*, that apart from any determination of mandatory restitution, the Defendants agree to pay voluntary restitution to Bitfinex "in an amount to be determined." Lichtenstein Plea Agrmt., ECF No. 96, at 10; Morgan Plea Agrmt., ECF No. 101, at 10.

1. <u>Consent Motion for Order Authorizing Alternative Notification Procedures</u>

Prior to sentencing, the Government filed its [141] Consent Motion for Order Authorizing Alternative Notification Procedures Out of an Abundance of Caution, which provided a procedure for notifying persons who [potentially] qualified as "victims" pursuant to the Crime Victims' Rights Act ("CVRA"), 18 U.S.C. §3771, or for restitution pursuant to the Mandatory Victim Restitution Act ("MVRA"), 18 USC §3663A.  More specifically, the Government indicated its intent to establish a website for notifying persons possibly affected by the Bitfinex hack [Bitfinex accountholders], although the Government proffered their view that there were no "victims" under the CVRA, or for purposes of restitution under the MVRA, on grounds that courts look to the offense on which defendant was convicted to determine who is a victim.[2]  Consent Mot., ECF No. 141, at 1 & n.1, 5.  Nevertheless, the Government recognized that persons affected by the Bitfinex hack should have the opportunity to raise claims about victim status and/or restitution prior to sentencing.[3]  *Id.* at 1, 6, 9.

In support of its position that no one qualified as a victim, the Government noted that neither Defendant was convicted of "intrusion into the network" (i.e., the hacking of Bitfinex) or with the theft of the cryptocurrency, as those offenses were time barred.  Consent Mot., ECF No. 141, at 5.  Instead, the offenses of conviction were conspiracy to commit money laundering

---

[2] The Government conveyed that "there are potentially thousands of [Bitfinex] accountholders whose accounts lost value in 2016 as a result of [the] hack [and] [t]he government has attempted to locate those [accountholders], including by requesting a list of all accountholders from [Bitfinex], but such efforts have been unsuccessful."  Consent Mot., ECF No. 141, at 6-7.
[3] On November 13, 2024, and November 14, 2024 (the day Mr. Lichtenstein was sentenced), the Government docketed more specific information about persons claiming "victim" status in response to the publication of the forfeiture order.  *See* Notice, ECF No. 173; Supplemental Notice, ECF No. 175; see also Sealed Impact Statement, ECF No. 174-2.  Some of these persons subsequently filed claims with this Court and are now part of the group of Petitioners.

(both) and to defraud the United States (Morgan only). *Id.* Furthermore, the Government cited several cases relating to its position that there were no "victims" of the offenses of conviction pursuant to the CVRA; *see id.* at 5 (string citing cases), and similarly addressed that issue of for purposes of restitution under the MVRA. *Id.* at n.2. The Government proffered that, pursuant to the MVRA, a victim is defined as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered . . ." rather than someone who is harmed based on "relevant conduct," and accordingly, no one qualified as a victim. *Id.* (citing three cases).

 2. Motion for Delayed Restitution Hearing

 On November 13, 2024, just one day prior to Mr. Lichtenstein's sentencing, the Government filed its [171] Notice and Motion for Delayed Restitution Hearing, whereby it moved to defer a final determination of any victims' losses and the accompanying restitution order by a period of 90 days. During Mr. Lichtenstein's sentencing on November 14, 2024, this Court recognized that Bitfinex was designated for voluntary restitution, but because there was a dispute as to "the validity of any of the particular claims" of entitlement to restitution, the Court indicated that a restitution determination would be deferred until there could be "an informed restitution hearing about people's claims." Lichtenstein Sentencing Transcript Excerpts, ECF No. 180, at 4-5. A few days after Ms. Morgan's November 18, 2024 sentencing, the parties filed their [184] Consent Motion to set a restitution hearing for February 21, 2025, which was granted by this Court. *See* Order, ECF No. 185. As proposed by the parties, that Order further set a January 28, 2025 deadline for third parties to file any motions to intervene/objections as well as deadlines for a supplemental memorandum by the Government, a response by the

Defendants, and a reply by the Government.

Defendants' Judgments were entered on the docket on December 3, 2024 [Lichtenstein], and December 11, 2024 [Morgan]. The Judgments left open the imposition of restitution, noting only that a "restitution hearing shall be scheduled." Lichtenstein Judgment, ECF No. 195, at 8; Morgan Judgment, ECF No. 198, at 7 ("Restitution hearing to be scheduled at a later date"). Attached to both Judgments is the Second Amended Preliminary Order of Forfeiture, which indicates that "any property, real or personal, involved in the offense alleged in Count One against Defendant Lichtenstein, and any property traceable to such property" and "any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of the offense alleged in Count Two against Defendant Morgan" is subject to forfeiture. Second Am. Prelim. Order of Forfeiture, ECF No. 195-1, at 1-2; *see also* Corrected Amended Attachment A (listing the property, which is hereinafter referred to as the "forfeiture assets" or "forfeited assets").

### 3. Supplemental Motion for Restitution and Defendants' Response

On January 14, 2025, the Government filed its [202] Supplemental Motion regarding Restitution indicating its position that, pursuant to the MVRA, mandatory restitution is inapplicable under the circumstances of this case because there are no victims of the underlying wire fraud offense for which the Defendants were convicted (and the Defendants were not charged with hacking). Govt. Supp., ECF No. 202, at 2-3. The Government asserted further its position that a voluntary restitution order in favor of Bitfinex should include all residue of the property stolen from Bitfinex. *Id.* at 3-4 (indicating that this is "consistent with the provision in the MVRA" relating to damage to or loss or destruction of property of a victim, where the court

should order the defendant to "return the property to the owner of the property or someone designated by the owner") (quoting 18 U.S.C. §3663A(b)(1)(A)).[4]  Finally, the Government proffered that other potential claimants could assert claims during the third-party ancillary proceeding over the balance of the forfeited assets, which is property that the Defendants laundered.  Govt. Supp. Mot., ECF No. 202, at 4-5.  The Government noted that an ancillary proceeding employs a standard for a third-party claim that differs from the definition of "victim" per the MVRA, as it "has to do with the claimant's ownership interest in the property."  *Id.* at 5.

On February 7, 2025, Defendants filed their [237] Response to the Government's Proposal as to Forfeiture and Restitution, which indicated their understanding that, under the Government's proposal, Defendants would "not be subject to any additional restitution obligations, and instead restitution will be satisfied by the assets already forfeited from the defendants."  ECF No. 237, at 1.   Defendants envisioned that Bitfinex would receive in-kind restitution of the forfeited assets in the "Bitfinex Hack Wallet, as well as the Bitcoin Cash, Bitcoin Satoshi Vision, and Bitcoin Gold amounts generated from several hard forks."  *Id.* Furthermore, Petitioners would have the right to make claims against the other assets that have been forfeited.  *Id.*

B. The Court Requested Clarification by the Government

In addition to the claims asserted in response to the Government's publication of a forfeiture order, this Court has received claims by persons and entities [the "Petitioners] alleging interests in the digital currency that was hacked by Defendant Lichtenstein from Bitfinex, in August 2016, and was then laundered by Defendants Lichtenstein and Morgan [the "forfeited

---

[4] Ownership interests are specifically referenced for consideration with victims, *see* 18 U.S.C. §3663A(b)(1)(A).

assets"]. These Petitioners – some of whom are represented by counsel and some of whom are acting *pro se* – have filed with this Court motions asserting victim status and/or requesting the right to appear/intervene in any restitution hearing, and ancillary petitions relating to any third-party forfeiture ancillary proceeding.

      1. First Requested Supplementation

Upon review of the documents filed by Petitioners, on January 28, 2025, this Court asked the government to clarify its position regarding whether its proposed voluntary restitution to Bitfinex would entail offsetting the property awarded as restitution against the forfeited assets. The Government filed its [220] Response to the Court's January 28, 2025 Order indicating that: (1) with regard to voluntary (not mandatory) restitution, Bitfinex would receive the return of "cryptocurrencies seized by the government directly from the Bitfinex Hack Wallet"; and (2) because the Bitfinex Hack Wallet Funds "would have been returned to Bitfinex by way of restitution, they would no longer be subject to forfeiture or the third-party ancillary proceeding (relying on *United States v. Emor*, 785 F.3d 671 (D.C. Cir. 2015)). Govt. Resp., ECF No. 220, at 1-3. Furthermore, "the third-party ancillary proceeding would proceed to adjudicate claims of ownership submitted by third-party claimants," and the preliminary forfeiture order would be amended thereafter with the final order of forfeiture forfeiting only the remaining properties to the Government.[5] *Id.* at 3. The Government asserted that its proposed restitution to Bitfinex would not diminish the Defendants' forfeiture liability. *Id.* at 3-5.

      2. Second Requested Supplementation

---

[5] The Government noted that the Attorney General had the sole authority to distribute any properties remaining with the Government, "through the processes of remission and mitigation." Govt. Resp., ECF No. 220, at 3.

On February 10, 2025, this Court issued its [247] Memorandum Opinion and Order summarizing the proceedings relevant to restitution and forfeiture in this case. The Court noted that at least some Petitioners had argued that "because the underlying offense of conviction is a conspiracy, courts may look to the defendants' criminal conduct during that conspiracy as a basis for restitution" rather than strictly focusing on the crime of conviction. Mem. Op. and Order, ECF No. 247, at 5. Furthermore, Petitioners "contest[ed] that in-kind restitution [*i.e.*, the contents of the Hack Wallet Funds] should be awarded to Bitfinex, on grounds that the petitioners are the [true] owners of the property that was hacked and . . . contrary to representations by Bitfinex[,] they have not been adequately compensated (made whole) regarding the property that was stolen because of the hack."[6] *Id.* Regarding the ownership issue, for example, one Petitioner noted that "[i]n the Statement of Offense and in presenting the plea agreements, the government acknowledged that the stolen Bitcoin belonged to accountholders, explaining that Lichtenstein had gained access to the keys necessary to authorize transactions 'involving virtual currencies *held by* victim VCE, including funds *belonging to customers* of victim VCE." *See* Motion to Intervene by John Doe, ECF No. 286, at 13 (quoting Lichtenstein Plea Transcript, ECF No. 110, Tr. 24:5-8 (emphasis added); *see also* Lichtenstein Statement of Offense, ECF No. 95 ¶14).

Furthermore, some Petitioners contested the actions taken by Bitfinex after the hack and the effects of these actions on their account balances. After the August 2016 hack and theft of

---

[6] Bitfinex argues that it is not only a voluntary victim but also a mandatory victim under the MVRA, and further that Bitfinex "alone is entitled to in-kind restitution" because the hacked property was "stolen from Bitfinex owned and controlled wallets and they are only traceable to a single origin: Bitfinex." Memorandum of Law of Third-Party Intervenor and Victim Ifinex Inc. in support of the Government's Request for Restitution, ECF No. 229-1, at 33; *see also* Ex. A, ECF No. 229-2 [Declaration of Matthew Price] (discussing the tracing of the hacked funds).

funds, Bitfinex "allocated the losses from the hack across all customer accounts [which] resulted in an approximately 36% reduction in account value across all accounts" [referred to as a "haircut"]. Govt. Consent Mot. for Order Authorizing Alternative Notification, ECF No. 141, at 3. Bitfinex then "issued tokens called "BFX" tokens to customers at a ratio of one BFX token for each $1 of loss . . . [and] in late 2016 and early 2017, customers holding BFX tokens then had the choice of (1) selling their BFX tokens on the secondary market for the prevailing market price; (2) redeeming their BFX tokens for a cash payment from Bitfinex, at a rate of $1 per BFX token, or (3) exchanging their BFX tokens for shares of the capital stock in iFinex, again valuing BFX tokens at $1 per token." *Id.* at 4. Customers opting to exchange the tokens for stock were given "new tokens called Recovery Right Tokens (RRTs), with each RRT redeemable for up to $1 of recovered stolen funds, in the event sufficient funds were ever recovered." *Id.*

Upon consideration of the record in this case, this Court requested supplemental briefing from the Government on the following three issues: (1) the second theory of restitution pursuant to the MVRA; *i.e.*, where the offense is a conspiracy to commit money laundering, whether the hacking and/or theft of cryptocurrency constitute elements of that conspiracy offense; (2) whether awarding in-kind restitution to Bitfinex of the forfeited assets that are directly attributable to the hack, prior to any ancillary proceeding, where Petitioners might claim an interest in those assets, would be an improper offset of restitution against the forfeited assets; and (3) if this Court were to determine that at least some Petitioners qualify as victims under the MVRA, whether the "return of [their specific] property" could be effectuated without constituting an improper offset against the forfeited assets. *Id.* at 5-8. To permit enough time for the Government to thoroughly answer these questions, this Court vacated the February 21,

9

2025 restitution date. *See* February 11, 2025 Minute Order (vacating the hearing date and noting that "the 90-day [after sentencing] deadline under §3664(d)(5) [in which to hold a restitution hearing] is a non-jurisdictional, time-related directive which does not deprive the Court of its power to order restitution if the deadline is missed").

### 3. Third Supplementation (Government Reply)

On February 23, 2025, the Government filed its [262] Reply regarding Third-Party Petitions and Response to the Court's February 10, 2025 Order. In its [262] Reply, the Government addressed, *inter alia*, victim status in cases where the underlying offense is a conspiracy, and the Court may consider the defendant's criminal conduct during that conspiracy as a basis for restitution. The Government acknowledged that "the purpose of the money laundering conspiracy was to launder the proceeds of the 2016 hack and prevent detection of the laundering activity." Govt. Reply, ECF No. 262, at 5 (emphasis omitted). However, the Government posited that the hack was not criminal conduct that occurred "during" the defendants' money laundering conspiracy because "it was prior conduct that logically and factually preceded the money laundering conspiracy." Govt. Reply, ECF No. 262, at 4-5. Furthermore, the Government asserted that the "elements of money laundering conspiracy do not include the underlying specified unlawful activity that generated the illegal proceeds being laundered." Govt. Reply, ECF No. 262, at 5 n.3; *see, e.g., United States v. Ojedokun*, 517 F. Supp. 3d 444, 453 (D. Md.), *aff'd*, 16 F.4th 1091 (4th Cir. 2021) (collecting cases holding that "the specified unlawful activity underlying a money laundering charge is not an essential element of the charge that must be pleaded, defined in the jury charge, and proved at trial").[7]

---

[7] The Government distinguished factually the cases cited by the Petitioners on grounds that those

Accordingly, the Government concluded that, under the facts of this case, "mandatory restitution can only be based on the offense of conviction," and that results in no one qualifying as a [mandatory] victim, but with Bitfinex qualifying for voluntary restitution pursuant to the plea agreements.

Additionally, the Government proffered that, even if the Court were to determine that victims of the hack qualify as victims entitled to mandatory restitution, only Bitfinex would qualify as a victim who was "directly and proximately" harmed, because the harm to former accountholders [Petitioners] "was derivative and flowed out of the harm more directly and proximately suffered by Bitfinex, the party that experienced the hack and theft of cryptocurrency controlled by Bitfinex's private keys." Govt. Reply, ECF No. 262, at 7. To illustrate that the Petitioners' injury was not direct and proximate, the Government explained that the Petitioners' pleadings articulated injuries that occurred after the hack, "arising out of the 36 percent "haircut" of their accounts imposed by Bitfinex, the forcible conversion of their account holdings by Bitfinex, the perceived inadequacy of the Bitfinex claim tokens, and so forth." Govt. Reply, ECF No. 262, at 7. While the Court agrees that these injuries referenced by the Government are not direct and proximate injuries, the Court notes that at least some of the Petitioners have alleged that their accounts with Bitfinex may have been part of the hacked accounts (in which case, the hack may have directly and proximately harmed them).

a. Government Recommendation

The Government concluded by stating that: "In light of the complex issues of fact and

---

decision "involve[d[ schemes (*e.g.*, mail fraud, business email compromises, and money laundering conspiracies) where a victim was directly harmed by a defendant's conduct." Govt. Reply, ECF No. 262, at 6.

law raised by the parties and third-party petitioners regarding restitution, and in consideration of the Court's orders and opinions, the government has revised its original restitution and forfeiture recommendations, *see* ECF Nos. 143, 146, 202 , . . [and] now recommends that the Court order $0 restitution and adjudicate the disposal of the seized properties solely through the third-party forfeiture ancillary proceeding." Govt. Reply, ECF No. 262, at 1-2; *see* ECF No. 220, at 4 n.1 (outlining this proposal as an alternative to the government's original recommendation). The Government contends that this outcome would be "consistent with the government's analysis of the MVRA —that no party is a "victim" of the defendants' money laundering offense under the technical legal definition of that term in the MVRA, 18 U.S.C. §3663A(a)(2)—as well as the MVRA's carve-out for excessively complex restitution issues, 18 U.S.C. §3663A(c)(3)(B)." Govt. Reply, ECF No. 262, at 2.

This Court agrees with the Government's conclusion that it should award $0 restitution in favor of Bitfinex and adjudicate the disposal of the forfeiture assets solely through a third-party forfeiture ancillary proceeding, because of complex restitution issues, and below, the Court explains its reasoning.

## II. LEGAL STANDARD

Pursuant to the Mandatory Victim Restitution Act (MVRA), 18 U.S.C. §3663A, a victim is defined as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." 18 U.S.C. §3663A(a)(2); *see also* 18 U.S.C. §3663(a)(2) (same) [Section 3663 generally discusses orders

of restitution].[8]  Courts may also order restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." 18 U.S.C. §3663A(a)(3).  In cases of offenses resulting in damage to or loss of destruction of property of a victim, the order of restitution shall require "return [of] the property to the owner of the property or someone designated by the owner." 18 U.S.C. §3663A(b)(1)(A).

The MVRA contains a carve-out for excessively complex restitution issues insofar as "[t]his section shall not apply" where "determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process." 18 U.S.C. §3663A(c)(3)(B); *see also* 18 U.S.C. §3663(a)(1)(B)(ii) ("To the extent the court determines that the complication and prolongation of the sentencing process resulting from the fashioning of an order of restitution outweighs the need to provide restitution to any victims, the court may decline to make such an order.")

Federal Rule of Criminal Procedure 32.2 addresses criminal forfeiture, and more specifically, ancillary proceedings prior to the entry of a final order of forfeiture. Fed. R. Crim. Proc. 32.2(c); *see also* 18 U.S.C. §853(n) (discussing third parties asserting a right, title, or interest in forfeited property).  Ancillary proceedings are not part of the sentencing. Rule 32.2(c)(4).

### III. ANALYSIS

As a preliminary matter, this Court notes that Bitfinex has moved for leave to file a Sur-

---

[8] Pursuant to the Crime Victims' Rights Act, 18 U.S.C. §3771, a "victim" is defined as a "person directly and proximately harmed as a result of the commission of a Federal offense. . ." 18 U.S.C. §3771(e)(2)(A).

Reply to the Government's [262] Reply, *see* ECF No. 270, but that Motion shall be DENIED. First, the Court notes that the Government's [262] Reply was responsive to questions posed by the Court to a party in this case - the Government. The Court did not ask for nor did it anticipate the need for additional briefing by any of the Petitioners or by Bitfinex. Second, Petitioners and Bitfinex have had the opportunity to fully brief their positions on victim status for purposes of restitution, and in fact, Bitfinex has already argued that it is a <u>mandatory</u> victim, as well as entitled to voluntary restitution. Furthermore, Bitfinex has asserted already that it is entitled to <u>all the forfeited assets that are traceable back to the Bitfinex hack,</u> which is contrary to claims by Petitioners [current/former Bitfinex accountholders] who allege entitlement to restitution. *See generally* Memorandum of Law of Third-Party Intervenor and Victim Ifinex, ECF No. 229-1 (a 35-page brief, with exhibits attached). Accordingly, the Court is well-aware of Bitfinex's position on restitution, and no sur-reply is necessary.

A. <u>The Amount of Voluntary Restitution is within this Court's Discretion</u>

The Defendants' plea agreements did not indicate any specific amount of restitution to be paid to anyone, but instead stated that "the Court has an obligation to determine whether, and in what amount, mandatory restitution applies in this case under 18 U.S.C. §3663A" and apart from that, Defendant "agrees to pay [voluntary] restitution to Bitfinex in an amount to be determined[.]"[9] Lichtenstein Plea Agrmt., ECF No. 96, at 9-10; Morgan Plea Agrmt, ECF No. 101, at 10. This Court has the discretion to award of $0 voluntary restitution to Bitfinex, as no amount was specified by the parties in the context of the plea agreement. While the Court is

---

[9] While these restitution amounts were intended to be determined at sentencing, as noted herein, that deadline was postponed to permit the parties and the Court to obtain additional information as to any person who might qualify as a "victim" or otherwise present a claim.

required to order restitution agreed to by the parties in a plea agreement (as is the case here), 18 U.S.C. §3663A(a)(3), "where the plea agreement is silent as to the form or amount of restitution, the Court retains the discretion to fashion an appropriate restitution order." Govt. Resp., ECF No. 220, at 4 n.1; *see United States v. Peterson*, 268 F.3d 533, 535 (7th Cir. 2001) (where the defendant agreed to make restitution to victims and agreed that "the district judge could make decisions that proved necessary to implement this choice").

In this case, the intention of the Defendants was to reimburse Bitfinex for Defendant Lichtenstein's August 2016 hack of Bitfinex accounts, and accordingly, the Government and the Defendants initially proposed awarding the Bitfinex Hack Wallet Funds to Bitfinex. The Court discusses below the problems with this proposal, which make the carve-out from awarding restitution applicable because of "complex issues of fact related to the cause or amount of the victim's losses."

## B. Reasons for Applying the Carve-out from Awarding Restitution

First, as previously noted by this Court, *see* Order, ECF No. 208, at 2-3, an award of in-kind restitution to Bitfinex would remove the Bitfinex Hack Wallet Funds from the current "pool" of forfeited assets. On its face, this appears to run contrary to legal authority that prohibits reducing a forfeiture order to satisfy a restitution obligation. The Government contends however that "because the government can only forfeit the defendants' interest in the specific properties subject to forfeiture, *see United States v. Petlechkov*, 72 F.4th 699, 705 (6th Cir. 2023), and the properties above (*i.e.*, the Bitfinex Hack Wallet Funds) would have been returned to Bitfinex by way of restitution, they would no longer be subject to forfeiture or the third-party ancillary proceeding." Govt. Resp., ECF No. 220, at 2 (relying on *United States v. Emor*, 785 F.3d 671, 679 (D.C. Cir.

15

2015)).  This Court notes that the *Emor* case indicates that, "[n]ormally, a purported <u>victim</u> of a crime would never need to claim a vested or superior interest [in a third-party ancillary forfeiture proceeding] to obtain its money back from the perpetrator." *Id.* (quoting *Emor*, 785 F.3d at 679) (emphasis added by the Court).  However, the Government has argued consistently that no one meets the definition of a "victim" in this case, and, in fact, voluntary restitution [to Bitfinex] is defined as "restitution to persons <u>other than the victim</u> of the offense." 18 U.S.C. §3663A(a)(3). Furthermore, in this case, two possible premises behind awarding voluntary restitution to Bitfinex – that it owns the Bitfinex accounts and that it is the only possible victim as it fully reimbursed its accountholders for an across-the-board haircut on all accounts – have been challenged by the Petitioners.  Accordingly, considering the circumstances in this case, it is an open question as to whether the *Emor* language cited by the Government supports removing the Bitfinex Hack Wallet Funds from the preliminary forfeiture order (prior to an ancillary proceeding), in the guise of this being a return of funds to a "purported victim."

Second, to the extent possible, Petitioners are requesting the return of their specific property, *i.e.*, the Bitcoin and other funds that were in their accounts at the time of the hack, thereby setting up a potential dispute between Bitfinex and Petitioners over the <u>same</u> forfeited assets.  Because the assets that were forfeited in this case are comprised of the Bitfinex accounts that were hacked by Defendant Lichtenstein [Bitfinex Hack Wallet Funds] and property derived from the laundering of those hacked accounts, Petitioners must be able to demonstrate that their accounts were included among those Bitfinex accounts that were hacked.  It is unclear from the record in this case whether Petitioners are independently able to do so, with the information they

have, or whether they will require discovery from Bitfinex, or assistance from outside persons.[10]

The Court notes that at least some Petitioners claim that they were harmed as a direct result of the hack, while others argue in the alternative that their harm resulted from the hack and/or the redistribution, and some point only to the redistribution. If Petitioners can show that their accounts were included among the Bitfinex hacked accounts, the competing claims to entitlement to that property become a dispute between Petitioners and Bitfinex about which party has a superior interest in the accounts. "A third-party petitioner seeking relief from a preliminary order of criminal forfeiture must . . . either show a legal interest in the forfeitable property vested in petitioner rather than the defendant or show its interest was superior to the criminal defendant's at 'the time of the commission of the acts which gave rise to the forfeiture." *Emor*, 785 F.3d at 678 (quoting 21 U.S.C. §853(n)(6)(A)).

It is more efficient and time-effective to resolve all claims in the context of the third-party ancillary proceeding, as opposed to holding a restitution hearing followed by an ancillary proceeding. As noted above, Petitioners and Bitfinex will be both be able to make claims against the Bitfinex Hack Wallet Funds, with any competing claims to the same forfeited assets to be resolved by determining the party with a superior legal interest in those forfeited assets. As an aside, the Court notes that even if all Petitioners can demonstrate a superior legal interest, the total amount of BTC and other property claimed by all Petitioners constitutes a small percentage of the total Bitfinex Hack Wallet Funds, and this would leave the remainder of the Bitfinex Hack Wallet

---

[10] After resolution of any motion to dismiss filed under Rule 32.2(c)(1)(A), "and before conducting a hearing on the petition, the court may permit the parties to conduct discovery in accordance with the Federal Rules of Civil Procedure if the court determines that discovery is necessary or desirable to resolve factual disputes." Federal Rule of Criminal Procedure 32.2(c)(1)(B).

Funds subject to claim by Bitfinex.[11]  In this case, Bitfinex proposed expert, Matthew Price, opines that the following forfeited assets are "directly traceable to wallets controlled by Bitfinex at the time of the hack: (1) approximately 94,643.29837084 BTC (Paragraph e. of the Corrected Second Attachment, ECF No. 198-1); (2) approximately 2,818.199 BTC (Paragraph s. of the Corrected Second Attachment, ECF No. 198-1); (3) approximately 12,267.025 BTC (Paragraph t. of the Corrected Second Attachment, ECF No. 198-1); and (4) approximately 117,376.52651940 BCH and 117,376.58178024 BSV (Paragraphs f. and g. of the Corrected Second Attachment, ECF No. 198-1).  Bitfinex Ex. A [Declaration of Matthew Price], ECF No. 229-2, at 4, attached to Motion to Intervene and for Leave to Appear as an Interested Party, ECF No. 229.

The Court notes that the purpose of the ancillary forfeiture proceeding is not for litigating any damages claimed by Bitfinex accountholders that are attributable to Bitfinex's 36% across-the-board haircut and contract disputes related thereto.  Those disputes between Bitfinex and its accountholders arise from Bitfinex's voluntary actions in imposing an across-the-board cut on all accounts, and such disputes may be litigated in another forum.  Furthermore, this Court notes that it has no jurisdiction to compel or enforce any further distribution of Bitfinex Hack Wallet Funds that may be recovered by Bitfinex through the ancillary forfeiture proceeding.

Third, this Court agrees with the Government's characterization of this litigation as

---

[11] The Petitioners with timely claims before this Court are: (1) A.B. [claiming loss of 1,896.43 ETH, 1,876.6 ETC]; (2) AH-1 [391.98 BTC, 3,156.14 ETH, $48,324.34 USD]; (3) Pablo Garcia Illescas [188.9583353 BTC]; (4) Jonas Paasch [94.9 BTC]; (5) Hjalmar Peters [12.94485805 BTC]; (6) Allan Newman [8.76586537 BTC, 22.113265451 LTC]; (7) Dolan Harrington [2.35436113 BTC]; (8) Christian Dressler [0.90305977 BTC, 91.1871525 ETH]; (9) Juergen Lankat [4.78591312 BTC]; (10) Charles Reed Venturella [13.03662881 BTC]; (11) Company Doe and director/sole shareholder Tom Doe [57.84809770 BTC]; (12) Francisco Cavazos [14.994 BTC]; (13) Louis Zuijderwijk [3.2743 BTC]; (14) XYZ Inc. [2,770.48034004 BTC]; (15) Rafal Bielenia [33.06537432 BTC]; and (16) John Doe [670.68637 BTC].

potentially "complex, prolonged, and burdensome." Govt. Reply, ECF No. 262, at 12. The
Government explains that:

> To date, more than a dozen third-party petitioners have submitted competing claims
> supported by voluminous exhibits and reams of legal briefing. Petitioners range from
> individual *pro se* intervenors to major accountholders (including a former Bitfinex insider)
> represented by major international law firms, and in some cases seeking to proceed
> anonymously and under seal." *Id.* Furthermore, "[m]any of the petitioners seek civil
> discovery in support of their claims—presumably not from the government, . . ., but from
> Bitfinex [and] Bitfinex will likely insist on reciprocal discovery.

*Id.* The Government explains that it is "unable to independently verify or fully validate the third-
party petitioners' alleged ownership interests with the information currently in the government's
possession." Govt. Reply, ECF No. 262, at 11. The Government "does not know whether every
individual petitioner was truly a Bitfinex accountholder at the time of the theft, what services they
specifically used, what their account balances were, or what particular version or versions of
Bitfinex's term service they agreed to." *Id.* These are issues which must be addressed before
and/or during the ancillary proceeding to adjudicate the validity of Petitioners' alleged interests in
the Bitfinex Hack Wallet Funds.

Finally, the Court notes that the tracing of the accounts in a cryptocurrency case involving
hacking is in and of itself complex. *See, e.g.,* Bitfinex Ex. A, ECF No. 228-2, and the Appendices
attached thereto. If Petitioners can tie their accounts back to the accounts that were hacked, the
Court must then engage in an inquiry as to whom has a superior interest in the forfeited assets, as
Bitfinex is claiming entitlement to the same forfeited assets. Additionally, if specific property
cannot be recovered by the Petitioners (because it has been laundered and is untraceable), the value
of Petitioners' hacked property may need to be established if substitute forfeited assets are to be
awarded instead. For all these reasons, the Court finds that adjudicating the disposal of the

forfeited assets solely through a third-party forfeiture ancillary proceeding is warranted by the complexity of issues relating to the cause and amount of Petitioners' and Bitfinex's losses in this case.

Moreover, "Congress plainly intended that sentencing courts not become embroiled in intricate issues of proof, as it provided that the MVRA is to be inapplicable if the court finds that the determination of complex factual issues related to the cause or amount of the victims' losses would unduly burden the sentencing process." *United States v. Reifler*, 446 F.3d 68, 135 (2d Cir. 2006). In that case, the Court of Appeals for the Second Circuit suggested that the complexity exception might apply where a restitution order would require determining complex issues of causation and value of losses to shareholders of a company involved in criminal fraud because the shareholders bought and sold shares for various reasons and at various times. *Id.* at 139; *compare United States v. Malone*, 747 F.3d 481, 487-488 (7th Cir. 2014) (declining to apply the complexity exception where "the calculation [of restitution] involved consideration of two, and only two, things: (1) the property O'Hern lost or its value (which are essentially the same thing when, as here, the property is cash) . . . and (2) the value (as of the date the property is returned) of any part of the property that is returned.") (internal citation and quotation marks omitted).

Accordingly, for the reasons stated herein, this Court determines that the complex legal and factual issues in this case regarding restitution warrant this Court awarding $0 in [voluntary] restitution to Bitfinex. As such, this Court declines to hold a restitution hearing and will adjudicate the disposal of the forfeited assets solely through a third-party forfeiture ancillary proceeding.

COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE