# EXHIBIT A

To XYZ's Opposition to Bitfinex's Motion to Dismiss, Declaration of Daniel Burkitt

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ILYA LICHTENSTEIN, et al.,<br><br>*Defendants*.<br><br>*************<br><br>XYZ INC.<br><br>*Intervenor, Claimant, and Third-Party Petitioner.* | Case No. 23-cr-239 (CKK) |

**DECLARATION OF DANIEL BURKITT OFFERED FOR
OPPOSITION TO MOTION TO DISMISS PETITION OF XYZ**

I, Daniel Burkitt, hereby declare:

1. I am Counsel at Ogier in Tortola, British Virgin Islands.

2. I am a barrister called to the bar of England and Wales in 2008 and admitted to the bar of the British Virgin Islands in 2023. I am competent and qualified to offer the opinions stated below.

3. I was retained by the entity known as XYZ Inc in the above-captioned matter and asked to opine on the law of the British Virgin Islands with respect to the questions set out below. I was provided with a copy of the Petition filed by XYZ Inc in the above-captioned matter (**"the Petition"**) and the Exhibit to the Petition, which included Bitfinex's Terms of Service for 9 June 2016 and 8 August 2016 (**"the Terms of Service"**). I was instructed that, as a matter of the law

of the United States, the facts stated in the Petition may be taken as true at this stage of the proceedings.

4. The opinions offered below are based on my legal research and my opinions as to the correct answers to the questions posed. It is of course possible that another BVI legal practitioner or the BVI Court could disagree with my opinions.

5. I researched the questions set out at paragraphs 6 and 7 below.

6. Did XYZ Inc have a "legal right, title, or interest in the property" that was held in its wallet at the Bitfinex exchange under the Terms of Service? It did:

    a. Clause 5.1 of the Terms of Service provides that: "all bitcoins in your Multi-Signature Wallets belong to and are owned by you."

    b. Under clause 4.4 of the Terms of Service, the Terms of Service are governed by and to be construed and enforced in accordance with the laws of the British Virgin Islands (**"BVI"**). When interpreting a written contract governed by BVI law, the text must be assessed in the light of the natural and ordinary meaning of the words.[1]

    c. The natural and ordinary meaning of clause 5.1 is that XYZ Inc owned all the Bitcoins in its Multi-Signature Wallets. It follows that, whatever interest Bitfinex may have acquired in such Bitcoins (if any) as a result of holding them, XYZ Inc retained (superior) beneficial title and remained the true owner of the Bitcoins in its Multi-Signature Wallets.

    d. Accordingly, as a matter of BVI law, XYZ Inc would be entitled to follow or trace any Bitcoins that were transferred from its Multi-Signature Wallets without its consent. Following is the process of following the same asset as it moves from hand to

---

[1] *See* e.g. *Yang Hsueh Chi Serena & Ors v Equity Trustee Ltd* (BVIHCMAP2013/0012) [68], [84] (*per* Farara JA, with whom Pereira and Kentish-Egan JJA agreed).

2

hand. Tracing is the process of identifying a new asset as the substitute for the old. Where one asset is exchanged for another, a claimant can elect whether to follow the original asset into the hands of the new owner or to trace its value into the new asset in the hands of the same owner. Tracing is not a claim or remedy, but the process by which a claimant: (1) demonstrates what has happened to his property; (2) identifies its proceeds and the persons who have handled or received them; and (3) justifies that the proceeds can properly be regarded as representing his property.[2]

    7.      Would BVI law recognize that when XYZ Inc's Bitcoins were unilaterally used to replace Bitcoins stolen from other Bitfinex customers, those coin-for-coin replacements vested a "legal right, title, or interest" in XYZ Inc at that time?

        a.      It would, as insofar as XYZ Inc's Bitcoins were transferred to other Bitfinex customers, XYZ Inc would, as a matter of BVI law, be entitled to follow or trace and recover those Bitcoins or their traceable proceeds as the beneficial owner of those Bitcoins.

        b.      Further, XYZ Inc could well be subrogated to the rights of customers whose stolen Bitcoins were replaced with XYZ Inc's Bitcoins.

        c.      While I have not found a BVI authority on subrogation, the BVI Courts apply a doctrine of precedent (*stare* decisis) and persuasive authority that is similar to that applied by state and federal courts in the United States. In the BVI, the Privy Council – comprised predominantly of judges who sit in the UK Supreme Court and senior judges from Commonwealth jurisdictions – is the highest appellate court. Privy Council decisions that engage substantially the same point of law are binding authority in the BVI and

---

[2] *Foskett v McKeown* [2001] 1 AC 102, 127B-C, 128D (*per* Lord Millett, with whom Lord Browne-Wilkinson and Lord Hoffmann agreed).

decisions of the ECSC[3] Court of Appeal are binding if the appeal is from the BVI and persuasive if the appeal is from another Caribbean jurisdiction. Decisions of the English courts are persuasive authority but usually followed in the BVI, except where there is contrary binding authority. Decisions from other Commonwealth jurisdictions with a common law tradition (Australia, New Zealand, Canada, Singapore, Hong Kong, etc.) are also considered by the BVI Courts.

    d.    In English law: ". . . the term 'subrogation' denotes a process by which one party is deemed to have been substituted for another, so that he can acquire and enforce the other's rights against a third party for his own benefit. It is often said that a subrogated claimant 'stands in the shoes' of the party whose rights he is deemed to have acquired."[4]

    e.    Many of the reported English decisions concerning subrogation involve the payment by the claimant of another's debt. The House of Lords (which was the highest appellate court in England before being reconstituted as the UK Supreme Court) had held that the basis for subrogation was unjust enrichment, i.e. to reverse the unjust enrichment of the debtor or creditor at the claimant's expense.[5] However, the implication of more recent decisions of the UK Supreme Court is that subrogation can be justified on the basis of a proprietary claim.[6]

    f.    The English authorities demonstrate that the claimant has a proprietary claim where the payment made discharges a third party's security interest. Some of the

---

[3] "ECSC" is an acronym for Eastern Caribbean Supreme Court.
[4] C Mitchell and S Watterson *Subrogation: Law and Practice* (OUP 2007) [1.01].
[5] *Banque Financière de la Cité v Parc (Battersea) Ltd* [1999] 1 AC 221 (HL), 236 D-G (*per* Lord Hoffmann, with whom Lord Griffiths and Lord Clyde agreed); *Filby v Mortgage Express (No 2) Ltd* [2004] EWCA Civ 759 [62]-[63] (*per* May LJ, with whom Hooper and Kennedy LJJ agreed).
[6] *Menelaou v Bank of Cyprus UK Ltd* [2015] UKSC 66, [2016] AC 176; *Investment Trust Companies (in liquidation) v Revenue and Customs Commissioners* [2017] UKSC 29, [2018] AC 275; *Swynson Ltd v Lowick Rose LLP (in liquidation)* [2017] UKSC 32, [2018] AC 313.

English authorities refer to an assignment of the creditor's security to the claimant in those circumstances. However, the weight of English authority suggests that the creditor's security is discharged or partially discharged by the payment, such that the claimant does not acquire the discharged right, but rather, a new equitable proprietary interest that arises *pro tanto*, i.e. an equitable interest mirroring the characteristics and content of the creditor's right in the subject-matter.[7]

g. A claimant's subrogation rights arise by operation of law, not from a court order; the court's role in giving effect to the claimant's rights is merely declaratory.[8] As the learned authors of *Subrogation: Law and Practice* (OUP 2007) comment at [8.95], "[a]n obvious example is where the claimant's assets are misapplied without his knowledge and consent and used to discharge another party's secured debt." In a Canadian decision, *McCullough v Elliott*,[9] where a trustee wrongfully paid trust money in partial discharge of two mortgages, and subsequently granted a third mortgage, over his own property, Stuart J held that the beneficiaries' subrogation right "arose instantly the fraudulent payments were made, although it could only subsequently be proven, recognised and enforced."[10]

h. In my opinion, there is little conceptual difference between (1) a payment that discharges or partially discharges a (proprietary) security right granted to a third party and (2) a transfer of property that reduces a third party's loss where fungible property is

---

[7] *Boscawen v Bajwa* [1996] 1 WLR 328 (CA) 330H-331A, 335 (*per* Millett LJ, with whom Waite and Stuart-Smith LJJ agreed); *UCB Group Ltd v Hedworth* [2003] EWCA Civ 1717 [79] (*per* Jonathan Parker LJ, with whom Longmore and Kennedy LJJ agreed); *Cheltenham & Gloucester plc v Appleyard* [2004] EWCA Civ 291 [44] (*per* Neuberger LJ, with whom Lord Phillips MR and Kennedy LJ agreed).
[8] *Thurstan v Nottingham Permanent Benefit Building Society* [1902] 1 Ch 1 (CA) 13 (*per* Romer LJ), 14 (*per* Cozens-Hardy, Romer LJJ); *Boscawen v Bajwa* (ibid n 7) 342 (*per* Millett LJ); Subrogation*: Law and Practice* (ibid n 2) [8.95]; *Goff and Jones: The Law of Unjust Enrichment* (10th edn 2022) [39-81].
[9] (1922) 62 DLR 257 (Alberta CA), cited in *Subrogation: Law and Practice* (ibid n 2) [8.95] and fn 124; *Goff and Jones: The Law of Unjust Enrichment* (ibid n 8) [39-81] and fnn 170, 171; *Boscawen v Bajwa* (ibid n 7) at 342 (*per* Millett LJ).
[10] Ibid at 259; Beck J at 260.

5

used, such as Bitfinex's use of XYZ Inc's Bitcoins to replace, coin-for-coin, the Bitcoins that were stolen from other customers.

      i.      Accordingly, while I have not been able to find a BVI, English or Commonwealth authority on all fours with the instant case, a BVI Court applying the English authorities cited above should hold that XYZ Inc was subrogated *pro tanto* to the rights of customers whose stolen Bitcoins were replaced with XYZ Inc's Bitcoins and acquired an equitable right to receive Bitcoins instead of those customers, arising at the time those coins were replaced.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

**Executed on:** May 7, 2025

                                                                  **Daniel Burkitt**
                                                                  Ogier
                                                                  British Virgin Islands