UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ILYA LICHTENSTEIN, *et. al.*,<br><br>*Defendants,*<br><br>and<br><br>JOHN DOE<br><br>*Intervenor, Claimant, and Third-Party Petitioner*. | CRIMINAL NO. 23-cr-239 (CKK) |

**THIRD-PARTY PETITIONER JOHN DOE'S OPPOSITION TO
THIRD-PARTY PETITIONERS IFINEX INC. AND BFXNA INC.'S MOTION TO
<u>DISMISS CERTAIN CLAIMANTS' ANCILLARY PETITIONS</u>**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

FACTUAL BACKGROUND................................................................................................2

ARGUMENT................................................................................................................4

I.      The Court Should Deny the Motion to Dismiss John Doe's Ancillary Petition Because John Doe Sufficiently Alleges a Legal Interest in Specific Property Under Section 853(n). ................................................................................................4

II.     John Doe Is Not Required to Prove Traceability at the Pleading Stage. .............................6

CONCLUSION................................................................................................................9

i

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Al-Gharawy v. U.S. Dep't of Homeland Sec.*,
   617 F. Supp. 3d 1 (D.D.C. 2022) ............................................................................................. 6

*CGM, LLC v. BellSouth Telecommc'ns, Inc.*,
   664 F.3d 46 (4th Cir. 2011) ...................................................................................................... 5

*Guerrero v. Vilsack*,
   134 F. Supp. 3d 411 (D.D.C. 2015) .......................................................................................... 6

*Lexmark Int'l v. Static Control Components, Inc.*,
   572 U.S. 118 (2014) .................................................................................................................. 4

*United States v. 7725 Unity Ave. N.*,
   294 F.3d 954 (8th Cir. 2002) .................................................................................................... 4

*\*United States v. Bailey*,
   No. 11 Cr. 10, 2011 WL 2414231 (W.D.N.C. June 10, 2011) ................................................. 8

*\*United States v. Emor*,
   785 F.3d 671 (D.C. Cir. 2015) .............................................................................................. 4, 6

*United States v. Kokko*,
   No. 06-20065-CR, 2007 WL 2209260 (S.D. Fla. July 30, 2007) ............................................. 5

*United States v. Oregon*,
   671 F.3d 484 (4th Cir. 2012) .................................................................................................... 5

*United States v. Preston*,
   123 F. Supp. 3d 108 (D.D.C. 2015) .......................................................................................... 5

*United States v. Reckmeyer*,
   836 F.2d 200 (4th Cir. 1987) ................................................................................................ 4, 6

*\*United States v. Rose*,
   No. 14-CR-76, 2017 WL 6459893 (E.D. Tenn. Apr. 5, 2017) ................................................. 6

*United States v. Sanchez*,
   Case No. 22-11923, 2023 WL 5844958 (11th Cir. Sept. 11, 2023), *cert.
   denied*, 145 S. Ct. 139 (2024) ................................................................................................... 6

*\*United States v. Vilar*,
   No. 05-cr-621 (RJS), 2021 WL 4504699 (S.D.N.Y. Sept. 30, 2021) .................................... 8, 9

**Statutes**

21 U.S.C. § 853(n) ................................................................................................................4, 5, 6

**Other Authorities**

Initial Exchange Offering of LEO Tokens (May 8, 2019),
    https://www.bitfinex.com/wp-2019-05.pdf ................................................................................4

**PRELIMINARY STATEMENT**

The factual disputes raised by iFinex Inc. and BFXNA Inc. (collectively, "iFinex") in its motion to dismiss present no basis to dismiss John Doe's ancillary petition at the pleading stage. Doe timely filed his petition asserting a legal interest in the Bitcoin seized by the United States following the August 2016 hack of Bitfinex, a cryptocurrency exchange owned and operated by iFinex. He plausibly alleges that he held a legal interest in more than 1,735 Bitcoin at the time of the hack, and that some of the Bitcoin recovered by the government is Bitcoin in which he holds a legal interest.

iFinex does not—because it cannot—dispute that Doe was the legal owner of more than 1,735 BTC held in Bitfinex accounts at the time of the hack. Indeed, iFinex cannot dispute that substantially all of the hacked Bitcoin belonged to customers, not iFinex itself. But to determine how the legal rights of Doe and other accountholders correspond to particular Bitcoin currently in the government's possession will require discovery from iFinex. This is because iFinex has not disclosed the detail of the actions it took before or after the hack to segregate and/or comingle customer assets. iFinex's internal records are necessary to piece together which users hold what legal interest in which Bitcoin.

Instead of providing information to help make its customers whole, iFinex now seeks to profit at their expense by claiming all the Bitcoin for itself, and by seeking dismissal of Doe's petition (and others) to avoid the discovery that will prove Doe's claim. This gamesmanship by iFinex to evade discovery so that it can steal from its own customers should be rejected out of hand. Worse yet, iFinex did not wait for a court to adjudicate the rightful owner of the Bitcoin and has already profited by selling off to new investors whatever it might recover in this case, raising over $1 billion largely by promising portions of the recovery of its old customers' assets.

1

To cast this as a pleading motion, iFinex fundamentally distorts Doe's petition. According to iFinex, Doe's loss results from iFinex's post-breach "haircut" and not the hack. In other words, iFinex asserts that it stole Doe's assets, not the hackers. That is a factual dispute with Doe's petition, not a basis for dismissal on the pleadings.

The law does not require Doe to establish asset tracing at this stage, particularly where iFinex alone controls the records necessary to do so. Moreover, the facts as to how accountholder assets were handled before and after the hack may impact the allocation of legal interests in the Bitcoin itself, and those interests are properly at issue in these proceedings irrespective of any separate damages claims accountholders may have against Bitfinex and iFinex. Without the facts as to how Bitfinex handled accountholder assets, it is simply premature to determine who holds what legal interests in which Bitcoin and whose interests are superior.

Courts have consistently held that at the pleading stage petitioners need only allege colorable grounds for a legal interest. Doe has done so. For the Court to determine which parties held what legal rights in the seized Bitcoin, whose rights are superior, and whether apportionment of substitute property is necessary or appropriate in any particular circumstance, iFinex should be ordered to produce all records necessary to understand the relation between accountholder assets and Bitcoin wallets and how all relevant transactions were processed. None of that can be determined without an appropriate factual record. iFinex's motion to dismiss should be denied.

## FACTUAL BACKGROUND

In 2016, hackers stole approximately 120,000 BTC from wallets controlled by iFinex that held customer—not company—assets. These wallets contained assets that iFinex held in custody for its customers—not its own proprietary funds. (Ancillary Petition, ECF No. 285 ("Petition") ¶¶ 11–12; Motion to Intervene, ECF No. 286 ("Motion") at 1–2; Declaration of John Doe in Support of Motion to Intervene, ECF No. 286-2 ("Doe Decl.") ¶¶ 2–4.)

At the time of the breach, John Doe held 1,735.00637 BTC across two fully verified accounts on the Bitfinex platform. (Doe Decl. ¶ 6; Petition ¶¶ 16; Motion at 5.) Doe acquired these holdings through spot trades funded entirely with his own ETH and USD balances. (Doe Decl. ¶¶ 6–10; Petition ¶¶ 18–20; Motion at 5.) Bitfinex's Terms of Service made clear that Doe retained full legal ownership of the assets in his account. (Doe Decl. ¶¶ 2–5; Petition ¶¶ 31–34; Motion at 5–6.) Bitfinex expressly disclaimed any proprietary interest in customer assets, describing its role as a non-principal custodian facilitating peer-to-peer spot trading. (Petition ¶¶ 32–35; Motion at 6.) Bitfinex claimed assets were held in multi-signature wallets operated in partnership with BitGo, (Petition ¶ 34; Motion at 5.), and the arrangement was recognized by the CFTC as consistent with customers retaining title. (Motion at 6.) Whether Bitfinex did as it claimed in segregating Doe's assets will be a subject of a discovery.

Following the breach, iFinex imposed a 36.06% haircut across all user accounts, reducing balances across the board. (Doe Decl. ¶¶ 13–14; Petition ¶ 24–25; Motion at 8.) As part of that process, iFinex forcibly converted portions of Doe's ETH and USD into BTC. (Doe Decl. ¶¶ 16–18 & Exs. F-1, F-2; Petition ¶¶ 24–25; Motion at 8–9.) Doe alleged in his Petition that the reallocation resulted in a recovery of a portion of his lost Bitcoin, resulting in a net loss of a little over 670 BTC remaining after the reallocation. (Doe Decl. ¶¶ 14–18; Petition ¶¶ 25–28; Motion at 12–13.)

Doe has submitted the limited records iFinex made available to him, including data reflecting his Bitcoin balance immediately before the hack and his post-haircut holdings. (Doe Decl. ¶¶ 6, 13, 17–18 & Exs. C–F; Petition ¶¶ 22–28.) Discovery is necessary to unpack what happened in between. (*See* Doe Decl. ¶¶ 9, 11–12, 17; Petition ¶¶ 23, 39; Motion at 3.) To Doe's knowledge, iFinex has never made public the information necessary to trace where the assets in

3

which he acquired legal title were held prior to the hack, or how those assets relate to the assets that were lost in the hack.

In May 2019, iFinex launched the LEO token, issuing up to 1 billion tokens promising purchasers that it would use at least 80% of any net funds recovered from the 2016 Bitfinex hack to repurchase LEO tokens. *See* Initial Exchange Offering of LEO Tokens 12–14 (May 8, 2019), https://www.bitfinex.com/wp-2019-05.pdf.

## ARGUMENT

iFinex wrongly asks this Court to dismiss a plausible, statutorily authorized ownership claim before discovery, while withholding the very records needed to evaluate it. That request finds no support in law or logic. Section 853(n) requires only that a petitioner allege a legal interest in specific property subject to forfeiture. Doe has done exactly that.

I.  **The Court Should Deny the Motion to Dismiss John Doe's Ancillary Petition Because John Doe Sufficiently Alleges a Legal Interest in Specific Property Under Section 853(n).**

To establish statutory standing, a petitioner must show a "cause of action"—which, in this context, means alleging a legal interest in the forfeited property. *United States v. Emor*, 785 F.3d 671, 677 (D.C. Cir. 2015); *see also Lexmark Int'l v. Static Control Components, Inc.*, 572 U.S. 118, 140 (2014) (showing that statutory standing at the motion to dismiss stage is established through allegations—not evidence). Courts interpret "legal interest" broadly. "[A]ny colorable claim on the property suffices, if the claim of injury is 'redressable, at least in part, by a return of the property.'" *Emor*, 785 F.3d at 676 (quoting *United States v. 7725 Unity Ave. N.*, 294 F.3d 954, 957 (8th Cir. 2002)); *see also United States v. Reckmeyer*, 836 F.2d 200, 205 (4th Cir. 1987) (legal interest includes rights, claims, or title in the property).

A colorable claim may include a "right, title, or interest [that] was vested in the petitioner . . . at the time of the commission of the acts which gave rise to the forfeiture of the

4

property," 21 U.S.C. § 853(n)(6)(A), or a right that a petitioner can recover under "bona fide purchaser for value of the right, title, or interest in the property . . . without cause to believe that the property was subject to forfeiture under this section," 21 U.S.C. § 853(n)(6)(B).

Courts treat a motion to dismiss a petition under 21 U.S.C. § 853(n) using the same standard as a Rule 12(b) motion in civil litigation. *See United States v. Preston*, 123 F. Supp. 3d 108, 113 (D.D.C. 2015). The petition must "only provide enough facts to state a claim to relief that is plausible on its face," and all facts alleged must be accepted as true. *Id.* (internal quotation marks omitted). Because both standing and failure to state a claim turn on whether the petitioner has plausibly alleged a legal interest, the factual basis of the two standards "is effectively the same." *United States v. Oregon*, 671 F.3d 484, 490 n.6 (4th Cir. 2012) (*quoting CGM, LLC v. BellSouth Telecommc'ns, Inc.*, 664 F.3d 46, 52 (4th Cir. 2011)); *see also United States v. Kokko*, No. 06-20065-CR, 2007 WL 2209260, at *5 (S.D. Fla. July 30, 2007).

There is no dispute that the Bitcoin seized by the government are not general assets of the Defendants but rather are specifically traceable to the wallets Bitfinex maintained to hold accountholder assets. Thus, a discrete set of people comprised of 2016 Bitfinex accountholders—its customers—held the legal interest in the seized Bitcoin at the time of the hack. The remaining question, which requires discovery from iFinex, is how to determine which accountholders hold what legal interest in which Bitcoin.

There is no dispute that Doe sufficiently alleged his ownership of 1,735.00637 BTC in two verified Bitfinex accounts at the time of the 2016 hack. (Petition ¶¶ 16; Doe Decl. ¶ 6.) Doe further alleges that he no longer had all his Bitcoin after the hack, thereby stating plausible grounds to allege that he has a legal interest in the recovered Bitcoin. Because Doe's statutorily recognized claim predates and exceeds any interest held by the criminal Defendants—who have no legally

5

cognizable interest in the Bitcoin—he qualifies as a rightful claimant under the statute. That is sufficient under Section 853(n).

## II.  John Doe Is Not Required to Prove Traceability at the Pleading Stage.

A petitioner need not prove traceability of specific assets to survive a motion to dismiss. Courts have consistently held that it is enough to allege a legal interest in property plausibly subject to forfeiture. *See Emor*, 785 F.3d at 676 (claim is sufficient if alleged injury is "redressable . . . by a return of the property"); *United States v. Sanchez*, Case No. 22-11923, 2023 WL 5844958, at *4 (11th Cir. Sept. 11, 2023) (explaining that "statutory standing at the motion-to-dismiss stage is established through allegations—not evidence"), *cert. denied*, 145 S. Ct. 139 (2024); *Reckmeyer*, 836 F.2d at 206 (explaining that petitioners have met "the threshold qualification" by asserting a legal interest in the property subject to forfeiture).

Even relatively barebones allegations of specific asset ownership have survived dismissal where supported by plausible factual assertions. For example, in *United States v. Rose*, the court denied the government's motion to dismiss a petition for return of seized cash, rejecting the argument that the petitioner failed to sufficiently allege the timing or circumstances of acquisition. No. 14-CR-76, 2017 WL 6459893, at *3 (E.D. Tenn. Apr. 5, 2017). The court held that her claim—asserting ownership of the cash in a household safe—was adequate to proceed and ordered discovery "to resolve the factual issues relating to the source" of the funds. *Id.*

Similarly, courts routinely reject motions to dismiss when a petitioner has plausibly alleged ownership but cannot complete the tracing analysis without discovery. *See, e.g.*, *Guerrero v. Vilsack*, 134 F. Supp. 3d 411, 435 (D.D.C. 2015) (declining to dismiss claim dependent on facts in agency's possession—"[d]iscovery will tell"); *Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 17 (D.D.C. 2022) (fact-based argument "better suited for summary judgment"). As

these cases make clear, where there are unresolved factual questions about what happened to petitioner's property, the proper result is discovery—not dismissal.

That logic applies here. Doe has alleged ownership of 1,735 BTC prior to the hack and circumstances that give rise to a plausible claim of a legal interest in Bitcoin recovered by the government. iFinex's self-serving argument that Doe's assets are not traceable to the forfeited property, is a factual dispute not a pleading defect.

iFinex tries to convert its factual arguments into a pleading motion by mischaracterizing Doe's claim. While Doe had 1,735 BTC prior to the hack, he has not claimed that full amount in recognition of the fact that he recovered a portion of his Bitcoin through Bitinfex's post-hack reallocation, and thus Doe has made a claim only for the remaining net loss of 670.68637 BTC. (Petition ¶¶ 24–28; Doe Decl. ¶ 18). iFinex transparently distorts Doe's claim to convert it from a claim for his net loss that remained outstanding "*after* the reallocation" into an assertion that the losses were "*a result of*" the reallocation. (iFinex Motion to Dismiss, ECF No. 308-1 ("MTD") at 14.)

Next, iFinex argues that Doe's Bitfinex account records—created by iFinex—undermine his claim by accounting for the hack as a loss adjustment in his account balance. (MTD at 15–16.) That is nonsense. Those records reflect iFinex's unilateral decision to account for the hack as a socialized loss to everyone and shed no light on what happened behind the scenes of iFinex's accounting shenanigans and where the Bitcoin owned by Doe was held at the time of the hack or how that corresponds to the hacked wallets. Indeed, another petitioner, whose petition iFinex has not sought to dismiss, submitted account records that reflect the same loss adjustment, confirming that those records provide no basis to distinguish among Bitfinex accountholders' claims. *See, e.g.*,

AH-1 Petition, Ex. 7, ECF No. 288-1. The fact that iFinex has failed to disclose more granular information about what happened is the reason to grant discovery, not to deny it.

Courts have emphasized that traceability disputes are not grounds for early dismissal when facts are uniquely within another party's control. In *United States v. Bailey*, where financial records were needed to determine the interests of claimants in assets seized after a securities fraud plea, the court granted discovery. No. 11 Cr. 10, 2011 WL 2414231, at *2 (W.D.N.C. June 10, 2011). It concluded that claimants "showed good cause" and permitted access to financial documents that were solely in the government's possession to assess commingling, relative priorities, and transactional flows. *Id.*

Finally, iFinex asserts that a portion of Doe's claim should be rejected to the extent it reflects conversion of his non-Bitcoin assets. (MTD at 16–17.) Again, this is a mischaracterization of the claim. Doe had over 1,735 BTC before the hack, and the Bitcoin he received back as part of the reallocation can reduce his ownership claim only to the extent that such recovery went beyond shifting his own assets from one form of crypto asset to another.

Moreover, iFinex's motion wrongly constrains the potential legal interest of accountholders. Without discovery, it is not clear that every accountholder's assets are or were event traceable to specific wallets, if each of the hacked wallets had a single accountholder who held a discrete legal interest, or if Bitfinex's actions ended up comingling assets such that two or more accountholders would share partial legal interests in certain wallets. If, for example, Bitfinex had wrongly comingled two accountholders' assets into one wallet prior to the hack, that would give each of those accountholders a legal interest in the comingled assets, not defeat their claims. *See, e.g.*, *United States v. Vilar*, No. 05-cr-621 (RJS), 2021 WL 4504699 (S.D.N.Y. Sept. 30, 2021) (Sullivan, J.). In *Vilar,* the court denied a motion to dismiss ancillary petitions by investors whose

assets had been wrongly comingled, rejecting the argument that comingling required dismissal even if "[t]he comingling of funds makes it difficult, if not impossible, for any one investor – or even a subset of investors – to draw a straight line from specific investment money to particular assets." *Id.* at *5. "Fortunately for the investors here, the law does not require such rigorous tracing," as the comingling could give rise to a legal interest of each investor in the comingled funds. *Id.* (denying motion to dismiss). Thus, "the [petitioners] have satisfied their burden at the pleading stage to assert[] a plausible interest in forfeited property." *Id.* at *5–*6.[1]

These cases reflect the settled principle that alleging a specific, unrecovered loss with colorable grounds to allege a legal interest in seized assets is enough to proceed. This is particularly true when the information necessary to more fully trace and articulate each claimant's respective legal rights lies exclusively in the hands of an opposing party. The parties and the Court cannot fully assess the legal rights in a vacuum, and the Court need not address hypotheticals when the proper remedy is to engage in discovery so that all parties can properly assert their rights for determination on a developed factual record. iFinex's motion to dismiss the claims before discovery so that it can profit off the losses of its customers should be denied.

## CONCLUSION

For the reasons set forth above, Third-Party Petitioner John Doe respectfully requests that this Court deny Third-Party Petitioners iFinex Inc. and BFXNA Inc.'s Motion to Dismiss Certain

---

[1] Conduct by iFinex before or after the hack may also give rise to claims for damages against them, but any claim for damages is distinct from the claims here that Doe has a legal interest in the seized Bitcoin.

9

Claimants' Ancillary Petitions as it relates to John Doe.

Dated: May 7, 2025

    Respectfully submitted,

    By: /s/ *Kayvan B. Sadeghi*
    Kayvan B. Sadeghi (*pro hac vice)*
    Shailee D. Sharma (*pro hac vice*)
    Sara E. Cervantes (*pro hac vice*)
    **JENNER & BLOCK LLP**
    1155 Avenue of the Americas
    New York, NY 10036-2711
    Telephone: (212) 891-1600
    ksadeghi@jenner.com
    ssharma@jenner.com
    scervantes@jenner.com

    David Bitkower
    Lawrence W. McMahon (*pro hac vice*)
    **JENNER & BLOCK LLP**
    1099 New York Avenue NW, Suite 900
    Washington, DC 20001-4412
    Telephone: (202) 639-6000
    dbitkower@jenner.com
    lmcmahon@jenner.com

    *Attorneys for Third-Party Petitioner John Doe*