# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| UNITED STATES OF AMERICA |
| v. |
| ILYA LICHTENSTEIN, et al., |
| Defendants. |

CRIMINAL NO.  23-cr-239 (CKK)

**REDACTED VERIFIED PETITION FOR DETERMINATION OF**
**THIRD PARTY INTEREST IN PROPERTY PURSUANT TO 21 U.S.C. § 853(N)**

Petitioner Richard Roe ("Petitioner"), by his counsel Davis+Gilbert LLP, having offices at 1675 Broadway, New York, New York 10019, submits this verified petition pursuant to 21 U.S.C. § 853(n) and Fed. R. Crim. P. 32.2(c) for an order determining his interest in property that is subject to forfeiture under the Second Amended Preliminary Order of Forfeiture, entered by this Court on November 14, 2024, ECF. No. 178 (the "Preliminary Forfeiture Order"), and hereby states as follows:

**PRELIMINARY STATEMENT**

1.      On or about August 2, 2016, after hacking into the systems of a Chinese-based cryptocurrency exchange (the "Hack"), Defendants Ilya Lichtenstein and Heather Morgan stole 494.04048966 Bitcoin (the "Lost Assets") from Petitioner.

2.      Defendants accomplished this theft by directly transferring the Lost Assets from Petitioner's own Bitcoin wallets on a cryptocurrency exchange into Defendants' virtual wallet. Accordingly, Petitioner squarely has a legal interest in the forfeited property, as set forth in the Court's recent Memorandum Opinion, because he is able to "demonstrate that [his] accounts were

included among those Bitfinex accounts that were hacked" and Petitioner was "harmed as a direct result of the hack." *See* Memorandum Opinion, dated April 4, 2025, ECF No. 300 at 16-17.

3.      For years, the Lost Assets sat in Defendants' virtual wallet until the U.S. Government on or about February 1, 2022, seized the Lost Assets and other cryptocurrency illegally obtained by Defendants.

4.      Petitioner now seeks return of his Lost Assets.

## PROCEDURAL HISTORY

5.      On February 7, 2022, Defendants were charged by criminal complaint with violations of 18 U.S.C. § 1956(h) and 18 U.S.C. § 371.  ECF. No 1.  The complaint was superseded by a criminal information filed by the U.S. Government on July 20, 2023 (the "Information").  *See* ECF. No. 89.

6.      On or about August 3, 2023, Defendants each pleaded guilty to one count of money laundering conspiracy in violation of 18 U.S.C. § 1956(h) and Defendant Morgan also pleaded guilty to one count of conspiracy to defraud the United States in violation of 18 U.S.C. § 371.

7.      On August 3, 2023, the Court entered Consent Orders of Preliminary Forfeiture, *see* ECF. No. 99, 104, and, on October 25, 2024, Amended Preliminary Orders of Forfeiture as to each Defendant.  *See* ECF. No. 153, 154.

8.      On November 14, 2024, the Court entered the Second Amended Preliminary Order of Forfeiture, ECF No. 178 (the "Second Amended Preliminary Forfeiture Order"), pursuant to which, *inter alia*, Defendants forfeited to the U.S. Government their interest in certain property, including "specific properties now listed in Amended Attachment A."  *Id.* at 2.  The attachment, as amended and corrected, identifies in paragraph e. "approximately" 94,643.29837084 Bitcoin

(the "Recovered Bitcoin") that were "seized from wallets recovered from Defendants' online storage account." *See* ECF. No. 198-1 at 1.

## RELEVANT FACTS

9.     Petitioner is the owner of the Lost Assets, which can be directly traced from Petitioner's multi-signature Bitcoin wallets to the Defendants' Bitcoin wallet, the contents of which were seized by the U.S. Government.

10.     Petitioner was a customer of Bitfinex, an online cryptocurrency platform headquartered in Hong Kong.  To transact business on the platform, customers of Bitfinex were each provided with his or her own "multi-signature wallets" into which, *inter alia*, the customer could deposit his or her Bitcoin for purposes of buying, selling, trading and/or engaging in other financial transactions on the platform.

11.     The Bitcoin in these multi-signature wallets belonged solely and exclusively to the respective customer.  At the time of the Defendants' Hack, section 5.1 of Bitfinex's Terms of Service stated that "all bitcoins in your Multi-Signature Wallets belong to and are owned by you [the customer]." *See* Bitfinex, Terms of Service (June 9, 2016) (as preserved by Internet Archive); *Can Bitfinex Really Impose a $72 Million Theft on Its Customers?*, Fortune, (Aug. 15, 2016), https://fortune.com/2016/08/15/bitfinex-bitcoin-hack-hong-kong-customers-law/  (last accessed: January 15, 2025) (quoting Bitfinex's terms of service).

12.     Bitfinex championed its use of individual customer-owned wallets in its marketing materials and to the U.S. Commodities Futures Trading Commission ("CFTC") during the CFTC's 2015-16 investigation into Bitfinex's practices.  *See, e.g.*, Business Wire, *Bitfinex and BitGo Partner to Create World's First Real-Time Proof of Reserve Bitcoin Exchange*, (June 3, 2015), *available at* https://www.businesswire.com/news/home/20150603005462/en/Bitfinexand-BitGo-

Partner-to-Create-World%E2%80%99s-First-Real-Time-Proof-of-Reserve-Bitcoin-Exchange

("Bitfinex . . . for the first time ever offers complete segregation of all customer bitcoins"; quoting Bitfinex's statement that "[t]he era of commingling customer Bitcoin and all of the associated security exposures is over") (last accessed: January 15, 2025).

13.    In its order imposing sanctions on Bitfinex on June 2, 2016—mere months before the Hack—the CFTC found that Bitfinex abandoned its prior approach of using an "omnibus settlement wallet" that was "owned and controlled by Bitfinex" and, instead, in 2015 and January 2016, made changes to its infrastructure such that "bitcoins purchased using both the Exchange Trading and Margin Trading features [on Bitfinex] were held in individually enumerated, multi-signature wallets" for each trader.  Order Instituting Proceedings Pursuant to Sections 6(c) and 6(d) of the Commodity Exchange Act, as Amended, Making Findings and Imposing Remedial Sanctions, CFTC Docket No. 16-19, at 3 (June 2, 2016).

14.    In other words, the Bitcoin held in a customer's segregated multi-signature wallets on the Bitfinex platform rightly belonged to the customer only.

**A.  Ownership of the Lost Assets**

15.    Prior to the Hack, Petitioner had 494.04048966 Bitcoin deposited into the segregated multi-signature wallets associated with his Bitfinex account (**[REDACTED]**) (together with all related "change" addresses, collectively, "Petitioner's Wallet").

16.    In August 2016, as part of the Hack, the Defendants transferred these Bitcoin—*i.e.*, the Lost Assets—from Petitioner's Wallet directly to Bitcoin wallet address **[REDACTED]**  (the "Specified Defendants' Bitcoin Address") (txid **[REDACTED]**), which was among the hundreds or thousands employed by the Defendants during the Hack.

17.    Upon information and belief, the Lost Assets remained in the Specified Defendants'

Bitcoin Address until the U.S. Government seized them. *See, e.g.*, Complaint ¶¶ 6, 7(a).

**B. The Recovered Bitcoin**

18.     The U.S. Government has now seized more than 94,643.29837084 Bitcoin from the Defendants. *See* Corrected and Amended Attachment A to the Second Amended Preliminary Forfeiture Order, at 1, 5-11. In connection with that seizure, on or about February 1, 2022, the U.S. Government transferred all of the contents of the Specified Defendants' Bitcoin Address, including upon information and belief the Lost Assets, to a virtual currency wallet controlled by the U.S. Government (**********************wczt; txid **********************ffb3).

19.     The Lost Assets are thus part of the Recovered Bitcoin.

## RELIEF SOUGHT

20.     As owner, Petitioner has right, title and interest in and to the Lost Assets, which is specific property that can be identified as having been taken from Petitioner's Wallet, transferred directly to the Specified Defendants' Bitcoin Address and then seized by the U.S. Government.

21.     Petitioner's ownership interest in the Lost Assets existed prior to the acts which gave rise to Defendants' forfeiture and is superior to any right of the Defendants (and the U.S. Government) in the Lost Assets.

22.     The U.S. Government has not returned to Petitioner the Lost Assets, which, as part of the Recovered Bitcoin, remain subject to forfeiture under the Second Amended Preliminary Forfeiture Order.

23.     Petitioner therefore seeks to assert its ownership interest in, and obtain prompt return of, the Lost Assets and all corresponding fork coins (e.g., Bitcoin Cash, Bitcoin Gold, Bitcoin SV, etc.) that were derived from the Lost Assets, an order declaring that Petitioner possesses the right, title and interest to such assets superior to the U.S. Government and any and

all other petitioners, and awarding such other and/or further relief as the Court deems just and proper.

Dated: April 17, 2025               GREENSTEIN DELORME & LUCHS, P.C.

                                      By: */s/ James D. Sadowski*
                                      James D. Sadowski, DC Bar #446635
                                      801 17th Street, N.W., Suite 1000
                                      Washington, D.C. 20006
                                      202.452.1400
                                      JDS@gdllaw.com

                                      DAVIS+GILBERT LLP
                                      Joseph Cioffi
                                      H. Seiji Newman
                                      Joel Melendez
                                      Adam Levy
                                      1675 Broadway
                                      New York, NY 10019
                                      212-468-4800
                                      jcioffi@dglaw.com
                                      hnewman@dglaw.com
                                      jmelendez@dglaw.com
                                      alevy@dglaw.com

                                      *Counsel for Petitioner*

**<u>VERIFICATION</u>**

**[REDACTED; FILED UNDER SEAL]**