# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 23-cr-239 (CKK) |
| ILYA LICHTENSTEIN, et al., | |
| Defendants. | |

## MOTION TO FILE AMENDED VERIFIED ANCILLARY PETITION

Pursuant to Federal Rule of Civil Procedure 15(a)(2), movant Dolan Harrington ("Mr. Harrington"), by and through his undersigned counsel, respectfully submits this motion to file the amended verified ancillary petition pursuant to 21 U.S.C. § 853(n), annexed hereto as **Exhibit 1** (the "Amended Petition"), seeking an order determining his interest in property that is subject to forfeiture under the Second Amended Preliminary Order of Forfeiture, dated November 14, 2024, ECF No. 178 (the "Preliminary Forfeiture Order").

## INTRODUCTION

1. On January 31, 2025, Mr. Harrington filed a timely ancillary petition in which Mr. Harrington asserted a claim with respect to 2.35436113 Bitcoin (BTC) that is subject to the Preliminary Forfeiture Order. *See* ECF No. 366 at ¶ 2.

2. On January 29, 2025, this Court granted Mr. Harrington's motion to intervene in these proceedings. *See* ECF No. 230.

3. As a result of further investigation, including a review of information filed and/or made available by Bitfinex in connection with these proceedings, Mr. Harrington identified additional accounts and assets belonging to him "included among those Bitfinex accounts that were hacked." *See* Memorandum Opinion, dated April 4, 2025, ECF No. 300 at 16; *see also id.* at 19

1

("[T]he Court notes that the tracing of the accounts in a cryptocurrency case involving hacking is in and of itself complex.").

4.      Accordingly, Mr. Harrington seeks to file the Amended Petition to supplement his claim and revise the total amount of his lost assets to 6.52774318 BTC (as defined in the Amended Petition, the "Lost Assets"). Attached as **Exhibit 2** is a redline comparing the Amended Petition against Mr. Harrington's original petition.

5.      Leave to amend should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2); *United States v. Daugerdas*, 892 F.3d 545, 553 (2d Cir. 2018) (permitting petitioner to amend to plead additional facts because, "if such facts exist[ed], . . . re-pleading would not be futile" and thus "denying [the petitioner] the opportunity to present a viable petition would raise significant due process concerns"); *see also In re Forfeiture Ord. of Tim Leissner*, No. 23-MC-1505 (MKB), 2024 U.S. Dist. LEXIS 182231, at *20 (E.D.N.Y. Oct. 5, 2024) (granting leave to amend ancillary petition filed pursuant to Section 853(n) where amendment would "not be futile" or "result in undue prejudice").

6.      Here, Mr. Harrington's motion to amend should be granted because he has pled sufficient facts to establish his ownership over the 6.52774318 BTC in Lost Assets. *See* Ex. 1 ¶¶ at 16-20. Accordingly, the amendment is neither futile nor will it cause any party any prejudice.

7.      Further, these proceedings remain in its preliminary stages. Motions to dismiss are pending, and discovery has not yet begun. *See* Opinion, dated May 20, 2025, ECF No. 347 at 1. Notably, no motions to dismiss are pending against Mr. Harrington's original petition.

8.      The Court has previously granted another petitioner's motion for leave to file an amended ancillary petition, setting a deadline of May 30, 2025, for the petitioner to file. Minute Order, dated May 12, 2025 (granting motion for leave to amend). The Court noted that, as here, such "Petitioner filed a timely ancillary petition, and now seeks leave to amend it." *Id.*

WHEREFORE, Mr. Harrington respectfully requests that the Court grant him leave to file his

Amended Petition, annexed hereto as **<u>Exhibit 1</u>**, together with such other and further relief as the

Court deems just and proper. A proposed order is annexed hereto as **<u>Exhibit 3</u>**.


Dated: December 2, 2025                GREENSTEIN DELORME & LUCHS, P.C.

By: *<u>/s/ Alexandria J. Smith</u>*
James D. Sadowski, DC Bar #446635
Alexandria J. Smith DC Bar #1781067
801 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Phone: 202.452.1400
Fax: 202/452/1410
JDS@gdllaw.com
AJS@gdllaw.com

DAVIS+GILBERT LLP
Joseph Cioffi
H. Seiji Newman
Joel Melendez
Adam Levy
1675 Broadway
New York, NY 10019
212-468-4800
jcioffi@dglaw.com
hnewman@dglaw.com
jmelendez@dglaw.com
alevy@dglaw.com

*Counsel for Movant Dolan Harrington*

# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ILYA LICHTENSTEIN, et al.,<br><br>    Defendants. | Case No.  23-cr-239 (CKK) |

## AMENDED VERIFIED PETITION FOR DETERMINATION OF THIRD PARTY INTEREST IN PROPERTY PURSUANT TO 21 U.S.C § 853(N)

Petitioner Dolan Harrington ("Petitioner" or "Mr. Harrington"), by his undersigned counsel, submits this amended verified petition pursuant to 21 U.S.C. § 853(n) and Fed. R. Crim. P. 32.2(c) for an order determining his interest in property that is subject to forfeiture under the Second Amended Preliminary Order of Forfeiture, entered by this Court on November 14, 2024, ECF. No. 178 (the "Preliminary Forfeiture Order"), and hereby states as follows:

### PRELIMINARY STATEMENT

1.    On or about August 2, 2016, after hacking into the systems of a Chinese-based cryptocurrency exchange (the "Hack"), Defendants Ilya Lichtenstein and Heather Morgan stole 6.52774318 Bitcoin (BTC) (the "Lost Assets") from Mr. Harrington.

2.    Defendants accomplished this theft by directly transferring the Lost Assets from Mr. Harrington's own Bitcoin wallet on a cryptocurrency exchange into Defendants' virtual wallet.

3.    For years, the Lost Assets sat in Defendants' virtual wallet, until the U.S. Government on or about February 1, 2022, seized the Lost Assets and other cryptocurrency illegally obtained by Defendants.

4.    Mr. Harrington now seeks return of his Lost Assets.

## PROCEDURAL HISTORY

5.      On February 7, 2022, Defendants were charged by criminal complaint with violations of 18 U.S.C. § 1956(h) and 18 U.S.C. § 371.  ECF. No 1.  The complaint was superseded by a criminal information filed by the U.S. Government on July 20, 2023 (the "Information").  *See* ECF. No. 89.

6.      On or about August 3, 2023, Defendants each pleaded guilty to one count of money laundering conspiracy in violation of 18 U.S.C. § 1956(h) and Defendant Morgan also pleaded guilty to one count of conspiracy to defraud the United States in violation of 18 U.S.C. § 371.

7.      On August 3, 2023, the Court entered Consent Orders of Preliminary Forfeiture, *see* ECF. Nos. 99, 104, and, on October 25, 2024, Amended Preliminary Orders of Forfeiture as to each Defendant.  *See* ECF. Nos. 153, 154.

8.      On November 14, 2024, the Court entered the Second Amended Preliminary Order of Forfeiture, ECF No. 178 (the "Second Amended Preliminary Forfeiture Order"), pursuant to which, *inter alia*, Defendants forfeited to the U.S. Government their interest in certain property, including "specific properties now listed in Amended Attachment A."  *Id.* at 2.  The attachment, as amended and corrected, among other assets, identifies "approximately" 94,643.29837084 bitcoins (the "Recovered Assets") that were "seized from wallets recovered from Defendants' online storage account."  *See* ECF. No. 198-1 at 1.

## RELEVANT FACTS

9.      Mr. Harrington is the owner of the Lost Assets, which can be directly traced from Mr. Harrington's multi-signature Bitcoin wallet to the Defendants' Bitcoin wallet, the contents of which were seized by the U.S. Government.

10.    Mr. Harrington was a customer of Bitfinex, an online cryptocurrency platform headquartered in Hong Kong.  To transact business on the platform, customers of Bitfinex were each provided his/her own "multi-signature wallets" into which, *inter alia*, the customer could deposit his or her assets (both virtual and actual currency) for purposes of buying, selling, trading and/or engaging in other financial transactions on the platform.

11.    The Bitcoin in these wallets belonged solely and exclusively to the respective customer.  At the time of the Defendants' Hack, section 5.1 of Bitfinex's Terms of Service stated that "all bitcoins in your multi-signature wallets belong to and are owned by you [the customer]." *See* Bitfinex, Terms of Service (June 9, 2016) (as preserved by Internet Archive)*; Can Bitfinex Really Impose a $72 Million Theft on Its Customers?*, Fortune, (Aug. 15, 2016), *available at* https://fortune.com/2016/08/15/bitfinex-bitcoin-hack-hong-kong-customers-law/  (last accessed: Nov. 17, 2025) (quoting Bitfinex's terms of service).

12.    Bitfinex championed its use of individual customer-owned wallets in its marketing materials and to the U.S. Commodities Futures Trading Commission ("CFTC") during the CFTC's 2015-16 investigation into Bitfinex's practices.  *See, e.g.*, Business Wire, *Bitfinex and BitGo Partner to Create World's First Real-Time Proof of Reserve Bitcoin Exchange*, (June 3, 2015), *available    at*    https://blog.bitfinex.com/announcements/bitfinex-and-bitgo-partner-to-create-worlds-first/ ("Bitfinex . . . for the first time ever offers complete segregation of all customer bitcoins"; quoting Bitfinex's statement that "[t]he era of commingling customer Bitcoin and all of the associated security exposures is over.") (last accessed: Nov. 17, 2025).

13.    In its order imposing sanctions on Bitfinex on June 2, 2016—mere months before the Hack—the CFTC found that Bitfinex abandoned its prior approach of using an "omnibus settlement wallet" that was "owned and controlled by Bitfinex" and, instead, in 2015 and January

2016, made changes to its infrastructure such that "bitcoins purchased using both the Exchange Trading and Margin Trading features [on Bitfinex] were held in individually enumerated, multi-signature wallets" for each trader.  Order Instituting Proceedings Pursuant to Sections 6(c) and 6(d) of the Commodity Exchange Act, as Amended, Making Findings and Imposing Remedial Sanctions, CFTC Docket Nos. 16-19, at 3 (June 2, 2016).

14.    In other words, bitcoins held in a customer's segregated wallet on the Bitfinex platform rightly belonged to the customer only.

### A. Ownership of the Stolen Assets

15.    Bitfinex created a BTC multi-signature wallet for Mr. Harrington (which had the deposit address ██████████████████ ).  *See* ECF. No. 219 (Ancillary Petition of iFinex and Bitfinex) at ¶ 20.  Mr. Harrington made a Bitcoin deposit of 1 BTC to this address on November 6, 2015. Additionally, Bitfinex periodically made Bitcoin transfers to and from this and other addresses to reconcile the multi-signature wallet with the Bitcoin balance in Mr. Harrington's account on the Bitfinex platform.  *See* ECF. No. 219 (Ancillary Petition of iFinex and Bitfinex) at ¶ 21 (explaining reconciliation process). In particular, Bitfinex transferred 11.9896 BTC to Mr. Harrington's deposit address on May 6, 2016.

16.    Mr. Harrington's multi-signature wallet did not consist solely of his deposit address. Annexed hereto as Exhibit A is a flowchart (the "Flowchart") illustrating the Bitcoin movements associated with Mr. Harrington's multi-signature wallet on and after May 6, 2016. The Flowchart demonstrates how, with each transfer from the multi-signature wallet to Bitfinex's hot wallet (represented by green boxes), Bitfinex transferred certain remaining Bitcoin to a new change address.  *See* ECF. No. 219-1 (Mathew Price Decl.) at ¶¶ 17, 26, 67-68.  These change addresses also form part of Mr. Harrington's multi-signature wallet.  *See* ECF. No. 219 (Ancillary

Petition of iFinex and Bitfinex) at ¶ 15 (providing that a single wallet may include many wallet addresses).

17.     In August 2016, during the course of the Hack, Defendants completely emptied Mr. Harrington's multi-signature wallet by transferring 6.52794318 BTC mainly to their address ████████████████ ███ (red box in the Flowchart).  This transaction (the "Harrington Hack Transaction") bears the transaction hash █████████████████ ███ and is shown in red text in the Flowchart.

18.     At the time of the Hack, the Bitcoin balance in Mr. Harrington's account on the Bitfinex platform was 6.52774318 BTC. This amount matches to 3 decimal places the 6.52794318 BTC stolen in the Harrington Hack Transaction.

19.     6.51794318 of the Bitcoin stolen in the Harrington Hack Transaction remained at the Defendants' address 1QFUE.. until they were seized by the U.S. Government.  *See, e.g.*, Complaint, at ¶¶ 6, 7(a).

**B.  The Recovered Assets**

20.     The U.S. Government has now seized more than 94,643.29837084 Bitcoin from the Defendants.  *See* Corrected and Amended Attachment A to the Second Amended Preliminary Forfeiture Order, at 1, 5-11.  In connection with that seizure, on or about February 1, 2022, the U.S. Government transferred 6.51794318 BTC stolen from Mr. Harrington's multi-signature wallet from Defendants' address 1QFUE.. to their address █████████████████ ███ (orange box in the Flowchart). This transaction bears the transaction hash █████████████████ ███ and is shown in orange text in the Flowchart.

21.     The Lost Assets are thus part of the Recovered Assets.

## RELIEF SOUGHT

22.    Mr. Harrington has a legal right, title and/or interest in the Lost Assets, which is specific property that can be identified as having been taken by Defendants from Mr. Harrington's multi-signature wallet, and then seized by the U.S. Government.

23.    Mr. Harrington's ownership interest in the Lost Assets were fully vested prior to the acts which gave rise to Defendants' forfeiture and is superior to any right of Defendants (and the U.S. Government) in the Lost Assets.

24.    The U.S. Government has not returned the Lost Assets to Mr. Harrington.

25.    Mr. Harrington therefore seeks to assert his ownership interest in, and obtain prompt return of the Lost Assets.


Dated: November 25, 2025                  GREENSTEIN DELORME & LUCHS, P.C.

                                          By: */s/ James D. Sadowski*
                                          James D. Sadowski, DC Bar#446635
                                          801 17th Street, N.W., Suite 1000
                                          Washington, D.C. 20006
                                          Phone:  202.452.1400
                                          Fax:  202/452/1410
                                          JDS@gdllaw.com

                                          DAVIS+GILBERT LLP
                                          Joseph Cioffi
                                          H. Seiji Newman
                                          Joel Melendez
                                          Adam Levy
                                          1675 Broadway
                                          New York, NY 10019
                                          212-468-4800
                                          jcioffi@dglaw.com
                                          hnewman@dglaw.com
                                          jmelendez@dglaw.com
                                          alevy@dglaw.com

                                          *Counsel for Petitioner Dolan Harrington*

## VERIFICATION

Dolan Harrington, being duly, sworn deposes and says:

I am the Petitioner in this Ancillary Proceeding; I have read the foregoing Amended Verified Petition and know the contents thereof; and the same is true to my own knowledge, except as to those matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true.

November 25, 2025

_____
Dolan Harrington

Sworn to before me this

25 day of November 2025

_____
NOTARY PUBLIC

Sworn to and subscribed before me, in my presence
this 25th day of November, 2025. A Virginia
Notary Public. In and for the State at Large
_____ Notary Public
My commission expires Oct 31 2026

*[Verification - Ancillary Petition]*

# Exhibit A



# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ILYA LICHTENSTEIN, et al.,<br><br>Defendants. | Case No.  23-cr-239 (CKK) |

**AMENDED VERIFIED PETITION FOR DETERMINATION OF**
**THIRD PARTY INTEREST IN PROPERTY PURSUANT TO 21 U.S.C § 853(N)**

Petitioner Dolan Harrington ("Petitioner" or "Mr. Harrington"), by his undersigned counsel, submits this amended verified petition pursuant to 21 U.S.C. § 853(n) and Fed. R. Crim. P. 32.2(c) for an order determining his interest in property that is subject to forfeiture under the Second Amended Preliminary Order of Forfeiture, entered by this Court on November 14, 2024, ECF. No. 178 (the "Preliminary Forfeiture Order"), and hereby states as follows:

**PRELIMINARY STATEMENT**

1.      On or about August 2, 2016, ~~Defendants Ilya Lichtenstein and Heather Morgan hacked~~after hacking into the systems of a Chinese-based cryptocurrency exchange (the "Hack"), ~~stealing approximately $9 billion in digital assets from account holders~~Defendants Ilya Lichtenstein and Heather Morgan stole 6.52774318 Bitcoin (BTC) (the "Lost Assets") from Mr. Harrington.

~~2. Either as direct result of the Hack, and/or due to the cryptocurrency exchange's effort to "generalize" losses across account holders, 2.35436113 Bitcoin (BTC) (the "Lost Assets") were removed from Mr. Harrington's account.~~

2.      Defendants accomplished this theft by directly transferring the Lost Assets from Mr. Harrington's own Bitcoin wallet on a cryptocurrency exchange into Defendants' virtual wallet.

3.      ~~On February 1, 2022,~~ For years, the Lost Assets sat in Defendants' virtual wallet, until the U.S. Government on or about February 1, 2022, seized the Lost Assets and other cryptocurrency illegally obtained by Defendants.

4.      Mr. Harrington now seeks return of his Lost Assets.

**PROCEDURAL HISTORY**

5.      On February 7, 2022, Defendants were charged by criminal complaint with violations of 18 U.S.C. § 1956(h) and 18 U.S.C. § 371.  ECF. No 1.  The complaint was superseded by a criminal information filed by the U.S. Government on July 20, 2023 (the "Information").  *See* ECF. No. 89.

6.      On or about August 3, 2023, Defendants each pleaded guilty to one count of money laundering conspiracy in violation of 18 U.S.C. § 1956(h) and Defendant Morgan also pleaded guilty to one count of conspiracy to defraud the United States in violation of 18 U.S.C. § 371.

7.      On August 3, 2023, the Court entered Consent Orders of Preliminary Forfeiture, *see* ECF. Nos. 99, 104, and, on October 25, 2024, Amended Preliminary Orders of Forfeiture as to each Defendant.  *See* ECF. Nos. 153, 154.

8.      On November 14, 2024, the Court entered the Second Amended Preliminary Order of Forfeiture, ECF No. 178 (the "Second Amended Preliminary Forfeiture Order"), pursuant to which, *inter alia*, Defendants forfeited to the U.S. Government their interest in certain property, including "specific properties now listed in Amended Attachment A."  *Id.* at 2.

The attachment, as amended and corrected, among other assets, identifies "approximately" 94,643.29837084 bitcoins (the "Recovered Assets") that were "seized from wallets recovered from Defendants' online storage account."  *See* ECF. No. 198-1 at 1.

~~9. In connection with the Second Amended Preliminary Order of Forfeiture, on December 17, 2024, the U.S. Department of Justice published a notice (the "DOJ Notice") directing any person intending to assert an interest in any of the properties subject to forfeiture to file an Ancillary Proceeding within 60 days of the first date of publication of the DOJ Notice.~~

## RELEVANT FACTS

9. Mr. Harrington is the owner of the Lost Assets, which can be directly traced from Mr. Harrington's multi-signature Bitcoin wallet to the Defendants' Bitcoin wallet, the contents of which were seized by the U.S. Government.

10.     Mr. Harrington was a customer of Bitfinex, an online cryptocurrency platform headquartered in Hong Kong.  To transact business on the platform, customers of Bitfinex were each provided his/her own "multi-signature wallets" into which, *inter alia*, the customer could deposit his or her assets (both virtual and actual currency) for purposes of buying, selling, trading and/or engaging in other financial transactions on the platform.

11.     The ~~assets~~Bitcoin in these wallets belonged solely and exclusively to the respective customer.  At the time of the Defendants' Hack, section 5.1 of Bitfinex's Terms of Service stated that "all bitcoins in your multi-signature wallets belong to and are owned by you [the customer]."  *See* Bitfinex, Terms of Service (June 9, 2016) (as preserved by Internet Archive)*; Can Bitfinex Really Impose a $72 Million Theft on Its Customers?*, Fortune, (Aug. 15, 2016),                           *available                          at* ~~https://fortune.com/2016/08/15/bitfinex-bitcoin-hack-hong-kong-customers-law/~~https://fortune.c

om/2016/08/15/bitfinex-bitcoin-hack-hong-kong-customers-law/ (last accessed: ~~Jan~~Nov. ~~15~~17, 2025) (quoting Bitfinex's terms of service).

12.    Bitfinex championed its use of individual customer-owned wallets in its marketing materials and to the U.S. Commodities Futures Trading Commission ("CFTC") during the CFTC's 2015-16 investigation into Bitfinex's practices.  *See, e.g.*, Business Wire, *Bitfinex and BitGo Partner to Create World's First Real-Time Proof of Reserve Bitcoin Exchange*, (June 3, 2015), *available at* ~~https://www.businesswire.com/news/home/20150603005462/en/Bitfinexand-BitGo-Partner-to-Create-World%E2%80%99s-First-Real-Time-Proof-of-Reserve-Bitcoin-Exchange~~https://blog.bitfinex.com/announcements/bitfinex-and-bitgo-partner-to-create-worlds-first/ ("Bitfinex . . . for the first time ever offers complete segregation of all customer bitcoins"; quoting Bitfinex's statement that "[t]he era of commingling customer Bitcoin and all of the associated security exposures is over.") (last accessed: ~~Jan~~Nov. ~~15~~17, 2025).

13.    In its order imposing sanctions on Bitfinex on June 2, 2016—mere months before the Hack—the CFTC found that Bitfinex abandoned its prior approach of using an "omnibus settlement wallet" that was "owned and controlled by Bitfinex" and, instead, in 2015 and January 2016, made changes to its infrastructure such that "bitcoins purchased using both the Exchange Trading and Margin Trading features [on Bitfinex] were held in individually enumerated, multi-signature wallets" for each trader.  Order Instituting Proceedings Pursuant to Sections 6(c) and 6(d) of the Commodity Exchange Act, as Amended, Making Findings and Imposing Remedial Sanctions, CFTC Docket Nos. 16-19, at 3 (June 2, 2016).

14.    In other words, bitcoins held in a customer's segregated wallet on the Bitfinex platform rightly belonged to the customer only.

~~15. Immediately following the hack, Bitfinex decided unilaterally "that losses must be generalized across all accounts and assets." See Security Breach – Update 3 (Aug. 6, 2016), available at https://www.bitfinex.com/posts/129 (last accessed: Jan. 15, 2025). As result, all Bitfinex customers "experienced a generalized loss percentage of 36.067%."~~

### A. Ownership of the Stolen Assets

15. Bitfinex created a BTC multi-signature wallet for Mr. Harrington (which had the deposit address ******************█). *See* ECF. No. 219 (Ancillary Petition of iFinex and Bitfinex) at ¶ 20. Mr. Harrington made a Bitcoin deposit of 1 BTC to this address on November 6, 2015. Additionally, Bitfinex periodically made Bitcoin transfers to and from this and other addresses to reconcile the multi-signature wallet with the Bitcoin balance in Mr. Harrington's account on the Bitfinex platform. *See* ECF. No. 219 (Ancillary Petition of iFinex and Bitfinex) at ¶ 21 (explaining reconciliation process). In particular, Bitfinex transferred 11.9896 BTC to Mr. Harrington's deposit address on May 6, 2016.

16. Mr. Harrington's multi-signature wallet did not consist solely of his deposit address. Annexed hereto as Exhibit A is a flowchart (the "Flowchart") illustrating the Bitcoin movements associated with Mr. Harrington's multi-signature wallet on and after May 6, 2016. The Flowchart demonstrates how, with each transfer from the multi-signature wallet to Bitfinex's hot wallet (represented by green boxes), Bitfinex transferred certain remaining Bitcoin to a new change address. *See* ECF. No. 219-1 (Mathew Price Decl.) at ¶¶ 17, 26, 67-68. These change addresses also form part of Mr. Harrington's multi-signature wallet. *See* ECF. No. 219 (Ancillary Petition of iFinex and Bitfinex) at ¶ 15 (providing that a single wallet may include many wallet addresses).

17. In August 2016, during the course of the Hack, Defendants completely emptied

Mr. Harrington's multi-signature wallet by transferring 6.52794318 BTC mainly to their address ***************** ███ (red box in the Flowchart).  This transaction (the "Harrington Hack Transaction") bears the transaction hash ***************** ███ and is shown in red text in the Flowchart.

18.    At the time of the Hack, the Bitcoin balance in Mr. Harrington's account on the Bitfinex platform was 6.52774318 BTC. This amount matches to 3 decimal places the 6.52794318 BTC stolen in the Harrington Hack Transaction.

19.    6.51794318 of the Bitcoin stolen in the Harrington Hack Transaction remained at the Defendants' address 1QFUE.. until they were seized by the U.S. Government.  *See, e.g.*, Complaint, at ¶¶ 6, 7(a).

**B.** ~~A.~~ **The Recovered Assets**

20.    ~~16.~~ The U.S. Government has now seized ~~the Recovered Assets (including~~ more than 94,643.29837084 ~~bitcoins)~~Bitcoin from ~~the~~ Defendants.  *See* Corrected and Amended Attachment A to the Second Amended Preliminary Forfeiture Order, at 1, 5-11.  In connection with that seizure, on or about February 1, 2022, the U.S. Government transferred ~~all of the contents of the Defendants' cryptocurrency wallets to a virtual currency wallet held by the U.S. Government.~~6.51794318 BTC stolen from Mr. Harrington's multi-signature wallet from Defendants' address 1QFUE.. to their address ***************** ███ (orange box in the Flowchart). This transaction bears the transaction hash ***************** ███ and is shown in orange text in the Flowchart.

21.    ~~B.~~ The Lost Assets are thus part of the Recovered Assets.

~~17. In August 2016, as part of the Hack, the Defendants transferred billions of dollars in digital assets to their own cryptocurrency wallets.~~

18. Upon information and belief, the Lost Assets were transferred to and remained in the Defendants' wallets until the U.S. Government seized them.

19. Alternatively, upon information and belief, Bitfinex removed the Lost Assets, from Mr. Harrington's account in an effort to generalize losses. Bitfinex did not provide sufficient information regarding whether it—*i.e.*, Bitfinex—or the Defendants, took control or possession of the Lost Assets and to date has not been made to account for the Lost Assets taken from Petitioner. To the extent the Lost Assets were employed in the generalization of losses, and as a result reduced the claims of other Bitfinex account holders to forfeited property, Petitioner should succeed to the right, title and interest of such account holders in such property.

20. In the Government's Supplemental Motion Regarding Restitution, filed on January 14, 2025, the U.S. Government stated its position that the Recovered Assets should be returned to Bitfinex "as in-kind restitution." ECF No. 202 at 5. Given Mr. Harrington's direct ownership interest in the Recovered Assets (to the extent of the Lost Assets), and/or the unauthorized and unilateral taking of Mr. Harrington's assets by Bitfinex, the Court should determine that Mr. Harrington has a valid prior interest in the Recovered Assets. At a minimum, such interest is an equitable interest to the extent of the amount of the Lost Assets.

### RELIEF SOUGHT

22. 21. Mr. Harrington has a legal right, title and/or interest in the Recovered Assets to the extent of the Lost Assets, which is specific property that can be identified as having been taken by Defendants from Mr. Harrington's multi-signature wallet, and then seized by the U.S. Government.

23.    ~~22.~~ Mr. Harrington's ownership interest in the Lost Assets were fully vested prior to the acts which gave rise to Defendants' forfeiture and is superior to any right of ~~Bitfinex, the~~ Defendants~~,~~ (and the U.S. Government) in the Lost Assets.

24.    ~~23.~~ The U.S. Government has not returned the Lost Assets to Mr. Harrington.

25.    ~~24.~~ Mr. Harrington therefore seeks to assert his ownership interest in, and obtain prompt return of the Lost Assets.

Dated: ~~January 28~~ November 25, 2025                    GREENSTEIN    DELORME    &
LUCHS, P.C.

By: */s/ James D. Sadowski*
James D. Sadowski, DC Bar#446635
801 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Phone:  202.452.1400
Fax:  202/452/1410
~~Email:~~ JDS@gdllaw.com

DAVIS+GILBERT LLP
Joseph Cioffi
H. Seiji Newman
Joel Melendez
Adam Levy
1675 Broadway
New York, NY 10019
212-468-4800
jcioffi@dglaw.com
hnewman@dglaw.com
jmelendez@dglaw.com
alevy@dglaw.com

*Counsel for Petitioner Dolan Harrington*

| Summary report: Litera Compare for Word 11.11.0.158 Document comparison done on 11/26/2025 12:33:27 PM | |
|---|---|
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://imanage.dglaw.com/dgny/4920056/1 - Amended Verified Petition for Ancillary Proceeding (Dolan Harrington).docx | |
| **Modified filename:** REDACTED Amended Verified Petition for Ancillary Proceeding (Dolan Harrington).docx | |
| **Changes:** | |
| Add | 49 |
| Delete | 41 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 90 |

# EXHIBIT 3

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA

v.                                                    Case No.  23-cr-239 (CKK)

ILYA LICHTENSTEIN, et al.,

Defendants.

## <u>ORDER</u>

Upon consideration of the Motion for Leave to Amend submitted on December 2, 2025, by petitioner Dolan Harrington (the "Movant"), it is hereby:

ORDERED that the Movant's Motion to Amend is GRANTED for purposes of allowing the Movant to file his amended verified ancillary petition.

_____
COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE